```
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

```
UNITED STATES OF AMERICA     )
                             )
    v.                       )    1:19CR529-1
                             )
MAURICE OWEN WILEY, JR.      )
```

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on the defendant's Motion to Reopen under 18 U.S.C. § 3142 (Docket Entry 183), which:

> pursuant to 18 U.S.C. § 3142(f) and (i) move[s] the Court to reopen [the d]efendant's detention hearing to consider information that was not known to [the d]efendant at the time of his original hearing, which has a material bearing on the issue of whether there are conditions of release that will reasonably assure . . . the safety of the community, and which further constitutes a compelling reason for temporary release.

(Id. at 1; see also Docket Entry 192 (Supplement to instant Motion).) For the reasons that follow, the Court grants in part and denies in part the instant Motion, in that the Court has reconsidered the defendant's detention and has concluded that it remains appropriate.

### INTRODUCTION

This case commenced with the issuance of a criminal complaint charging the defendant with attempting to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) ("attempted Hobbs Act robbery"), and with discharging firearms in violation of 18 U.S.C. § 924(c)(1)(A)(iii) ("Section 924(c)"). (Docket Entry 1.) After a hearing (see Docket Entry 107), the Court (per the

undersigned Magistrate Judge) "ruled that probable cause supported the charges and orally ordered the defendant's detention because clear and convincing evidence established that no available release conditions would reasonably assure the safety of the community" (Docket Entry 114 at 1). In explanation, that Order states:

> Given the nature of one of the charges in this case, "subject to rebuttal by the defendant, it shall be presumed that no condition or combination of conditions will reasonably assure . . . the safety of the community," 18 U.S.C. § 3142(e)(3). . . .
>
> "Even when a defendant satisfies his burden of produc[ing evidence to rebut the presumption] . . ., 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.' The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) (citation omitted) (quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)); accord United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008); United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Stricklin, 932 F.2d 1353, 1355 (10th Cir. 1991); United States v. Hare, 873 F.2d 796, 798-99 (5th Cir. 1989); United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986); United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985).
>
> In resolving the issue of release or detention, the Court has considered, along with the statutory presumption, the following statutorily prescribed factors: "(1) the nature and circumstances of the offenses charged, including whether any offense is a crime of violence or involves firearm(s); (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community

that would be posed by the defendant's release." 18 U.S.C. § 3142(g).

Based on the record before it, the Court makes the following findings of fact and/or conclusions of law:

1) the offenses charged against the defendant:

A) are extremely serious, including as reflected by the above-discussed presumption of detention, the applicable penalties, and the language of the Bail Reform Act, see, e.g., United States v. Mathis, 932 F.3d 242, 266 (4th Cir. 2019) ("concluding that Hobbs Act robbery constitutes a crime of violence under the force clause of statute with language materially indistinguishable from 18 U.S.C. § 3156(a)(4)(A)"); United States v. Wallace, 461 F.3d 15, 40 (1st Cir. 2006) ("Robbery has a relatively high base offense level, reflecting the serious nature of the offense."); United States v. T.M., 413 F.3d 420, 426 (4th Cir. 2005) ("The legislative history of § 924(c) demonstrates a keen and continuing attentiveness by Congress to combating the serious national problem caused by the use of firearms in furtherance of crimes of violence."); United States v. Melguizo, 824 F.2d 370, 371 (5th Cir. 1987) ("We find that a possible sentence of ten years is also sufficient indication that the offense is serious."); 18 U.S.C. §§ 924(c)(1)(A)(iii) (imposing minimum prison sentence of ten years and implied maximum of life imprisonment), 1951(a) (imposing maximum prison sentence of twenty years), 3142(g)(1) (listing question of "whether the offense is a crime of violence or involves a firearm" as among important factors for assessing nature and circumstances of offense), 3156(a)(4)(A) (defining "crime of violence" under Bail Reform Act to include offenses with "an element of use, attempted use, or threatened use of physical force against the person or property of another"); and

B) included circumstances evidencing danger to the public beyond that inherent in the nature of the charged offenses, in that the evidence (described in the affidavit in support of the [criminal c]omplaint) indicates that the defendant and his coconspirators shot and killed their attempted robbery victim in an altercation in which three of the defendant's coconspirators also incurred gunfire injuries, which

-3-

shootout occurred after the defendant and his coconspirators stalked the victim's residence and business for multiple days with the intent to ambush their victim and his family;

2) the weight of the evidence against the defendant (as detailed in the affidavit submitted for the [criminal c]omplaint and thus not repeated here) would support a finding of guilt beyond a reasonable doubt against the defendant for the charged offenses; and

3) the history and characteristics of the defendant raise the following concerns regarding danger to the community his release would present:

A) the defendant possesses a criminal history dating back to age eighteen, which includes, inter alia, convictions for two counts of Felony Robbery With a Dangerous Weapon and two counts of Felony Second Degree Kidnapping, for which he received 51-to-71 months' imprisonment, as well as a conviction for Felony Larceny, for which he received a sentence of eight-to-ten months' imprisonment;

B) the defendant committed the Felony Larceny offense while on four separate bonds for felony weapons and kidnapping offenses; and

C) since his release from the foregoing lengthy incarcerations, the defendant incurred various drug convictions as well as a charge (dismissed after issuance of the [criminal c]omplaint) of Felony Assault by Strangulation, which allegedly occurred less than a month before the instant offense conduct.

The Court finds that, even assuming the defendant has rebutted the statutory presumption of detention through his proffer of a responsible third-party custodian, the record establishes by clear and convincing evidence that the defendant's release poses a danger to the community in the form of continued involvement in dangerous criminal activity. Put simply, the record reflects the defendant's continuing involvement in extremely serious, terribly violent conduct, which a lengthy period of incarceration, judicial supervision, and a supportive family failed to deter. As such, even home incarceration with electronic monitoring and a third-party custodian remain[s] insufficient to offset the risk the defendant's

>     release would present, as there exist too many
>     opportunities for the defendant to continue engaging in
>     the type of dangerous, violent conduct in which he has
>     repeatedly engaged before any response could reasonably
>     occur to an alert from the third-party custodian or
>     electronic monitoring system.  Under the circumstances,
>     the Court cannot release the defendant.

(Id. at 2-7 (internal brackets and ellipses omitted).)

A grand jury for this District subsequently indicted the defendant (and others) for the attempted Hobbs Act robbery and Section 924(c) offenses alleged in the criminal complaint, as well as related charges of conspiracy and murder. (See Docket Entry 120.) The Court (per Chief United States District Judge Thomas D. Schroeder) – with the consent of the defendant – thereafter designated this case as complex and continued any trial until at least June 2020. (See Docket Entry 154.) Shortly after filing the instant Motion, the defendant agreed to "the setting of this matter for trial during the January 2021 Criminal Term" (Docket Entry 191 at 2) and the Court (per Chief Judge Schroeder) then set the trial for January 19, 2021 (see Docket Entry 196).

## DISCUSSION

As documented above, "after a hearing . . ., the [Court found] that no condition or combination of conditions will reasonably assure the . . . safety of . . . the community, [and thus the Court] . . . order[ed] the detention of the [defendant] before trial," 18 U.S.C. § 3142(e)(1). Notwithstanding that finding, the defendant's "[detention] hearing may be reopened . . . at any time

-5-

before trial if the [Court] finds that information exists [1] that was not known to the [defendant] at the time of the hearing and [2] that has a material bearing on the issue whether there are conditions of release that will reasonably assure . . . the safety of . . . the community." 18 U.S.C. § 3142(f). Alternatively, the Court "may, by subsequent order, permit the temporary release of the [defendant], in the custody of . . . [an] appropriate person, . . . for [a] compelling reason." 18 U.S.C. § 3142(i).

The instant Motion argues for the defendant's release under the foregoing statutory provisions as follows:

> The state of North Carolina, the United States and the world at large are currently confronting a public health crisis on a scale unprecedented in over a century. The Novel Coronavirus ("COVID-19") with exponential growth, is claiming the lives of thousands . . . .
>
> Our nation's top infectious disease experts have stated that the virus transmits readily and that it has a high degree of morbidity and mortality.
>
> The U.S. Centers for Disease Control and Prevention ("CDC") indicates that the virus is spread between people who are in close contact with one another . . . . The CDC recommends that people stay at least 6 feet apart from other people and not gather in groups. People are further recommended to stay out of crowded places and avoid mass gatherings. The CDC also notes certain people are at higher risk for severe illness. Those people are specified as those 65 and older and those with certain underlying medical conditions. One of the medical conditions specified by the CDC is asthma.
>
> . . . .
>
> [The d]efendant suffers from asthma. . . . [R]ecords [from the Durham County Jail] document a prior diagnosis for asthma and indicate that [the d]efendant had been

prescribed a Levalbuterol inhaler while an inmate at the Durham County Jail.

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease. The outbreak of COVID-19 at Neuse Correctional Institution in Goldsboro, North Carolina is a perfect example. As of April 29, 2020, 470 of the prison's roughly 770 inmates had been diagnosed with COVID-19. Two of the inmates at Neuse have died from COVID-19 complications.

. . . .

Further information that was not available to the [C]ourt at the time of his original hearing concerns the length of the proceedings . . . . At th[e] time [of the hearing], it was believed that the [d]efendant's case could proceed to trial in February or March 2020.

. . . [T]he government [subsequently] recommended that the [C]ourt continue [the d]efendant's trial date to January 2021.

. . . .

[The d]efendant submits that there is information that was not known to the [d]efendant at the time of his initial detention hearing that has a material bearing on the issue of whether there are conditions of release that would reasonably assure his appearance and the safety of the community. . . . [T]hat same information constitutes a compelling reason for his temporary release under 18 U.S.C. § 3142(i).

Specifically, . . . [the d]efendant must be seen as a person who is at higher risk for severe illness than others according to the CDC. . . .

Additionally, at [the d]efendant's detention hearing in September 2019, it was believed that his case would be resolved in a matter of months. [He] now . . . will be maintained in [custody] until sometime in 2021. Given the extreme risk to the [d]efendant because of his health condition, he requests that the [C]ourt reconsider his detention and allow him to be released on home confinement.

-7-

(Docket Entry 183 at 3-7 (internal paragraph numbers, subheadings, and footnote omitted); see also Docket Entry 85 at 2 (documenting the defendant's description of his "asthma" as "only [a] minor medical problem[]" and self-report of "good physical health").)[1]

The Court concludes that the record (as now supplemented):

(A) continues to establish by clear and convincing evidence that the defendant's release on available conditions would pose a risk of danger to the community, such that his detention remains appropriate under Paragraph (1) of Subsection 3142(e); and

---

[1] The instant Motion also includes a number of allegations about conditions in the Alamance County Jail where (at that time) the United States Marshals Service had placed the defendant. (See Docket Entry 183 at 5-6.) According to the instant Motion, those conditions "violate[d] the CDC guidelines on how to prevent the disease which could very well kill him." (Id. at 7.) The defendant's Supplement to the instant Motion, however, acknowledges that he "is now maintained at the Durham County Jail. The Durham County Jail is a newer facility that does provide some improvements in his living conditions over that of the Alamance County Jail." (Docket Entry 192 at 1; see also id. at 1-2 ("[H]aving been recently admitted to this facility, [the defendant] remain[ed] in quarantine for 14 days before being moved into general population. [While in quarantine,] he spen[t] 23 hours a day in a single cell. When he [wa]s released for one hour a day, he [went] into a dayroom where he ha[d] contact with approximately 8 to 9 other inmates. The Durham County Jail does provide masks for inmates to wear, although it is not required that they wear masks. The dayroom is large enough to allow social distancing if the inmates choose to do so. All of the staff members working at the Durham County Jail wear masks. . . . [In general population, inmates are] maintained in a single cell at night, but released to a dayroom during the day . . . [with] approximately 70 other people. The dayrooms are large and could accommodate social distancing if the inmates so choose. While inmates are given masks, they are not required to wear them.").) "[D]espite [t]his change of location, [the Supplement asserts that the defendant's] health condition continues to put him at extreme risk and requests the Court to reconsider his detention and allow him to be released on home confinement." (Id. at 3.)

(B) does not establish a compelling reason warranting the defendant's temporary release under Subsection 3142(i).

As to the first of these matters, neither the instant Motion nor the Supplement thereto explains how the defendant's COVID-19-related health concerns and/or the projected length of his pretrial detention conceivably could alter the Court's finding "by clear and convincing evidence that the defendant's release poses a danger to the community in the form of [his] continued involvement in dangerous criminal activity" (Docket Entry 114 at 6-7; see also id. at 7 ("[E]ven home incarceration with electronic monitoring and a third-party custodian remain[s] insufficient to offset the risk the defendant's release would present . . . .")). (See Docket Entries 183, 192.) In the absence of any such explanation, the Court adheres to the view that the defendant's life-long pattern of dangerous criminal behavior and disregard for court-ordered obligations establishes by clear and convincing evidence that his release on available conditions would pose an unreasonable risk of community danger. As a result, the defendant must remain detained under Paragraph (1) of Subsection 3142(e).

Regarding the instant Motion's request under Subsection 3142(i), the Court concludes (at least on the present record) that no compelling reason exists to allow the defendant's temporary release, particularly given his disturbing history. To begin, the defendant has not alleged that he faces actual exposure to the

-9-

virus that causes COVID-19 at his detention site and has admitted that officials there take steps to mitigate the risk of exposure. (See Docket Entry 192 at 1-2.)  Accordingly, in the words used by another court in denying a similar release request:

> [The defendant's] arguments [against] being incarcerated are general and speculative. . . .  Unquestionably, avoiding crowds and social distancing are recommended to reduce the risk of transmission.  But [the defendant has not alleged] . . . any known cases of COVID-19 at the facility, and instead argues that an outbreak is inevitable.  This argument is speculative.

United States v. Clark, No. 19-40068, 2020 WL 1446895, at *5 (D. Kan. Mar. 25, 2020) (unpublished) (internal citations omitted); see also United States v. Williams, Crim. No. 13-544, 2020 WL 1434130, at *2 (D. Md. Mar. 24, 2020) (unpublished) ("The [Emergency Motion for Reconsideration of Bond based on COVID-19] goes on to note that [detainees] are at special risk given their living situation. These are challenges that cannot be denied, but as they relate to the issue of release, they are concerns not concrete enough to justify the release of [the movant]." (internal citation and quotation marks omitted)); United States v. Jackson, Crim. No. 18-216, 2020 WL 1445958, at *2 (W.D. Pa. Mar. 24, 2020) (unpublished) ("[The movant] invites me to speculate that COVID-19 is present or imminent in the [facility that houses him] . . . justify[ing] the extreme measure of releasing him to home detention pending sentence.  I do not agree that such a release is warranted by the facts of this case, or the actual circumstances at the jail.").

-10-

Case 1:19-cr-00529-UA   Document 197   Filed 06/24/20   Page 10 of 13

Furthermore, in light of the defendant's abysmal record, his request for release because of the risk he may contract COVID-19 cannot stand the test of reason, as illustrated in this analysis from another court that confronted an analogous request:

> [The defendant's] proposed release plan addresses only isolated aspects of public health officials' recommendations while ignoring other risk factors that would arise if he were released from custody. . . .
>
> [The defendant] does not address the extent to which his risks could be exacerbated if he returns to [the community]. . . . [H]e offers no evidence to explain how [his proposed release plan] mitigates the risk of infection. For example, he does not . . . identify any screening practices or concrete COVID-19 precautions being taken [in the home where he would reside]. He therefore offers nothing more than speculation that [his release plan] would be less risky than [remaining in detention] . . . . And he does not address . . . [his community] health care system's capacity to provide him with adequate treatment if he were to contract the virus. . . . [Government officials] ha[ve] ample motivation to prevent any outbreak at the [defendant's detention] facility and, even if an outbreak occurs, to contain and manage it for the well-being of all involved.
>
> . . . .
>
> In considering [the defendant's] release . . . based on circumstances related to COVID-19, it is also appropriate to consider the likelihood that the defendant's proposed release plan would increase COVID-19 risks to others, particularly if the defendant is likely to violate conditions of release. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing [COVID-19-related] orders . . ., [probation] officers who come into contact with th[at] defendant for supervision, and others if th[at defendant] is taken back into custody.
>
> In this case, these considerations do not support release. . . . Given the [relevant] considerations

> discussed previously, the [C]ourt believes [the defendant] will likely violate any conditions of release the [C]ourt may impose if the [C]ourt were to issue a []release order. . . .
>
> . . . [The defendant] has been unable or unwilling to remain law-abiding . . . . The [C]ourt has no reason to believe that he would suddenly become compliant now.
>
> Meanwhile, supervising such a high-risk offender out in the community will place [probation] officers at heightened risk of contracting the virus. Location monitoring is not a limitless resource, nor is its installation and monitoring by [probation] officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing. And, when [the defendant] violates his conditions of release (as he likely will), law enforcement officers will be forced to expend valuable resources during a national crisis to take him back into custody . . ., both increasing the risk to them of contracting and spreading COVID-19 and further increasing the risk to the [jail] population when he inevitably returns to the facility. These additional considerations weigh in favor of denying the [instant M]otion.

Clark, 2020 WL 1446895, at *6-7 (internal citations and quotation marks omitted); see also Jackson, 2020 WL 1445958, at *2 ("I also must keep in mind the substantial burden that releasing . . . defendants would place on the U.S. Probation Office at a time when conditions already are not conducive to such monitoring.").

## CONCLUSION

The Court declines to release the defendant, because, "[t]he existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card." Williams, 2020 WL 1434130, at *3; see also United States v. Adams, Crim. No. 19-257-3, 2020 WL

-12-

1457916, at *1 (D. Md. Mar. 25, 2020) (unpublished) ("[A]s troubling as the current COVID-19 situation is, it does not present the kind of extraordinary reason [that requires] release.").

**IT IS THEREFORE ORDERED** that the instant Motion (Docket Entry 183) is **GRANTED IN PART and DENIED IN PART,** in that the Court has reconsidered the propriety of the defendant's detention, but has concluded that (A) he remains subject to detention under Paragraph (1) of Subsection 3142(e), and (B) no compelling reason justifies his temporary release under Subsection 3142(i).

                                            /s/ L. Patrick Auld
                                            **L. Patrick Auld**
                                   **United States Magistrate Judge**
June 24, 2020