```
 1                  IN THE UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
 2

 3   UNITED STATES OF AMERICA    )   CASE NO. 1:19CR529-1
                                 )
 4            vs.                )
                                 )   Winston-Salem, North Carolina
 5   MAURICE OWEN WILEY, JR.     )   April 19, 2021
     _____   9:17 a.m.
 6

 7               TRANSCRIPT OF THE TRIAL/JURY SELECTION
                      VOLUME I OF VII (Pgs. 1-247)
 8              BEFORE THE HONORABLE THOMAS D. SCHROEDER
                     UNITED STATES DISTRICT JUDGE
 9

10   APPEARANCES:

11   For the Government:     GRAHAM GREEN, AUSA
                             CRAIG M. PRINCIPE, AUSA
12                           Office of the U.S. Attorney
                             251 N. Main Street, Suite 726
13                           Winston-Salem, North Carolina 27101

14
     For the Defendant:      JOHN D. BRYSON, ESQ.
15                           Wyatt Early Harris & Wheeler, LLP
                             P.O. Drawer 2086
16                           High Point, North Carolina 27261-2086

17                           MARK P. FOSTER , JR., ESQ.
                             Foster Law Offices, PLLC
18                           409 East Boulevard
                             Charlotte, North Carolina 28203
19

20   Court Reporter:         BRIANA L. BELL, RPR
                             Official Court Reporter
21                           P.O. Box 20991
                             Winston-Salem, North Carolina 27120
22

23

24
           Proceedings recorded by mechanical stenotype reporter.
25          Transcript produced by computer-aided transcription.
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

```
 1              P R O C E E D I N G S
 2        (The Defendant was present.)
 3              THE COURT:  All right.  Good morning, Mr. Green.
 4              MR. GREEN:  Good morning, Your Honor.  The matter we
 5    have this morning, Your Honor, for jury trial is United States
 6    versus Maurice Owen Wiley, Jr., 19CR529-1.
 7              THE COURT:  All right.  Good morning, everyone.
 8              I see the Defendant is here, along with counsel.
 9              Mr. Bryson and Mr. Foster, are you all ready for
10    trial this morning?
11              MR. BRYSON:  Yes, Your Honor.
12              THE COURT:  All right.  We're going to begin the
13    selection of jurors in just a moment.  Before I do that, I
14    thought I would ask if there are any other issues that we need
15    to address before we get into the jury selection question?
16              MR. GREEN:  There's not.  There was communication
17    with the court staff about putting another monitor so, I think,
18    these jurors out here -- I saw that the IT folks were working
19    on that.  I think that would be a solution.
20              THE COURT:  All right.  Have you talked to your
21    opponents as well?  Have you all tried to work together on
22    that?
23              MR. GREEN:  I think we are good to go on an extra
24    monitor.
25              THE COURT:  All right.  We'll want to make sure all
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  the jurors have a monitor they can see, so we'll certainly ask

2  once we get started about that.

3         Okay.  Give me just a minute here.

4         So what I intend to do is bring in the prospective

5  jurors.  They will be seated in the numbered spots all

6  throughout the courtroom here, socially distanced, and then

7  I'll begin with the jury selection.

8         I have been handed a few of the questionnaires, which

9  I understand you all have seen as well.  I don't know if

10 anybody wants to be heard on those, but we'll do that in just a

11 minute.  And then I will go through the jury selection issues.

12        Hold on just a minute.

13        So my intention is to put 12 jurors in the well here

14 and select from the 12.  Once we've done that, and depending on

15 how many are selected for the first go-around, then I would

16 excuse both the prospective jurors and those who are not chosen

17 from the 12, instructing the prospective jurors to come back

18 tomorrow for trial with my admonitions about not doing any

19 research, et cetera.

20        Then we would put whatever additional number need to

21 be put in to pick the 12.  So we'll be working as if we

22 normally would work with a jury box of 12 people, except they

23 will be socially distanced throughout the courtroom.

24        Once we do that, I'll pick three alternates under

25 Rule 24.  My reading is you're entitled to two peremptories.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

So there will be no carryovers of your earlier peremptories.
You'll just get two peremptories.  So I think I'll probably
choose eight to question.  Maybe we'll go with one more than
that.  We'll see.  But we'll choose enough so that out of that
group hopefully we'll be able to pick three alternates.  It
will be the three lowest-numbered jurors who have not been
struck.  So if, out of the alternates, we have Seats 1, 2 and
3, and you strike 1, but not 2, No. 2 would be the first of the
alternates.  It will work like that.

          Any question about that?

          **MR. GREEN:**  Not from the Government.

          **MR. BRYSON:**  No, Your Honor.

          **THE COURT:**  All right.  I went through the proposed
voir dire questions from the Defendant.  I didn't have any from
the Government that I recalled.

          **MR. GREEN:**  You did not.

          **THE COURT:**  And I believe I've covered -- if not each
question, I believe I've covered topically what you were
interested in.  The one area that I wanted to talk to you about
was, as to the gang question, I was going to ask the following:

          You may hear evidence that people involved in this
case, including the Defendant, Maurice Owen Wiley, Jr., may
have been involved in certain street gangs.  If such evidence
were presented, would that fact impair your ability to be the
type of fair and impartial juror that I described earlier?

          US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1              And then as to gangs, I was going to ask:  Have you

2  or any close family member or friend been a victim of gang

3  crime or witnessed such?

4              And then I would also ask:  Have you or a close

5  family member or friend been a member of a street gang?

6              Does that cover the essence of what the Defendant

7  wished to have?

8              **MR. BRYSON:**  Yes, Your Honor.

9              **THE COURT:**  All right.  Now, my understanding is that

10  you all would be wearing your masks throughout the trial.  Is

11  that what the lawyers wish to do?

12              **MR. GREEN:**  Yes, Your Honor.

13              **THE COURT:**  All right.  Now, there was a question --

14  I thought Mr. Wiley may have made a comment that he wanted not

15  to wear his mask.  Where do we stand on that?

16              **MR. BRYSON:**  Your Honor, we've discussed that with

17  him, and he's going to wear a mask.

18              **THE COURT:**  All right.  For the record, he's free to

19  do what he wishes.  If he wishes not to wear the mask, that's

20  his prerogative, and I'll let him choose either way.  If at any

21  point his decision changes and anybody wants me to tell the

22  jury something about what I've told the lawyers and anybody

23  else at counsel table, let me know so that there is no adverse

24  inference the jury might draw from anything.  Okay.

25              About anti-Asian activity, I was going to ask the

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 following:

2          The alleged victims in this case are of Asian

3 descent.  Would that fact affect your ability to participate in

4 this case as a fair and impartial juror?

5          And then also this question:  Do any of you belong to

6 any organization whose purpose is to oppose anti-Asian

7 discrimination and/or violence or participate in any activity

8 related to the condemnation of anti-Asian violence?

9          That was based on your wording.  My only concern is

10 there's almost a double negative in that.  It's opposing

11 anti-Asian, but that's way you had it worded.

12          So what's your reaction to that?  Are you satisfied

13 with that?

14          **MR. BRYSON:**  And if you want to correct my double

15 negative, that's fine.  The only other thing I would say is it

16 sounds like the Court's question is limited to belonging to an

17 organization, and I think one of my questions was whether

18 anybody has recently participated in any --

19          **THE COURT:**  It was both.  It was:  Do you belong --

20 do any of you belong to any organization whose purpose is to

21 oppose anti-Asian discrimination and/or violence or participate

22 in any activity related to the condemnation of anti-Asian

23 violence?

24          I could say "or have you participated."

25          **MR. BRYSON:**  Thank you.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

```
 1              THE COURT:  Would that work?
 2              MR. BRYSON:  Yes.
 3              THE COURT:  Okay.  I was going to tell the jury five
 4    to seven days' estimate for trial.  I hope that's in the right
 5    ballpark.
 6              MR. GREEN:  That is, Your Honor.
 7              THE COURT:  All right.  Now, my understanding is that
 8    there is a stipulation by the Defendant as to his prior felony
 9    conviction.
10              MR. GREEN:  There is.
11              THE COURT:  One of the elements is that he be aware
12    that he is a felon.
13              MR. GREEN:  The stipulation includes that allegation.
14              THE COURT:  Okay.  You should have been shown several
15    of these sheets that the jurors filled out today.  Typically, I
16    would ask if there are any that would be cause challenges.  So
17    I would be happy to hear from either side if they want to be
18    heard.
19              My inclination at the front end was just to bring
20    them all in, having read these and, if there are any particular
21    problems, deal with them on a juror-by-juror basis.  But I'll
22    be happy to hear from you.
23              Mr. Green, let me start with you.
24              MR. GREEN:  Your Honor, just for purposes of
25    identifying individuals that may be of concern or might meet
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

that category of further questioning, Mr. Green indicated that

he had cancer and had to -- that's Juror No. 26 -- and would

have to have accessibility to the restroom "a lot," in his

words.

Juror No. 33, Ms. Metz, indicated that high-stress

circumstances bring on migraines that can lead to seizures.  As

I took it, I think Ms. Metz is probably messaging us that this

may be one of those high-stress circumstances.  I do not recall

whether she checked about speaking outside the presence of

other jurors about that.

Mr. Roberts indicated he had a doctor's appointment

tomorrow.  That's No. 34.

Mr. Brandis, Juror No. 4, indicated that he had a

stepson that was involved in an assault on a female case about

20 years ago.  Certainly I don't recall him asking whether

that -- he wanted to talk to you outside the presence of the

jury, No. 4, Mr. Brandis.

**THE COURT:**  He answered no.

**MR. GREEN:**  Okay.  That's fine then, Your Honor.

Thank you.

Ms. Riddle, I believe did -- Juror No. 5 -- did

answer, yes, that she would be embarrassed to speak outside --

speak in front of other jurors, and she had a brother who had

been involved in some type of drug charge.

And then Mr. Drew, Juror No. 15, apparently has had a

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  recent medical event, a cyst, and he indicated a need to see

2  the dermatologist.

3          And then, finally, Juror No. 3, Ms. Ingram -- and I

4  was having a little difficulty deciphering her questionnaire as

5  to what she was trying to communicate, but she did apparently

6  have both an uncle and a sister involved in a criminal offense.

7          But I will say, Your Honor --

8          **THE COURT:**  No. 3?

9          **MR. GREEN:**  Yes, Your Honor, Ms. Ingram.

10         **THE COURT:**  Oh, yes, uncle and sister.  Okay.  But --

11  and she answered no about whether it would be a problem.

12         **MR. GREEN:**  Okay.  And certainly as to cause or not,

13  I will say that, as a general proposition, for any juror that's

14  indicated a physical infirmity that may cause them some

15  difficulty in either paying attention or focusing, we would

16  certainly -- would not object to their excusal for cause for

17  any juror that is going to have some medical difficulty.

18         **THE COURT:**  All right.  Mr. Bryson?

19         **MR. BRYSON:**  Your Honor, our concern would be limited

20  to the three jurors that expressed medical issues:  The

21  high-stress juror, the juror that needed frequent bathroom

22  trips, and the jury that had the cyst burst.

23         **THE COURT:**  26, 33, and 34?

24         **MR. BRYSON:**  I think that's right.

25         **THE COURT:**  26 is Green who mentioned a prostrate

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  problem.

2         MR. BRYSON:  Right.

3         THE COURT:  33 is Metz, Debra Metz, who indicated

4  anxiety and migraines.  And 34 is a doctor appointment.

5         MR. GREEN:  I believe they are probably referring to

6  Juror No. 15, Mr. Drew, who had the cyst.

7         THE COURT:  Okay.  Not 34 then.  It would be 15.

8  Okay.

9         MR. BRYSON:  Those are the three that we would not

10 object to being excused for cause, Your Honor.

11        THE COURT:  Okay.  Do you want to hear from them

12 first, or do you want to go ahead and excuse them?

13        MR. BRYSON:  We don't feel the need to hear from

14 them.

15        MR. GREEN:  Neither does the Government?

16        THE COURT:  All right.  So my understanding is, based

17 on the questionnaires alone, both parties are in agreement to

18 dismiss No. 26, John Green, who indicates on his sworn

19 questionnaire he has prostate cancer that's been removed and

20 has to make frequent bathroom trips; correct?

21        MR. GREEN:  Correct, Your Honor.

22        MR. BRYSON:  Correct, Your Honor.

23        THE COURT:  No. 33 is Ms. Metz who has indicated that

24 she has anxiety and migraines that lead to fainting and

25 possible seizures and is on daily medication.  Am I correct?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

```
 1              MR. GREEN:  Correct.

 2              MR. BRYSON:  Yes, sir.

 3              THE COURT:  And then the last one is Juror No. 15,

 4   who is Drew -- Jeremy Drew, I believe, who indicates has a cyst

 5   that's burst and is under treatment for the cyst; is that

 6   correct?

 7              MR. GREEN:  Yes, Your Honor.

 8              MR. BRYSON:  Yes, Your Honor.

 9              THE COURT:  Okay.  Those three will be struck for

10   cause, medical cause, based on the agreement of the parties.

11              So you're in agreement the rest can be brought in,

12   and we will question them normally?

13              MR. GREEN:  Yes, Your Honor.

14              MR. BRYSON:  Yes, Your Honor.

15              THE COURT:  If you want any further follow-up on any

16   of those issues with the others and I fail to do that, please

17   let me know at the appropriate time when I ask you about that.

18              All right.  I think we're ready then to bring the

19   prospective jurors into the courtroom.

20              MR. GREEN:  I'm going to hand up a proposed schedule.

21   I have given this to defense counsel.  This is aspirational,

22   but it may help the Court understand where we are.

23              THE COURT:  All right.  Thank you.

24              Can you all hear me if I wear my mask like this?

25              MR. GREEN:  I can.
```

US v. Wiley -- Trial/Jury Selection -- 4/19/21

1          **MR. BRYSON:**  Yes, sir.

2          **THE COURT:**  All right.

3      (Prospective jurors entered the courtroom.)

4          **DEPUTY COURTROOM CLERK:**  There are 32 jurors.

5          **THE COURT:**  All right.  Thank you.

6          All right.  Good morning, ladies and gentlemen.  At
7  this time I'm going to ask Ms. Engle to administer an oath to
8  all of you.

9      (Prospective jurors were sworn/affirmed.)

10         **MS. STANBACK:**  Excuse me, Judge.  May I approach?

11         **THE COURT:**  Yes.

12     (Off-the-record discussion.)

13         **DEPUTY COURTROOM CLERK:**  Your Honor, 29 jurors are
14 present and now sworn.

15         **THE COURT:**  Thank you.

16         Ladies and gentlemen, my name is Tom Schroeder.  I am
17 going to wear my mask while I speak to you.  If you have any
18 difficulty hearing me, let me know by raising your hand and
19 I'll remove it.

20         I'm a United States District Judge.  You're in a
21 federal courthouse here, as you know.  I want to welcome each
22 of you to your jury service today.

23         Let me say that we understand that you have been
24 summoned here for jury service at some potential sacrifice to
25 the other plans that you may have in your life, whether it's

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1   work outside the home or, for some these days, working from

2   home, or work inside the home or perhaps even some time off.

3   Every effort is going to be made to see that your time here is

4   used as effectively as possible.

5           For some of you, this may be your first experience as

6   a juror, and you may be apprehensive.  Please do not be.  While

7   it is a great responsibility to serve as a juror, it is my

8   intention to try to help you understand more about your jury

9   service.

10          Your jury service is a duty that should command your

11  pride because it affords you an opportunity to express your

12  faith in our nation's judicial system.  It is one of the

13  highest callings of your citizenship.  For over 230 years, our

14  Constitution has guaranteed the right of a defendant in a

15  criminal case to a public jury trial.  Our system is a unique

16  system.  It shows the confidence that the Framers of our

17  Constitution had in their fellow citizens by making them their

18  judges.  The United States is one of the few countries in the

19  world with a jury system.

20          You have the distinction of having been selected as

21  having qualifications of judicial stature.  No higher honor or

22  duty can be imposed upon any citizen than that of sitting in

23  judgment upon the facts that may be presented to you in a civil

24  or a criminal case.  For that reason, there's probably no

25  single person working in North Carolina that is more essential

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1   than you at this moment.  I thank you for your service to our

2   nation and to our Constitution.

3           While jury service may not come at the most

4   convenient time for some of you, I do ask that you reflect on

5   your duties as a citizen to ensure the promises of our

6   Constitution.  At this very moment, there are men and women in

7   our country's armed services who are in foreign lands and in

8   harm's way defending our very freedoms.  You're not being asked

9   to do that.  Rather, we ask that you sit in this

10  climate-controlled courtroom for a few days to carefully hear

11  the evidence in this case.

12          We are all aware that as nation we are still dealing

13  with the coronavirus pandemic.  Fortunately, vaccines are now

14  available, and the public health community has learned much

15  about the virus and how to address it.  I want to assure you

16  that this court has engaged in extensive preparation with

17  consultation with public health experts to ensure that we are

18  taking all reasonable precautions to make your participation as

19  a juror as safe as practicable.

20          I will add that we've had other trials as well, and

21  to my knowledge, there's been no incidences of anybody having

22  health consequence due to the virus.

23          As recommended by the Centers for Disease Control,

24  medical experts, and other major public health organizations,

25  we have, of course, deferred jury service for anyone who has

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  COVID-19, who has been in recent contact with someone with the
2  virus, or who has a temperature or other symptom.
3         We require everyone in this building to wear masks
4  and to socially distance.  If you have your own mask, you are
5  free to wear it as long as it does not have any political or
6  other message on it.  Otherwise, the court has plenty of
7  disposal masks for your use.
8         There is also plenty of hand sanitizer for your use.
9  I encourage you to do your part by washing your hands
10 regularly, using hand sanitizer, and socially distancing from
11 others, as we have socially distanced you here in this
12 courtroom.
13        The lawyers have asked me to advise you that all of
14 them, as well as the Defendant in this case, Mr. Maurice Owen
15 Wiley, Jr., have been fully vaccinated against the virus.  The
16 lawyers will also wear their masks throughout the trial and
17 when they approach any witness for questioning.
18        I can tell you that I have been fully vaccinated, as
19 have many of my court staff, including, most importantly,
20 Ms. Engle, my deputy clerk of court, with whom you may have
21 some interaction from time to time.
22        But let me say that if anyone is apprehensive about
23 serving for health reasons, we will discuss that and I will
24 consider excusing you.  I realize the circumstances in which we
25 are conducting this trial.  Let me remind you, however, that we

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  have had trials through wars, through hurricanes, through

2  tornadoes, and, yes, even through pandemics.  The Constitution

3  has endured because citizens have answered the call that "We,

4  the people," in the very first words of our Constitution, have

5  pledged to one another for centuries.  So if you're

6  apprehensive about serving to the point where you believe you

7  would not be able to pay attention the way you should, please

8  let me know.

9          It is the constitutional right of every citizen to

10 have the facts of his or her case, be it civil or criminal,

11 heard and determined fairly and impartially by a jury of his or

12 her peers.  That is what you would want.  That is what the

13 parties here want and are entitled to have.

14         In a jury trial, the judge and the jury have

15 separate, yet equally, important functions.  I will see that

16 the trial is conducted according to established rules of

17 procedure, determine what is proper evidence, and instruct the

18 jury as to the law.  These rulings and instructions the jury

19 must follow.

20         Your duty as jurors is to listen carefully to the

21 evidence and to determine the facts.  When the case has been

22 submitted to you, you will carefully scrutinize and weigh the

23 evidence in light of the law and return a just verdict.  You

24 will be the sole judges of the facts and the credibility of the

25 witnesses.  The final determination, or verdict, rests solely

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  with you.

2        If I commit an error in my rulings or instructions, I

3  am responsible for such errors.  If the jury reaches an

4  erroneous verdict, the responsibility rests solely with the

5  jury.  Unless both the judge and jury perform their duties

6  fairly and impartially and without fear, favor, prejudice, or

7  sympathy, then justice will not be done.

8        Upon your acceptance as jurors, you will become

9  officers of the court, which imposes grave responsibilities

10  upon you and enlists your best talents of appraisal and

11  judgment.  Morality and justice dictate that you render a

12  verdict above reproach and beyond suspicion, and this I feel

13  sure that you will do.

14        I want to emphasize that each party is entitled to a

15  fair and impartial trial, free from sympathy or prejudice; and

16  these are not idle words, and the application of them is often

17  not easy.  As the working of the human mind is the product of

18  education, experience, and observation, no two minds think

19  alike.  We all have our sympathies and prejudices, and some are

20  so deeply embedded, we could not put them aside, however hard

21  we might try.  If anything about a case in which you are being

22  considered as a juror evokes your sympathy or prejudice

23  sufficiently to impair your ability to be impartial, then you

24  should freely disqualify yourself from consideration on that

25  jury.  Nobody can read your mind.  Only you know what it

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  contains.

2          You would say that any judge who did not hear and

3  decide a case solely on the evidence and pursuant to the law,

4  free from sympathy and prejudice, would be unfit to sit as a

5  judge on that case.  The same principle applies to a member of

6  the jury.

7          In our system of justice, jurors, not the judges,

8  determine the facts.  I don't determine who wins or loses a

9  trial; the jurors do.

10          If you are selected to sit on this case for trial, it

11  is very important for you to know and understand that your sole

12  source of information must come from the evidence presented to

13  you here together in this courtroom.  You will not be deciding

14  this case on the basis of what you may have read or heard

15  outside the courtroom or according to any predisposition that

16  you may have.

17          You shall not do any type of research of any kind

18  concerning anything related to this case.  For example, you

19  shall not do a computer search of any kind in the evening or at

20  any other time concerning anything related to the case.  You

21  cannot supply the answer to unanswered questions, conjecturing

22  what you might think was the probable answer.  The answer must

23  be found solely within the confines of the evidence presented

24  to you here as jurors together in this courtroom, and herein

25  lies one of the judges' most difficult problems.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          Again, if you are selected to serve as a juror, you
2    will be a judge, a judge of the facts of this case.  This
3    prohibition on doing any type of research is based on a very
4    important principle, fairness.

5          Believe it or not, there are things on the Internet
6    that just aren't true.  Shocking, I'm sure.  Moreover, in a
7    case the lawyers have an opportunity to present disputed
8    evidence to a judge before a trial so that a judge can
9    determine whether the evidence is admissible in the case.  If a
10   juror does independent research, the lawyers and the parties in
11   the case and the judge do not know anything about the research.
12   Such independent research is unfair to your fellow jurors, to
13   the parties, to the lawyers, to the Court, and to our trial
14   process under our Constitution of the United States.

15         You shall also not talk or communicate about the case
16   with anyone or let anyone talk or communicate about the case
17   with you, even your fellow jurors, before all the evidence has
18   been received and you have retired to the jury room to
19   determine your verdict.

20         You also shall not read about the case in the
21   newspaper, if there is any reporting, or look at or listen to
22   any news reports about it, if there is any.

23         These principles, again, are based on fairness.  The
24   parties are entitled to have you determine the case solely on
25   the evidence you see and hear in the courtroom, and only after

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  you hear all of the evidence together in the courtroom, hear

2  all the arguments together in the courtroom, and hear all my

3  instructions on the law together in the courtroom.

4        Now, this prohibition on communication about the case

5  includes all forms of communication.  For example, you shall

6  not text about the case or tweet about the case or Facebook

7  about the case, or use any of those forms of communication.

8  I'm sure you may know more about that than I do.  There are so

9  many ways we can communicate now as a people, but you can't do

10 any of that or let anybody communicate with you about the case.

11 If anyone does try to communicate with you about the case,

12 please bring it to my attention.

13       My instructions to not talk or communication about

14 the case with anyone or let anyone communicate or talk about

15 the case with you until it is time for you as a jury to

16 deliberate is based on an important principle.  It's no

17 accident that a jury consists of 12 people.  Our Framers did

18 that by design in order to better ensure the impartiality of a

19 jury verdict and the quality of justice resulting from a jury

20 trial.  If that is to be true, then it's necessary for each of

21 the jurors to consider the opinions of your fellow jurors.

22       When you begin your deliberations, it may well be

23 that you will be uncertain as to just what you think about the

24 facts of the case that you must decide.  In all likelihood,

25 some of your fellow jurors will point out important parts of

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  the evidence or make persuasive arguments to you that will in

2  some way influence you in helping you to decide just what the

3  truth of the matter is.

4         In the final analysis, your verdict is supposed to do

5  what the Latin words which make up the word "verdict" means,

6  and that is to speak the truth.  Thus, it is important that you

7  not only not read or listen to any reports about the case, but

8  it's equally important that you not talk or communicate about

9  the case with anyone or to let anybody talk or communicate

10 about the case with you.  And you're not to make up your mind

11 about the case until all the evidence is in, the arguments have

12 all been made, and my instructions on the law have been given

13 to you.

14        Now, we're here today to select 12 people who will be

15 judges of the facts in this case.  I will also select three

16 alternate jurors.  The case is brought by the attorneys, who

17 you will meet in a moment.  They estimate that the trial will

18 take about five to seven days.

19        Let me describe the process for today's jury

20 selection.  Before the pandemic, I would say that ordinarily a

21 jury can be selected by lunchtime.  However, in order to

22 facilitate our selection process, we'll be conducting only the

23 jury selection today, and we will not start the trial until

24 tomorrow.

25        So once prospective jurors are either selected or

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

excused from service, I'm going to allow them to leave for the
day with those who are selected, instructed to return in the
morning to begin the trial.

We have a large room set aside for the jury to use as
a jury room.  There will be bottled water and snacks for your
use there, and the restrooms will be available.

As for the trial, we will start at 9:00.  We'll take
a midmorning break for about 20 minutes, recess for lunch at
about 12:30 p.m.  We'll restart at about 2:00 p.m., take a
20-minute afternoon break, and we will finish every day
promptly at 5:00 p.m.  However, trial is not an endurance
contest.  If anyone ever needs a break, simply raise your hand
and let me know.  I want thank you in advance for being good
stewards of each other's time.  I can assure you that we will
use our time as efficiently as possible.

In my courtroom there are several people you will see
who will be assisting me, and let me introduce them to you now.
You've met Ms. Engle, the deputy clerk of court, who is seated
right in front of me; Ms. Bell, who is our court reporter
transcribing these proceedings; my law clerk is right in front
of me.  There are also computer specialists who, from time to
time, will assist.  And there are courtroom security officers
from time to time who you will see.

This is a criminal case.  A criminal case is when a
person is accused of violating one of the laws passed by

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  Congress which sets out criminal offenses.  When a criminal

2  case is charged, the allegations are brought in a document

3  called an indictment.  If the indictment is amended, as it was

4  in this case at one time, it's called a superseding indictment.

5  My reference to the indictment or superseding indictment is

6  meant to refer to the current indictment.  Keep in mind, an

7  indictment only describes the charges brought.  It is not

8  evidence of guilt.

9         One of the most valued and fundamental principles

10 under our Constitution is that every person charged with a

11 crime is presumed to be not guilty of that charge unless the

12 prosecution is able to prove each and every element of that

13 charge beyond a reasonable doubt.

14        Another valuable and fundamental principle is that no

15 defendant is ever expected to prove him or self -- himself or

16 herself not guilty of any charge.  The Government always has

17 the burden of proof.  In fact, if a defendant in a criminal

18 case elects not to testify or not to present any evidence at

19 all, the jury may not consider that election for any purpose

20 during its deliberations.

21        I'm now going to summarize the charges in this case

22 for you.  Remember these are only charges.  They are simply

23 allegations and not proof.

24        Count One of the indictment alleges that from on or

25 about April 13, 2018, continuing up to and including on or

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1　about April 15, 2018, the Defendant, Maurice Owen Wiley, Jr.,

2　knowingly conspired with one or more persons to commit robbery;

3　that is, Defendant Maurice Owen Wiley, Jr., also known as

4　Tweet, conspired with Darryl Bradford, also known as Stretch;

5　Hykeem Deshun Cox; also known as Chub; Semaj Jayron-Maleek

6　Bradley, also known as Squeeze; Charles Winfor Daniels, also

7　known as Murda; and other persons, known and unknown, to take

8　and obtain United States currency and merchandise from the

9　owners and employees of China Wok by robbery in Durham, North

10　Carolina, in violation of Title 18, United States Code,

11　Section 1951(a).

12　　　　　　Count Two of the indictment alleges that on or about

13　April 15, 2018, Defendant Maurice Owen Wiley, Jr., also known

14　as Tweet; Darryl Bradford, Jr., also known as Stretch; Hykeem

15　Deshun Cox, also known as Chub; Semaj Jayron-Maleek Bradley,

16　also known as Squeeze; and Charles Winfor Daniels, also known

17　as Murda, did unlawfully attempt to take and obtain U.S.

18　currency and merchandise belonging to the China Wok from the

19　possession of the owners and employees of that business by

20　robbery in Durham, North Carolina, in violation of Title 18,

21　U.S. Code, Sections 1951(a) and Section 2.

22　　　　　　Count Three of the indictment charges that from on or

23　about April 13, 2018, continuing up to and including on or

24　about April 15, 2018, Defendant Maurice Owen Wiley, Jr., also

25　known as Tweet; Darryl Bradford, Jr., also known as Stretch;

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 24 of 247

Hykeem Deshun Cox, also known as Chub; Semaj Jayron-Maleek

Bradley, also known as Squeeze; and Charles Winfor Daniels,

also known as Murda; and other coconspirators did unlawfully

conspire with each other and other persons, known and unknown,

to possess firearms in furtherance of a crime of violence in

violation of Title 18, U.S. Code, Section 924(o).

And, finally, Count Four of the indictment charges

that on or about April 15, 2018, Defendant Maurice Owen Wiley,

Jr., having been convicted of a crime punishable by

imprisonment for a term exceeding one year, and with knowledge

of that conviction, knowingly and intentionally did unlawfully

possess, in and affecting commerce, ammunition, that is,

Winchester .45 caliber ammunition, Winchester .40 caliber

ammunition, and Winchester 9mm ammunition.  This is alleged to

be a violation of Title 18, U.S. Code, Sections 922(g)(1),

924(a)(2), and Section 2.

As to all of these charges against him, the

Defendant, Maurice Owen Wiley, Jr., has entered a plea of not

guilty.

Let me describe the procedure we'll use to select our

jury.

We are going to, as I said, select 12 jurors and then

3 alternates.  We will place 12 people into the box, which we

have done here.  I say "box."  We've reconfigured because of

the ongoing pandemic, but we have 5 on the floor and 7 in the

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 | box. So that is our 12. And that's the way the jury will be

2 | reconfigured with the alternates behind. And we did that, as I

3 | said, to keep in you compliance with CDC recommendations to

4 | separate you at roughly 6 feet or so. All right.

5 | I'm going to ask a series of questions to the 12 that

6 | are here in the well of the courtroom, but I ask that everyone

7 | else in the courtroom please listen carefully. Some of you who

8 | are not yet in the box may later be placed in the box; and if

9 | you can't hear my questions at any point, please raise your

10 | hand and tell me that. It may be that some of the jurors that

11 | are currently in the jury box will be returned out of the box

12 | and that you will then be placed into the jury box.

13 | And in order to facilitate the questioning, so I

14 | don't have repeat all of them, I'm going to ask the new jurors

15 | if they would have answered "Yes" to any of my questions. And

16 | I can help you to remember those if you need some guidance with

17 | that; but if you will remember which ones you would answer

18 | "Yes" to, then we'll address those questions. So my first

19 | question for the new jurors who are put into the box will be

20 | whether you would have answered "Yes," and, if so, which

21 | questions. All right?

22 | Now, each of the parties has a certain of number what

23 | we call peremptory challenges, meaning that they can excuse a

24 | certain number of jurors.

25 | The goal of the parties and of the Court is to select

US v. Wiley -- Trial/Jury Selection -- 4/19/21

1  jurors who will be fair and impartial in this case.  What do I

2  mean by that?  The jury must determine the case, whether the

3  Government has proven the charges beyond a reasonable doubt,

4  whether to believe or not to believe the testimony of the

5  witnesses that are called during the trial, whether to believe

6  any other evidence that may be presented.

7           A fair and impartial juror is one who has not made up

8  his or her mind prior to hearing the witnesses and seeing the

9  evidence, but who can listen to the witnesses' testimony and

10  who can judge their credibility and follow all of the

11  instructions that I give, not leaving out some instructions you

12  don't like or choosing to follow some and not others.  A fair

13  and impartial juror follows all of the Court's instructions.  A

14  fair and impartial juror will wait until all the evidence is

15  presented before making up his or her mind.  A fair and

16  impartial juror will decide the facts of this case based solely

17  on the evidence and not based on sympathy, bias, or prejudice.

18           And if you're not selected, it does not mean you

19  can't be fair and impartial.  Don't take it as any indication

20  of what anyone here thinks of your ability to do so.  It just

21  means this may not be the right case for you based on something

22  the lawyers know about the case.

23           At this time let me ask the attorneys to stand and

24  introduce themselves to all the prospective jurors before we

25  begin.

1              Mr. Green.

2              **MR. GREEN:**  Good morning, ladies and gentlemen.  My

3    name is Graham Green.  I'm an assistant United States attorney

4    in the Middle District of North Carolina.  That district runs

5    roughly from Concord, I-77 northbound to the Virginia border,

6    to Durham, northbound and southbound.  My boss is the acting

7    United States Attorney, Sandra Hairston.

8              **MR. PRINCIPE:**  Good morning.  My name is Craig

9    Principe.  I'm also an assistant United States attorney.  I

10   also will be trying the case.

11             **THE COURT:**  Do you have a case agent you want to

12   introduce?

13             **MR. GREEN:**  We do.

14             Also seated at the table, you will see Ms. Collins

15   first.  Ms. Collins is with our office, and she is going to

16   help us do the electronics and some of the exhibits you will

17   see.

18             And then seated to the far left is Maria Jocys.  She

19   is a special agent with the Federal Bureau of Investigation,

20   and you will see her come and go out of the courtroom as we

21   proceed.

22             **THE COURT:**  All right.  Mr. Bryson.

23             **MR. BRYSON:**  Good morning.  My name is John Bryson.

24   I'm an attorney.  I practice in High Point with the law firm

25   called Wyatt Early Harris Wheeler.  I am representing, along

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

 1  with Mark Foster.

 2          Do you want to introduce yourself?

 3          **MR. FOSTER:**  Good morning.  I'm Mark Foster.  I'm an

 4  attorney out of Charlotte.

 5          **MR. BRYSON:**  And also -- stand up -- this is Maurice

 6  Owen Wiley, Jr.  Sometimes you will hear him referred to as

 7  Tweet.

 8          **THE COURT:**  All right.  Thank you.

 9          So, ladies and gentlemen, what I'm going to do is

10  begin my questioning.  It's 10:10.  I'll try to take a break

11  here after a little more than an hour.  You need to understand

12  that whenever I take a break, we all have to stop.  I can't

13  keep going while some go out and use the restroom.  So if

14  you're at the point where you need a break, you're

15  uncomfortable, raise your hand and let me know, and we'll do

16  that; but know that at an appropriate time I do plan to take a

17  break.  It's not an endurance contest.

18          As I said, ordinarily, we would be able to choose a

19  jury by lunch.  We'll just see how we do today.

20          So what I'm going to do at this time is ask for some

21  basic background limited information.  It's not meant to pry,

22  but just a little bit of background.  And then I have some

23  generalized questions to ask.  I don't anticipate that there is

24  going to be anything that you would regard to be embarrassing.

25  I have been doing this for 13 years.  So if there is, though,

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

something that you would regard would elicit an embarrassing

response and you'd rather not give it in open court, we can

arrange to have you come over to the microphone here, and we'll

all put headsets on and then we'll have a discussion; but

everything will be recorded at some point.  Okay?

So let me ask Ms. Engle at this time just to do a

roll call so the lawyers know who is seated in what seats, and

then we'll go from there.

**DEPUTY COURTROOM CLERK:**  Sonia Lancaster, you're in

Seat No. 1.

Anitra Ingram, you're in Seat No. 3.

If you will raise your hand when I call you.  Thank

you.

**THE COURT:**  Seat No. 2?

**DEPUTY COURTROOM CLERK:**  Seat No. 2.  I'm sorry.

Linwood Brandis, you're in Seat No. 3.

Janet Riddle, you're in Seat No. 4.

Richard Nichols, you're in Seat No. 5.

Quentin Queen, you're in Seat No. 6.

Anthony Okafor, you're in Seat No. 7.

And then on the floor, Christopher Putnam, you're in

Seat No. 8.

James Pierce, Seat No. 9.

Melina Rouse, Seat No. 10.

Monica Greene, Seat No. 11.

US v. Wiley  —— Trial/Jury Selection  —— 4/19/21

1          Samuel Doughton, Seat No. 12.

2          Thank you.

3          **THE COURT:**  All right.  I think we'll be able to hear

4    everybody fine with your masks on, but just keep in mind that

5    we're recording this with our court reporter.  You'll want to

6    make sure you can be heard not only by the court reporter, but

7    by everyone here at these tables.  So if you will speak up

8    loudly enough that we can all hear you, that would help.

9          So let me just start with Ms. Lancaster.

10         Can you tell me what county you live in?

11         **PROSPECTIVE JUROR NO. 1:**  Davidson County.

12         **THE COURT:**  How long have you lived there?

13         **PROSPECTIVE JUROR NO. 1:**  Four years.

14         **THE COURT:**  How many?

15         **PROSPECTIVE JUROR NO. 1:**  Four.

16         **THE COURT:**  All right.  How far did you attend in

17   school?

18         **PROSPECTIVE JUROR NO. 1:**  Through high school.

19         **THE COURT:**  And are you working currently?

20         **PROSPECTIVE JUROR NO. 1:**  Yes.

21         **THE COURT:**  What do you do?

22         **PROSPECTIVE JUROR NO. 1:**  I'm a caregiver to a child.

23         **THE COURT:**  All right.  Are you married, or do you

24   have a significant other?

25         **PROSPECTIVE JUROR NO. 1:**  Yes.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  What does that person do?

2          **PROSPECTIVE JUROR NO. 1:**  He owns a chemical company

3   in Thomasville.

4          **THE COURT:**  All right.  Do you have any adult

5   children?

6          **PROSPECTIVE JUROR NO. 1:**  Yes.

7          **THE COURT:**  What do they do?

8          **PROSPECTIVE JUROR NO. 1:**  I have one that is married

9   and currently working at my family business, and then I have

10  one who is getting ready to graduate high school.

11         **THE COURT:**  All right.  Thank you.

12         Ms. Ingram, what county do you live in?

13         **PROSPECTIVE JUROR NO. 2:**  Guilford.

14         **THE COURT:**  I'm going to ask you to speak loudly, if

15  you would.

16         And how far did you attend in school?

17         **PROSPECTIVE JUROR NO. 2:**  Associate's degree.

18         **THE COURT:**  And in what area?

19         **PROSPECTIVE JUROR NO. 2:**  Medical office

20  administration, billing and coding.

21         **THE COURT:**  If you would keep your voice at that

22  level, that would be helpful.

23         Are you working?

24         **PROSPECTIVE JUROR NO. 2:**  Yes.

25         **THE COURT:**  What do you do, ma'am?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 2:**  I work at Novant Health in

2   orthopedic sports medicine.

3          **THE COURT:**  What do you do there?

4          **PROSPECTIVE JUROR NO. 2:**  I work in the clinical

5   part.  I do scheduling -- some scheduling for surgeries and a

6   little bit of billing too.

7          **THE COURT:**  And are you married, or have a

8   significant other?

9          **PROSPECTIVE JUROR NO. 2:**  I'm married.

10         **THE COURT:**  What does your spouse do?

11         **PROSPECTIVE JUROR NO. 2:**  He works for Procter &

12  Gamble.

13         **THE COURT:**  Do you have any adult children?

14         **PROSPECTIVE JUROR NO. 2:**  No.  I have three small

15  children.

16         **THE COURT:**  Okay.  Thank you.

17         Mr. Brandis, so what county do you live in?

18         **PROSPECTIVE JUROR NO. 3:**  Forsyth County.

19         **THE COURT:**  And how far did you attend in school?

20         **PROSPECTIVE JUROR NO. 3:**  Master's in business

21  administration.

22         **THE COURT:**  Are you working currently?

23         **PROSPECTIVE JUROR NO. 3:**  Yes, I am.

24         **THE COURT:**  What do you do?

25         **PROSPECTIVE JUROR NO. 3:**  Volvo Group.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  For who?

2          **PROSPECTIVE JUROR NO. 3:**  Volvo Group.

3          **THE COURT:**  What do you do there?

4          **PROSPECTIVE JUROR NO. 3:**  I'm the head of our

5  partnerships and government contracts.

6          **THE COURT:**  All right.  Do you have a spouse or

7  significant other, and what does that person do?

8          **PROSPECTIVE JUROR NO. 3:**  Yes, I'm married, and my

9  wife is retired from Winston-Salem/Forsyth County Schools.

10          **THE COURT:**  Do you have adult children, and, if so,

11  what do they do?

12          **PROSPECTIVE JUROR NO. 3:**  Yes, we have two:  One

13  stepson, who is unemployed, and the other is working for ABC

14  News in Raleigh.

15          **THE COURT:**  What type of work does he do for the news

16  station?

17          **PROSPECTIVE JUROR NO. 3:**  He is an executive producer

18  for the morning news shows.

19          **THE COURT:**  Thank you.

20          Ms. Riddle, what county do you live in, ma'am?

21          **PROSPECTIVE JUROR NO. 4:**  Rockingham.

22          **THE COURT:**  How long have you lived there?

23          **PROSPECTIVE JUROR NO. 4:**  Fifty some years.

24          **THE COURT:**  And how far did you attend in school?

25          **PROSPECTIVE JUROR NO. 4:**  Twelve.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  All right.  Are you working?

2          **PROSPECTIVE JUROR NO. 4:**  Yes.

3          **THE COURT:**  What do you do, ma'am?

4          **THE COURT REPORTER:**  I'm going to have to ask you to

5  repeat that.

6          **THE COURT:**  You're welcome to remove your mask.

7          **PROSPECTIVE JUROR NO. 4:**  I'm a physical tester at

8  Unifi.

9          **THE COURT:**  And how long have you been doing that?

10          **PROSPECTIVE JUROR NO. 4:**  About 20 years.

11          **THE COURT:**  Okay.  And do you have a significant

12  other?

13          **PROSPECTIVE JUROR NO. 4:**  Yes.

14          **THE COURT:**  And what does that person do?

15          In fact, I'm going to ask the jurors, at least while

16  they are giving their answers, just to remove masks so we can

17  see and hear you better.

18          **PROSPECTIVE JUROR NO. 4:**  He is retired.

19          **THE COURT:**  What did he do?

20          **PROSPECTIVE JUROR NO. 4:**  He was a supervisor.

21          **THE COURT:**  Okay.  In what area?

22          **PROSPECTIVE JUROR NO. 4:**  Management.

23          **THE COURT:**  All right.  What kind of business?

24          **PROSPECTIVE JUROR NO. 4:**  He worked for Unifi too.

25          **THE COURT:**  Do you have adult children?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 4:** Yes.

2          **THE COURT:** What do they do?

3          **PROSPECTIVE JUROR NO. 4:** One's a nurse and one works

4    for medical billing/accounts payable at Moses Cone.

5          **THE COURT:** Mr. Nichols?

6          **PROSPECTIVE JUROR NO. 5:** Yes.

7          **THE COURT:** What county do you live in, sir?

8          **PROSPECTIVE JUROR NO. 5:** Forsyth County.

9          **THE COURT:** For how long?

10         **PROSPECTIVE JUROR NO. 5:** Approximately 25 years.

11         **THE COURT:** Okay. How far did you attend in school?

12         **PROSPECTIVE JUROR NO. 5:** Four years of college.

13         **THE COURT:** And are you working currently?

14         **PROSPECTIVE JUROR NO. 5:** Yes. I work for -- I'm a

15   design consultant for Window World of the Triad.

16         **THE COURT:** Are you married or have a significant

17   other?

18         **PROSPECTIVE JUROR NO. 5:** Recently divorced.

19         **THE COURT:** What did your spouse do?

20         **PROSPECTIVE JUROR NO. 5:** Stay-at-home mother for the

21   most part, but she works in the restaurant business.

22         **THE COURT:** All right. What kind of restaurant was

23   it?

24         **PROSPECTIVE JUROR NO. 5:** At the time Texas

25   Roadhouse.

US v. Wiley -- Trial/Jury Selection -- 4/19/21

| | |
|---|---|
| 1 | **THE COURT:** What did she do there? |
| 2 | **PROSPECTIVE JUROR NO. 5:** Waitress and/or catering. |
| 3 | **THE COURT:** And you said you're recently divorced. |
| 4 | When were you divorced from her? |
| 5 | **PROSPECTIVE JUROR NO. 5:** April 9th officially. |
| 6 | **THE COURT:** Of this year? |
| 7 | **PROSPECTIVE JUROR NO. 5:** Yes, sir. |
| 8 | **THE COURT:** All right, sir. |
| 9 | Do you have adult children? |
| 10 | **PROSPECTIVE JUROR NO. 5:** I do have two children. |
| 11 | **THE COURT:** And what do they do? |
| 12 | **PROSPECTIVE JUROR NO. 5:** Well, they are 25 and 22, |
| 13 | both currently in the restaurant business waiting tables. |
| 14 | **THE COURT:** All right. Thank you. |
| 15 | What kind of restaurants do they work in? |
| 16 | **PROSPECTIVE JUROR NO. 5:** Chick-fil-A, one is a |
| 17 | manager there, and the other is at the Ale House. She's a |
| 18 | bartender there. |
| 19 | **THE COURT:** Okay. The allegations in this case |
| 20 | involve allegations of a robbery. |
| 21 | Do you know whether your former wife or your children |
| 22 | have ever been involved in any situation that involved a |
| 23 | robbery? |
| 24 | **PROSPECTIVE JUROR NO. 5:** No, sir. |
| 25 | **THE COURT:** You do not know or they have not been? |

US v. Wiley –– Trial/Jury Selection –– 4/19/21

1           **PROSPECTIVE JUROR NO. 5:** They have not been that I'm

2   aware of.

3           **THE COURT:** Thank you.

4           All right. Mr. Queen, what county do you live in,

5   sir?

6           **PROSPECTIVE JUROR NO. 6:** Randolph.

7           **THE COURT:** How long have you lived there?

8           **PROSPECTIVE JUROR NO. 6:** Twenty-four years.

9           **THE COURT:** And what do you do for a living?

10          **PROSPECTIVE JUROR NO. 6:** Septic installation and

11  equipment operator.

12          **THE COURT:** How far did you attend in school?

13          **PROSPECTIVE JUROR NO. 6:** Through high school.

14          **THE COURT:** Do you have a significant other or a

15  spouse?

16          **PROSPECTIVE JUROR NO. 6:** Yes.

17          **THE COURT:** And what does that person do?

18          **PROSPECTIVE JUROR NO. 6:** Stay-at-home mom.

19          **THE COURT:** Okay. And are your children adult age

20  yet?

21          **PROSPECTIVE JUROR NO. 6:** No.

22          **THE COURT:** Thank you.

23          Mr. Okafor, good morning, sir.

24          What county do you live in, sir?

25          **PROSPECTIVE JUROR NO. 7:** I live in Forsyth County.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1      **THE COURT:**  And how long?

2      **PROSPECTIVE JUROR NO. 7:**  Fifteen years.

3      **THE COURT:**  And how far did you attend in your

4 education process?

5      **PROSPECTIVE JUROR NO. 7:**  Doctorate.

6      **THE COURT:**  What area, sir?

7      **PROSPECTIVE JUROR NO. 7:**  Pharmacy.

8      **THE COURT:**  Okay.  And what do you do for a living?

9      **PROSPECTIVE JUROR NO. 7:**  I own my own pharmacy.

10      **THE COURT:**  Do you have a spouse or a significant

11 other?

12      **PROSPECTIVE JUROR NO. 7:**  I do.

13      **THE COURT:**  And what does that person do?

14      **PROSPECTIVE JUROR NO. 7:**  She's also a medical

15 doctor.

16      **THE COURT:**  Do you have any adult children?

17      **PROSPECTIVE JUROR NO. 7:**  No, I do not.

18      **THE COURT:**  Okay.  In your pharmacy, have you ever

19 had anybody attempt to rob your pharmacy?

20      **PROSPECTIVE JUROR NO. 7:**  No, not rob, but breaking

21 in has happened.

22      **THE COURT:**  Somebody attempted to break in?

23      **PROSPECTIVE JUROR NO. 7:**  Yes.

24      **THE COURT:**  When was that?

25      **PROSPECTIVE JUROR NO. 7:**  Twice.  Let's see.  One was

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  in 2014 and one was in 2017.

2         **THE COURT:**  Was anybody in the store at the time?

3         **PROSPECTIVE JUROR NO. 7:**  No, sir.

4         **THE COURT:**  Do you know whether the individual or

5  individuals who were responsible were ever apprehended?

6         **PROSPECTIVE JUROR NO. 7:**  The one from 2017, they

7  were apprehended (inaudible).

8         **THE COURT REPORTER:**  I'm sorry.  I missed what you

9  said.

10         **PROSPECTIVE JUROR NO. 7:**  They were prosecuted in

11  county court.

12         **THE COURT:**  They were prosecuted in the county court?

13         **PROSPECTIVE JUROR NO. 7:**  Yes.

14         **THE COURT:**  Did you communicate with law enforcement

15  in connection with those break-ins?

16         **PROSPECTIVE JUROR NO. 7:**  All I did was provide the

17  video.

18         **THE COURT:**  Okay.

19         **PROSPECTIVE JUROR NO. 7:**  That's all.

20         **THE COURT:**  Was there anything about the break-ins

21  that you think would impair your ability to be fair and

22  impartial in this case?

23         **PROSPECTIVE JUROR NO. 7:**  None that I know of, sir.

24         **THE COURT:**  All right.  Will you be able to set aside

25  whatever happened in your own business and decide this case

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 based solely on the facts presented here and the law as I give

2 it to you?

3         **PROSPECTIVE JUROR NO. 7:**  Yes, sir.

4         **THE COURT:**  And would you -- believe you could reach

5 a fair and impartial verdict in doing that?

6         **PROSPECTIVE JUROR NO. 7:**  Yes, sir.

7         **THE COURT:**  Thank you, sir.

8         All right.  Let me then go down to the folks in front

9 of the jury box.

10         Mr. Putnam, what county do you live in, sir?

11         **PROSPECTIVE JUROR NO. 8:**  Forsyth County.

12         **THE COURT:**  For how long?

13         **PROSPECTIVE JUROR NO. 8:**  Twenty-one years.

14         **THE COURT:**  And how far did you attend in school?

15         **PROSPECTIVE JUROR NO. 8:**  Master's degree in science

16 education.

17         **THE COURT:**  And what do you do for a living?

18         **PROSPECTIVE JUROR NO. 8:**  I teach with

19 Winston-Salem/Forsyth County Schools.

20         **THE COURT:**  Are you married, or do you have a

21 significant other?

22         **PROSPECTIVE JUROR NO. 8:**  I am married.

23         **THE COURT:**  And what does your spouse do?

24         **PROSPECTIVE JUROR NO. 8:**  She teaches as well.

25         **THE COURT:**  All right.  Do you have any adult

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 children?

2          **PROSPECTIVE JUROR NO. 8:**  One daughter who just

3 turned 18.

4          **THE COURT:**  All right.  Is she working yet?

5          **PROSPECTIVE JUROR NO. 8:**  No.  She's about to

6 graduate from West Forsyth.

7          **THE COURT:**  Okay. Thank you, sir.

8          Mr. Pierce, make sure that everyone here can see you

9 as well.

10          What county do you live in, sir?

11          **PROSPECTIVE JUROR NO. 9:**  Rockingham.

12          **THE COURT:**  And for how long?

13          **PROSPECTIVE JUROR NO. 9:**  Thirty years.

14          **THE COURT:**  And how far did you attend in school?

15          **PROSPECTIVE JUROR NO. 9:**  I graduated high school

16 with after-school certificates in different areas.

17          **THE COURT:**  What do you do for a living?

18          **PROSPECTIVE JUROR NO. 9:**  Lead service engineer.

19          **THE COURT:**  What does that mean?

20          **PROSPECTIVE JUROR NO. 9:**  Maintenance.

21          **THE COURT:**  Okay.  In what type of businesses?

22          **PROSPECTIVE JUROR NO. 9:**  I work for CBRE, which does

23 real estate property management.  I work at a specific client's

24 building --

25          **THE COURT:**  Okay.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 9:**  -- and maintain their

2    equipment.

3          **THE COURT:**  Are you married or have a significant

4    other?

5          **PROSPECTIVE JUROR NO. 9:**  I am married.

6          **THE COURT:**  What does that -- what does your spouse

7    do?

8          **PROSPECTIVE JUROR NO. 9:**  She is a building manager

9    for a shipping warehouse.

10          **THE COURT:**  Do you have any adult children?

11          **PROSPECTIVE JUROR NO. 9:**  I do.  I have three adult

12    children.

13          **THE COURT:**  And what do they do?

14          **PROSPECTIVE JUROR NO. 9:**  The oldest is an architect;

15    the second oldest is a social worker; and the third one is

16    working at a garden center.

17          **THE COURT:**  All right.  Thank you.

18          All right.  So, Ms. Rouse, what county do you live

19    in, ma'am?

20          **PROSPECTIVE JUROR NO. 10:**  Alamance.

21          **THE COURT:**  And how long have you lived there?

22          **PROSPECTIVE JUROR NO. 10:**  The last 25 years.

23          **THE COURT:**  How far did you attend in school?

24          **PROSPECTIVE JUROR NO. 10:**  Master of Arts in

25    Communication.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1            **THE COURT:**  Are you working currently?

2            **PROSPECTIVE JUROR NO. 10:**  Yes.

3            **THE COURT:**  And what do you do?

4            **PROSPECTIVE JUROR NO. 10:**  Operations manager for a

5   manufacturing company.

6            **THE COURT:**  All right.  Are you married, or do you

7   have a significant other?

8            **PROSPECTIVE JUROR NO. 10:**  Yes, I'm married.

9            **THE COURT:**  And what does your spouse do?

10            **PROSPECTIVE JUROR NO. 10:**  He's a minister.

11            **THE COURT:**  Do you have adult children?

12            **PROSPECTIVE JUROR NO. 10:**  No.

13            **THE COURT:**  All right.  Ms. Greene, good morning.

14            What county do you live in?

15            **PROSPECTIVE JUROR NO. 11:**  Randolph.

16            **THE COURT:**  For how long?

17            **PROSPECTIVE JUROR NO. 11:**  Over 40 years.

18            **THE COURT:**  How far did you attend in school?

19            **PROSPECTIVE JUROR NO. 11:**  A B.S. in psychology.

20            **THE COURT:**  And are you working?

21            **PROSPECTIVE JUROR NO. 11:**  I am.

22            **THE COURT:**  What do you do, ma'am?

23            **PROSPECTIVE JUROR NO. 11:**  I am a quality insurance

24   director for a mortgage insurance company.

25            **THE COURT:**  Do you have a significant other or

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  spouse?

2          **PROSPECTIVE JUROR NO. 11:**  I do.

3          **THE COURT:**  What does that person do?

4          **PROSPECTIVE JUROR NO. 11:**  They are a CDL -- have

5  their CDL and deliver septic equipment.

6          **THE COURT:**  All right.  So they are a driver?

7          **PROSPECTIVE JUROR NO. 11:**  Yes.

8          **THE COURT:**  Okay.  Do you have adult children?

9          **PROSPECTIVE JUROR NO. 11:**  I don't.

10         **THE COURT:**  Okay.  Thank you.

11         Mr. Doughton --

12         **PROSPECTIVE JUROR NO. 12:**  Yes, sir.

13         **THE COURT:**  -- good morning.

14         What county do you live in?

15         **PROSPECTIVE JUROR NO. 12:**  I live in Forsyth County.

16         **THE COURT:**  How long have you lived there?

17         **PROSPECTIVE JUROR NO. 12:**  All my life, about 24

18  years.

19         **THE COURT:**  How far did you attend in school?

20         **PROSPECTIVE JUROR NO. 12:**  I got a bachelor's degree

21  from the University of North Carolina at Chapel Hill.

22         **THE COURT:**  In what area?

23         **PROSPECTIVE JUROR NO. 12:**  Journalism and political

24  science.

25         **THE COURT:**  What do you do for a living, sir?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 12:**  I'm currently unemployed.

2     I'm completing a volunteer internship at Wake Forest

3     University.

4          **THE COURT:**  In what kind of area?

5          **PROSPECTIVE JUROR NO. 12:**  Athletic communications.

6          **THE COURT:**  All right.  Are you married, or do you

7     have a significant other?

8          **PROSPECTIVE JUROR NO. 12:**  I do have a significant

9     other.

10         **THE COURT:**  What does that person do?

11         **PROSPECTIVE JUROR NO. 12:**  She's a sales associate at

12    Kohl's.

13         **THE COURT:**  Do you have any adult children?

14         **PROSPECTIVE JUROR NO. 12:**  No.

15         **THE COURT:**  All right.  Do you know whether she's

16    ever had any incident where somebody attempted to rob Kohl's?

17         **PROSPECTIVE JUROR NO. 12:**  Not to my knowledge.

18         **THE COURT:**  Thank you.

19         All right.  So let me now ask some general questions

20    of everyone, and if you answer "Yes" to any of those, simply

21    raise your hand, and I'll call on you.

22         Is anybody -- I say in the jury box -- that's on the

23    floor or here in the box -- employed by the U.S. Government or

24    any agency of the government or have a member of their

25    immediate family who is so employed?  If so, raise your hand.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

 1          **PROSPECTIVE JUROR NO. 9:**  Does that include past

 2 employment?

 3          **THE COURT:**  Only current employment, but were you

 4 previously employed by the government?

 5          **PROSPECTIVE JUROR NO. 9:**  U.S. Navy.

 6          **THE COURT:**  Well, that's my next question, so you're

 7 prescient.

 8          So has anybody ever been employed by the government

 9 in the military?  If so, raise your hand.

10          And, of course, we know, Mr. Piece, you said you were

11 in the Navy.  When were you in the Navy, sir?

12          **PROSPECTIVE JUROR NO. 9:**  From '82 to '89.

13          **THE COURT:**  Do you understand that the military

14 branches are part of the federal government, and this case is

15 being brought by the federal government?

16          **PROSPECTIVE JUROR NO. 9:**  Yes.

17          **THE COURT:**  And you can remove your mask while you're

18 answering.

19          If you would remove your mask if you answer a

20 question, that would be helpful.

21          Is there anything about your military -- prior

22 military service that you think would impair your ability to

23 think independently in this case and decide the case based

24 solely on the evidence here?

25          **PROSPECTIVE JUROR NO. 9:**  Absolutely not.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

```
 1              THE COURT:  All right.  Is anyone currently employed
 2    or ever been employed by any law enforcement agency?  And by
 3    that I would include any employees of a police department, a
 4    sheriff's office, a prison, a jail, a probation or parole
 5    department, or any agency that works with the criminal
 6    offender.  If so, please raise your hand.
 7              Has anyone -- well, let me strike that.
 8              So this case may involve the testimony of law
 9    enforcement officers.  Would any of you tend to give more or
10    less weight to their testimony simply because they are a law
11    enforcement?  If so, please raise your hand.
12              Does anybody know any of the attorneys involved in
13    this case or have any business relationship with any of them?
14    If so, please raise your hand.
15              Have any of you had any prior dealings with members
16    of the U.S. Attorney's Office or the U.S. Department of
17    Justice?  If so, please raise your hand.
18              All right.  Mr. Brandis?
19              PROSPECTIVE JUROR NO. 3:  Yes.  I was asked to
20    present to the Department of Justice in Washington, D.C.
21    relative to an antitrust business acquisition.
22              THE COURT:  When was that?
23              PROSPECTIVE JUROR NO. 3:  2001.
24              THE COURT:  All right.  Who asked you to do that?
25    Can you say?
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

**PROSPECTIVE JUROR NO. 3:** I represented Volvo Group
with evidence and presentation on the business aspects.

**THE COURT:** Okay. And so you did a presentation to
the Justice Department. And the issue was what? Whether there
was an antitrust question?

**PROSPECTIVE JUROR NO. 3:** Yes. It was an acquisition
that was pending approval, and there were questions around
antitrust.

**THE COURT:** Okay. Once you made your representation,
did you have any other involvement with the government?

**PROSPECTIVE JUROR NO. 3:** No, sir.

**THE COURT:** All right. Is there anything about that
presentation or the fact that you did it that you think would
impair your ability to be fair and impartial in this case?

**PROSPECTIVE JUROR NO. 3:** No, sir.

**THE COURT:** All right. Thank you, sir.

Anybody else?

Seeing no hands, I'm going to the next question.

Does anybody know the Defendant in this case, Maurice
Owen Wiley, Jr.? If so, please raise your hand.

Does anyone know any of the other alleged
coconspirators whose names I read when I reviewed the
indictment? If so, please raise your hand. They were Darryl
Bradford, Jr., Hykeem Deshun Cox, Semaj Jayron-Maleek Bradley,
and Charles Winfor Daniels.

US v. Wiley -- Trial/Jury Selection -- 4/19/21

1          Now, I'm informed the witnesses who will testify in

2   this case will come from the list that I am about to review.

3   This is a list of all possible witnesses and perhaps not all

4   will be called.  If you know or think you know any of these

5   individuals, please raise your hand as I read the list.

6          Wai Ping Chan, Crystal Rodriguez, Eastern Zheng, Jade

7   Zheng, Robert Turner, Rex McQueen, David Keith Laxton, Matt

8   Hofmeier, Evrardo Macias, Betty Scruggs, Marcus Edwards,

9   Jeffrey Cleary, Jeffrey Mitchell, John Wotton, Taquila House,

10  James Barnett, Shahab Hassan, Dale Rio, Corey Benjamin, David

11  Johnson, Jr., William McFayden, Christopher David Files,

12  Benjamin Shields, Leanne Maher, Michelle Aurelius, Allyson

13  Anderson, Michael Gurdziel, David Cramer, Collin Kilpatrick,

14  Sarah Elizabeth Fox, William Joint, Erica Lee, Justin Ellerbe,

15  Justin T. Gryder, Demetrice Poole, Maria Jocys, Justin

16  Heinrich, Hykeem Deshun Cox, Jeremy Fletcher, John Scott, Scott

17  Bassett, Bryan Cross, Eric Nye, Scott Newton, Timothy Thomas,

18  Charles Winfor Daniels.

19          I don't know if I've read these names, so let me read

20  these:  Thomas Timothy Scott, Alex Champagne, Detective D.L.

21  Cramer.

22          All right.  Does anyone, based on the summary of the

23  charge in this case, believe they've heard about this case?  If

24  so, please raise your hand.

25          Has anyone served on a jury before?  If so, please

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1   raise your hand.

2          All right.  Mr. Brandis, when did you serve, sir?

3          **PROSPECTIVE JUROR NO. 3:**  November 2019.

4          **THE COURT:**  What type of jury?  Criminal or civil?

5          **PROSPECTIVE JUROR NO. 3:**  It was a criminal case in

6   the Forsyth County courtroom.

7          **THE COURT:**  What was nature of the charge?

8          **PROSPECTIVE JUROR NO. 3:**  Felonious assault.

9          **THE COURT:**  Without telling me the outcome, can you

10  just say "yes" or "no," did you reach a verdict?

11         **PROSPECTIVE JUROR NO. 3:**  Yes.

12         **THE COURT:**  Was there anything about that case that

13  you think would affect your ability to be fair and impartial in

14  this case?

15         **PROSPECTIVE JUROR NO. 3:**  No, Your Honor.

16         **THE COURT:**  And can you set aside whatever your

17  experience was in that case and decide this case based solely

18  on the evidence presented and the law as I give it to you?

19         **PROSPECTIVE JUROR NO. 3:**  Yes.

20         **THE COURT:**  In doing that, do you believe you can

21  reach a fair and impartial verdict?

22         **PROSPECTIVE JUROR NO. 3:**  Yes.  I want you to know

23  that I was the foreman.

24         **THE COURT:**  Thank you, sir.

25         Anybody else?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1           Has anyone here been the victim of a crime or have a

2  member of their immediate family or close friend who has been a

3  victim of a crime?  If so, please raise your hand.

4           Okay.  Let me start with Ms. Ingram.  If you would

5  remove your mask just for a moment.

6           What type of crime was it, ma'am?

7           **PROSPECTIVE JUROR NO. 2:**  It was -- well, I guess it

8  was fraud.

9           **THE COURT:**  Fraud?

10          **PROSPECTIVE JUROR NO. 2:**  Uh-huh.

11          **THE COURT:**  Who did it involve?  You?

12          **PROSPECTIVE JUROR NO. 2:**  No.

13          **THE COURT:**  Who was it?

14          **PROSPECTIVE JUROR NO. 2:**  It was my uncle.

15          **THE COURT:**  Okay.  And when was this?

16          **PROSPECTIVE JUROR NO. 2:**  Maybe seven, eight years

17  ago.

18          **THE COURT:**  Okay.  What was the nature of the alleged

19  fraud?

20          **PROSPECTIVE JUROR NO. 2:**  It was rental property.

21          **THE COURT:**  All right.  Were you involved in any way

22  in trying to help him through that?

23          **PROSPECTIVE JUROR NO. 2:**  No.

24          **THE COURT:**  All right.  Is there anything about that

25  incident that you think would make it difficult for you to be

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  fair and impartial in the present case?

2          **PROSPECTIVE JUROR NO. 2:**  Oh, no.

3          **THE COURT:**  Okay.  And then who else?

4          Mr. Brandis, you had your hand up, sir?

5      **PROSPECTIVE JUROR NO. 3:**  Yes, sir.

6          **THE COURT:**  What type of crime and who was involved?

7          **PROSPECTIVE JUROR NO. 3:**  Simple assault on a female.

8  It was my wife, and the stepson was the perpetrator.

9          **THE COURT:**  When was that?

10         **PROSPECTIVE JUROR NO. 3:**  Twenty-two years ago.

11         **THE COURT:**  Is there anything about that incident

12 that you think would affect your ability to be fair and

13 impartial in this case?

14         **PROSPECTIVE JUROR NO. 3:**  No, Your Honor.

15         **THE COURT:**  All right.  Were you involved at the time

16 in terms of working with law enforcement?

17         **PROSPECTIVE JUROR NO. 3:**  Yes, Your Honor.

18         **THE COURT:**  Which law enforcement agency was

19 involved?

20         **PROSPECTIVE JUROR NO. 3:**  The Forsyth County

21 Sheriff's Department.

22         **THE COURT:**  Okay.  Can you set that incident aside

23 and decide this case without regard to what may have happened

24 in that incident?

25         **PROSPECTIVE JUROR NO. 3:**  Yes, Your Honor.

US v. Wiley  —— Trial/Jury Selection  —— 4/19/21

1          **THE COURT:**  All right.  In doing that, do you believe

2    you can be fair and impartial?

3          **PROSPECTIVE JUROR NO. 3:**  Yes, Your Honor.

4          **THE COURT:**  Thank you.

5          Anybody else in the jury box before I get to the

6    folks on the floor?

7          Okay.  And then on to the floor, who had their hand

8    up?

9          All right.  Mr. Putnam?

10         **PROSPECTIVE JUROR NO. 8:**  Yes.

11         **THE COURT:**  What type of crime and who was involved?

12         **PROSPECTIVE JUROR NO. 8:**  My car was broken into.

13         **THE COURT:**  When was that?

14         **PROSPECTIVE JUROR NO. 8:**  I think about 2010.

15         **THE COURT:**  All right.  Were you nearby or at home

16   when it happened?

17         **PROSPECTIVE JUROR NO. 8:**  It was at home.

18         **THE COURT:**  Were you around; do you know?

19         **PROSPECTIVE JUROR NO. 8:**  We were in the house, but

20   it was -- we didn't notice it.

21         **THE COURT:**  Do you know whether a firearm was used or

22   not?

23         **PROSPECTIVE JUROR NO. 8:**  No.  They never caught the

24   person who did it.

25         **THE COURT:**  Okay.  Did you deal with law enforcement

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    with that?

2            **PROSPECTIVE JUROR NO. 8:**  The Sheriff's Office for

3    Forsyth County?

4            **THE COURT:**  Okay.  Was there anything about that

5    incident that in any way would affect your ability to be fair

6    and impartial in the present case?

7            **PROSPECTIVE JUROR NO. 8:**  No.

8            **THE COURT:**  Do you believe you can set aside your

9    personal involvement in that and decide this case based solely

10   on the facts that are set out in this courtroom and presented

11   to the jury and the law as I give it to you?

12           **PROSPECTIVE JUROR NO. 8:**  Yes.

13           **THE COURT:**  Thank you, sir.

14           And then Ms. Greene?

15           **PROSPECTIVE JUROR NO. 11:**  It was an armed robbery.

16   My former spouse -- we have since divorced -- he worked as a

17   manager of a retail pharmacy and had an armed robbery -- an

18   early morning armed robbery with just him and the two suspects.

19   He did sustain some injury, was not shot but was hit with the

20   gun in the head.  And that was back about 2008, several years

21   ago.

22           **THE COURT:**  Were you present?

23           **PROSPECTIVE JUROR NO. 11:**  I was not.

24           **THE COURT:**  Did they ever catch the suspects?

25           **PROSPECTIVE JUROR NO. 11:**  They were not able to

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  identify them well from the footage, no.

2          THE COURT:  Do you know if anything was taken?

3          PROSPECTIVE JUROR NO. 11:  I'm not sure.  I know they

4  were trying to get in the safe.

5          THE COURT:  Okay.  Where did this happen?

6          PROSPECTIVE JUROR NO. 11:  It was at a drugstore in

7  Durham, a retail store in Durham.

8          THE COURT:  All right.  Did you work at all with law

9  enforcement when they were involved?

10          PROSPECTIVE JUROR NO. 11:  I did not.  He did since

11  it was all work related.

12          THE COURT:  Did you say this was your ex-husband?

13          PROSPECTIVE JUROR NO. 11:  Right.  We were married

14  for about 20 years and were married at that time.

15          THE COURT:  Do you know whether firearms were used?

16          PROSPECTIVE JUROR NO. 11:  It was a pistol.  That's

17  all I know.  A handgun.

18          THE COURT:  Okay.  Do you know if one was discharged?

19          PROSPECTIVE JUROR NO. 11:  No, they did not actually

20  fire the weapon.

21          THE COURT:  Okay.  Do you know whether your husband

22  had ever had such an incident happen earlier before that?

23          PROSPECTIVE JUROR NO. 11:  No.  That's the only time

24  that they actually came in.  The store had been robbed before,

25  but it was, like, at night when no one was in the store.

US v. Wiley -- Trial/Jury Selection -- 4/19/21

|   |   |
|---|---|
| 1 | **THE COURT:**  Okay.  Do you believe that your |

ex-husband's involvement as a victim in that robbery would in
any way affect your ability to be fair and impartial in the
present case?

**PROSPECTIVE JUROR NO. 11:**  No, I do not.

**THE COURT:**  All right.  Can you decide this case
based solely on the evidence presented in the courtroom?

**PROSPECTIVE JUROR NO. 11:**  Yes, I can.

**THE COURT:**  And can you apply the law as I give it
to?

**PROSPECTIVE JUROR NO. 11:**  I can.

**THE COURT:**  And in doing that, will you be able to
render a verdict that's fair and impartial to the Government
and to the Defendant?

**PROSPECTIVE JUROR NO. 11:**  Yes.

**THE COURT:**  And do that without regard to what you
say happened to your ex-husband in 2008?

**PROSPECTIVE JUROR NO. 11:**  Yes, I can do that.

**THE COURT:**  All right.  Thank you.

Anybody else?

Does anybody belong to a group that advocates in
favor or against gun ownership, or do any of you have strong
feelings about guns?  If so, please raise your hand.

All right.  Mr. Nichols?

**PROSPECTIVE JUROR NO. 5:**  I coach --

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1        **THE COURT:**  If you would remove your mask so I can

2   hear you better, sir.

3        **PROSPECTIVE JUROR NO. 5:**  I coach on a shooting team,

4   and I support gun ownership.

5        **THE COURT:**  All right.  What kind of shooting team is

6   it?

7        **PROSPECTIVE JUROR NO. 5:**  It's a high school shooting

8   team, Ronald Reagan High School.  I specifically coach archery,

9   but we do sporting clays, rifle.

10       **THE COURT:**  What kind of firearms do they use?

11       **PROSPECTIVE JUROR NO. 5:**  Specifically shotguns for

12  sporting clays, .22 rifle for different positions for rifle.

13  And, like I said, I coach archery, so we use bow and arrow.

14       **THE COURT:**  Do you have any strong feelings one way

15  or the other about guns?

16       **PROSPECTIVE JUROR NO. 5:**  I'm a supporter of the

17  Second Amendment.

18       **THE COURT:**  All right.  If you are instructed as to

19  the law on gun or ammunition possession, will you be able to

20  follow that law?

21       **PROSPECTIVE JUROR NO. 5:**  Yes.

22       **THE COURT:**  Okay.  All right.

23       And then who else?  Mr. Queen?

24       **PROSPECTIVE JUROR NO. 6:**  I'm a very vivid hunter and

25  Second Amendment supporter.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  All right.  What kind of firearms do you

2 have?

3          **PROSPECTIVE JUROR NO. 6:**  Rifles, shotguns, handguns.

4          **THE COURT:**  All right.  And you said "vivid."  You

5 mean avid?

6          **PROSPECTIVE JUROR NO. 6:**  Yes.  My apologies.

7          **THE COURT:**  That's all right.

8          And if I instruct the jury as to the law on what's

9 permitted and what's not permitted in terms of possession of

10 guns and ammunition, will you be able to follow that law?

11          **PROSPECTIVE JUROR NO. 6:**  Yes.

12          **THE COURT:**  All right.  And will you be able to do

13 that without regard to whatever your personal view may be?

14          **PROSPECTIVE JUROR NO. 6:**  Yes.

15          **THE COURT:**  And same to you, Mr. Nichols.  Would you

16 be able to follow that, regardless of what your personal view

17 may be?

18          **PROSPECTIVE JUROR NO. 5:**  Yes, sir.

19          **THE COURT:**  Anybody else raise your hand?

20          I will get to the other folks in a minute.  I am just

21 now working with the 12 here.  Thank you.

22          Okay.  So one of the elements of the offense that

23 Mr. Wiley is charged with in this case is that he may have been

24 convicted previously of a felony offense.

25          Would the fact that the Defendant has been previously

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  convicted of another crime, if it's proven, cause any of you to

2  believe that he's probably guilty of the crime that he's

3  charged with in this case?  If so, please raise your hand.

4        The alleged victims in this case are of Asian

5  descent.  Would that fact affect your ability to participate in

6  this case as a fair and impartial juror?  If so, please raise

7  your hand.

8        Do any of you belong to any organization whose

9  purpose is to oppose anti-Asian discrimination and/or violence,

10  or have you participated in any activity related to the

11  condemnation of anti-Asian violence?  If so, please raise your

12  hand.

13        Now, you may hear evidence that people involved in

14  this case, including the Defendant, Mr. Wiley, may have been

15  involved in certain street gangs.  If such evidence were

16  presented, would that fact impair your ability to be the type

17  of fair and impartial jury that I discussed earlier?  If so,

18  please raise your hand.

19        Have any of you or have you had a close family member

20  or friend who's been a victim of gang crime or witnessed such?

21  If so, please raise your hand.

22        Have you or a close family member or friend been a

23  member of a street gang?  If so, please raise your hand.

24        Every person charged with a criminal offense is

25  presumed innocent of any crime until the Government proves him

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  or her guilty of the crime beyond a reasonable doubt.

2          Would any of you have any difficulty applying this

3  presumption in this case?  If so, please raise your hand.

4          A defendant in a criminal case also has the absolute

5  right to remain silent and has the absolute right not to

6  testify.  If a defendant chooses not to testify, the jury is

7  prohibited from drawing any negative conclusion about that

8  choice.

9          Would any potential juror have any difficulty

10  following these principles?  If so, please raise your hand.

11          If the Government fails to carry its burden, would

12  any of you have any difficulty finding the Defendant not

13  guilty?  If so, please raise your hand.

14          If the Government carries its burden, would any of

15  you have any difficulty finding the Defendant guilty?  If so,

16  raise your hand.

17          Has anyone ever been involved in a legal proceeding

18  as a party or a witness?  If so, please raise your hand.

19          All right.  Mr. Okafor, sir?  If you would remove

20  your mask so we can hear you better.

21          **PROSPECTIVE JUROR NO. 7:**  Well, the case from 2017

22  when the break-in happened, I was called to the county

23  courthouse to validate the rolls as it applies to the cameras

24  where the cameras were actually capturing what transpired.

25          **THE COURT:**  All right.  So you took the video to the

1  courthouse?

2          **PROSPECTIVE JUROR NO. 7:**  Yes, sir.

3          **THE COURT:**  Did you testify?

4          **PROSPECTIVE JUROR NO. 7:**  It happened on a bench and

5  asked me questions.  And after that, I don't know what

6  happened.

7          **THE COURT:**  All right.  Is there anything about your

8  involvement in that proceeding that would affect your ability

9  to be fair and impartial in the present case?

10          **PROSPECTIVE JUROR NO. 7:**  No, sir.

11          **THE COURT:**  Thank you.

12          Anybody else?

13          Does anybody here among the 12 know anybody else

14  who's been called as a juror today?  If so, please raise your

15  hand.

16          Yes, Mr. Queen?

17          **PROSPECTIVE JUROR NO. 6:**  I just know someone's

18  significant other.

19          **THE COURT:**  If you would remove your mask.  Say that

20  again, sir.

21          **PROSPECTIVE JUROR NO. 6:**  Someone that was called

22  today, I work with the significant other sometimes.

23          **THE COURT:**  Which juror is that; do you know?

24          **PROSPECTIVE JUROR NO. 6:**  I'm not sure about the

25  name.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1           THE COURT:  Okay.  And have you met this person

2   before?

3           PROSPECTIVE JUROR NO. 6:  This morning was the first

4   time I've actually met them personally.

5           THE COURT:  And you say you've worked with their

6   significant other?

7           PROSPECTIVE JUROR NO. 6:  Yes.

8           THE COURT:  In what capacity do you work with that

9   other person?

10          PROSPECTIVE JUROR NO. 6:  A few times a month.

11          THE COURT:  Okay.  Does that person have any

12  supervisory control over you?

13          PROSPECTIVE JUROR NO. 6:  No.

14          THE COURT:  Or do you have any over him?

15          PROSPECTIVE JUROR NO. 6:  No.

16          THE COURT:  All right.  Is there anything about your

17  working relationship that you think would impair your ability

18  to independently view the evidence in this case?

19          PROSPECTIVE JUROR NO. 6:  No.

20          THE COURT:  In other words, the fact that you know a

21  significant other -- actually, you know the significant other

22  of a juror.  Would that fact alone cause you to compromise your

23  own independent judgment in this case in any way?

24          PROSPECTIVE JUROR NO. 6:  No, sir.

25          THE COURT:  All right.  Thank you, sir.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          Anybody else?

2          Yes, Mr. Doughton?

3          **PROSPECTIVE JUROR NO. 12:**  I suspect that

4   Mr. Putnam's wife is my high school statistics teacher.

5          **THE COURT:**  How long ago was that, sir?

6          **PROSPECTIVE JUROR NO. 12:**  I graduated in 2015.  I

7   took it in my senior year.  About six years now.

8          **THE COURT:**  Would that fact affect your ability to

9   reach your own independent judgment in this case?

10         **PROSPECTIVE JUROR NO. 12:**  Absolutely not.

11         **THE COURT:**  Would you be able to view the evidence

12  and apply the law independent of how your decision may or may

13  not be viewed by Mr. Putnam or his wife?

14         **PROSPECTIVE JUROR NO. 12:**  Absolutely.

15         **THE COURT:**  Anything else among the 12?

16         So the attorneys estimate the case will take

17  approximately five to seven days, maybe five or six.  Will this

18  present a specific, special problem anybody?  If so, please

19  raise your hand.

20         Does anybody have any problem seeing or hearing that

21  would prevent you from observing the evidence in this case?  If

22  so, raise your hand.

23         Now, the lawyers will be wearing their masks, as will

24  my staff, and while in this building and while in court, the

25  jury will be wearing their masks.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          Will this present a special difficulty for any juror

2   who would be required to wear a mask during the evidence

3   portion and while in this building?  If so, please raise your

4   hand.

5          I would add that while I know it's somewhat new to

6   some of us, at least, medical professionals have been wearing

7   these all day long for hours and hours and hours for quite some

8   time.

9          Is there anything about the nature of the case

10  itself, including the charges against the Defendant, that you

11  believe will prevent you from being able to render a fair and

12  impartial verdict?  If so, please raise your hand.

13         Based on what little you know about the case, have

14  any of you formed or expressed an opinion about it or about the

15  parties themselves that you feel will adversely affect your

16  ability to sit on the case and render a fair and impartial

17  verdict?  If so, raise your hand.

18         Do any of you have any other reason that I have not

19  asked about that you believe is weighing on your mind that

20  might make it difficult for you to be fair and impartial?  If

21  so, now would be the time to let me know.

22         All right.  Give me just a moment.  I'm going to ask

23  counsel to step up here.  Please be quiet so I can talk with

24  the lawyers just for a moment.

25         (The following proceedings were had at the bench by the

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

```
 1        Court and Counsel out of the hearing of the jury:)
 2              THE COURT:  All right.  Can you all hear me?
 3              MR. GREEN:  Yes, sir.
 4              MR. BRYSON:  Yes.
 5              THE COURT:  Okay.  So my first question is:  Are
 6    there any follow-up questions?
 7              Let me start with the Government.
 8              MR. GREEN:  Your Honor, you didn't ask the -- whether
 9    the jurors had a close family member or friend who had been a
10    plaintiff or a defendant in a case.
11              THE COURT:  That had been what?
12              MR. GREEN:  A plaintiff or a defendant in a case.
13              THE COURT:  All right.  Anything else for the
14    Government?
15              MR. GREEN:  Not as to that question.
16              THE COURT:  All right.  From the Defendant?
17              MR. BRYSON:  I would like to ask Mr. Putnam what
18    subject he teaches and at what grade level, for example, a math
19    teacher in middle school or biology in high school.
20              And then for Mr. Doughton, No. 12, he's unemployed.
21    I guess my question is:  Did he just get out of school, or has
22    it been some career that he's had and he's changing careers?
23              THE COURT:  You want to know what he did before?
24              MR. BRYSON:  I don't care about before school, but
25    has he had any significant employment since he's graduated from
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  college, or did he just get out of school and that's why he's

2  unemployed?

3          **THE COURT:**  I think he said 2015 was when he was last

4  in high school, if I remember right.

5          **MR. FOSTER:**  And then he graduated from UNC, and now

6  he's doing a voluntary internship with Wake Forest.

7          **THE COURT:**  Anything else?

8          **MR. GREEN:**  Your Honor, as to that question that you

9  were going to ask the jurors, I believe that Ms. Ingram had

10  indicated on her form that that was a question that she might

11  not feel comfortable answering in front of the jurors.

12          **THE COURT:**  She did not check the box about not

13  wanting to speak publicly about it.

14          **MR. GREEN:**  My apologies.  I wrote that down wrong.

15          **THE COURT:**  Do you want me to follow up on what that

16  was?

17          **MR. GREEN:**  No, Your Honor.  I mean, they will answer

18  the question, I assume.  Thank you.

19          **THE COURT:**  Okay.  I think it might facilitate the

20  court reporter if, every time you speak, you say your name, and

21  then she'll know who's speaking here at the bench.

22          Why don't you all just wait right there.  Let me ask

23  these questions, and then I will see if you have anything else.

24  And then I'm going to ask you whether you have any cause

25  challenges.  You're welcome, if you want, to wait right here.

    US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1      (End of bench conference.)

2          **THE COURT:**  Ladies and gentlemen, have any of you

3  been a plaintiff or a defendant in a case?  If so, please raise

4  your hand.

5          All right.  Ms. Ingram, what kind of case was it?

6          **PROSPECTIVE JUROR NO. 2:**  No, I haven't.

7          **THE COURT:**  I'm asking whether any of you have been a

8  plaintiff or a defendant?

9          Yes, Mr. Nichols?

10         **PROSPECTIVE JUROR NO. 5:**  Just in the recent

11 divorce --

12         **THE COURT:**  If you would take your mask off.

13         **PROSPECTIVE JUROR NO. 5:**  Recent divorce proceedings.

14         **THE COURT:**  Okay.  All right.  Anything about that

15 proceeding that would affect your ability to be fair and

16 impartial here?

17         **PROSPECTIVE JUROR NO. 5:**  No, sir.

18         **THE COURT:**  All right.  Thank you.

19         Mr. Putnam, can you tell me what classes you teach?

20         **PROSPECTIVE JUROR NO. 8:**  I teach Chemistry and AP

21 Environmental Science.

22         **THE COURT:**  And what grade level is that?

23         **PROSPECTIVE JUROR NO. 8:**  9 through 12.  It is a

24 mixture of students.

25         **THE COURT:**  And how long have you been teaching those

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  classes?

2          **PROSPECTIVE JUROR NO. 8:**  Those specific classes

3  about 11 years.

4          **THE COURT:**  Okay.  Thank you.

5          And, Mr. Doughton, you said you graduated from UNC;

6  is that right?

7          **PROSPECTIVE JUROR NO. 12:**  Yes, sir.

8          **THE COURT:**  What year was that?

9          **PROSPECTIVE JUROR NO. 12:**  2019.

10         **THE COURT:**  You're doing an internship now.  Have you

11  done anything in between?

12         **PROSPECTIVE JUROR NO. 12:**  Yeah, I worked at Walt

13  Disney World for about nine months.

14         **THE COURT:**  What did you do there?

15         **PROSPECTIVE JUROR NO. 12:**  I was a safari driver in

16  one of the parks.

17         **THE COURT:**  Ever have any incidents with anybody

18  there with theft or trying to rob?

19         **PROSPECTIVE JUROR NO. 12:**  No, not in my department.

20         **THE COURT:**  Anything you were involved in?

21         **PROSPECTIVE JUROR NO. 12:**  No.

22         **THE COURT:**  Okay.  Thank you, sir.  Give me just a

23  minute.

24      (The following proceedings were had at the bench by the

25      Court and Counsel out of the hearing of the jury:)

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  Okay.  For the Government, any
2  follow-ups?
3          **MR. GREEN:**  Yes, Your Honor.  We would like you to
4  ask the jurors if they have any family or close friends who
5  have been a plaintiff or a defendant in a criminal case.
6          **THE COURT:**  In a criminal case?
7          **MR. GREEN:**  Yes, Your Honor.
8          **THE COURT:**  Anything further?
9          **MR. BRYSON:**  No.
10          **THE COURT:**  All right.
11      (End of bench conference.)
12          **THE COURT:**  So let me follow up.  I asked about
13  whether you were a plaintiff or a defendant in a case.
14          Have any of you had a close family member or close
15  friend who was involved in a criminal case either as a
16  defendant or as a victim?  If so, please raise your hand.
17          All right.  Mr. Pierce?
18          **PROSPECTIVE JUROR NO. 9:**  Yes, sir.
19          **THE COURT:**  Remove your mask so we can hear you,
20  please.
21          **PROSPECTIVE JUROR NO. 9:**  My eldest daughter -- I'm
22  not sure if this is criminal, but my ex-wife's boyfriend had
23  video of her, I guess, when she was visiting.
24          **THE COURT:**  Okay.
25          **PROSPECTIVE JUROR NO. 9:**  They had to go to court for

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 70 of 247

1  that, but I wasn't really involved in that, but my oldest

2  daughter was.

3          **THE COURT:**  All right.  Did you work with law

4  enforcement?

5          **PROSPECTIVE JUROR NO. 9:**  I did not.

6          **THE COURT:**  Okay.  Was that case eventually resolved?

7          **PROSPECTIVE JUROR NO. 9:**  It was.

8          **THE COURT:**  Was it resolved to your satisfaction?

9          **PROSPECTIVE JUROR NO. 9:**  Yes.

10          **THE COURT:**  Is there anything about the case or how

11  it was investigated or handled that you think would make it

12  difficult for you to be fair and impartial in this case?

13          **PROSPECTIVE JUROR NO. 9:**  No, sir.

14          **THE COURT:**  All right.  Thank you.

15          Anybody else?

16          All right.  Give me just a minute.

17     (The following proceedings were had at the bench by the

18       Court and Counsel out of the hearing of the jury:)

19          **THE COURT:**  Let me ask the Government, Mr. Green,

20  anything further?

21          **MR. GREEN:**  No, Your Honor.

22          **THE COURT:**  From the Defendant, Mr. Bryson, anything

23  further?

24          **MR. BRYSON:**  No.

25          **THE COURT:**  Okay.  So let me ask whether there are

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  any cause challenges at this point from the Government?

2          **MR. GREEN:**  No, Your Honor.

3          **THE COURT:**  And from the Defendant?

4          **MR. BRYSON:**  No.

5          **THE COURT:**  All right.  So I'm going to ask you to

6  exercise your peremptories at this time.  Remember it's

7  simultaneous strikes.  And then Ms. Engle will gather the

8  sheets when you're ready.

9          You can go back to counsel table.

10     (End of bench conference.)

11     (Pause in the proceedings.)

12          **MR. GREEN:**  Your Honor, may we approach?

13          **THE COURT:**  Yes.

14     (The following proceedings were had at the bench by the

15     Court and Counsel out of the hearing of the jury:)

16          **MR. GREEN:**  We've handed ours up, but they have not

17  been announced.  Mr. Principe just made a note about something

18  that I had missed.  We would like just a moment more with

19  regard to our challenges.

20          **THE COURT:**  That's fine.

21     (End of bench conference.)

22     (Pause in the proceedings.)

23     (The following proceedings were had at the bench by the

24     Court and Counsel out of the hearing of the jury:)

25          **THE COURT:**  Okay.  Can you all hear me now?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          All right.  So my understanding is the Government has

2  struck Juror No. 2, is that correct --

3          **MR. GREEN:**  Correct.

4          **THE COURT:**  -- Ms. Ingram?

5          And Ms. Ingram appears to be African-American.

6  Agreed?

7          **MR. GREEN:**  She does.

8          **THE COURT:**  All right.  Defendant, are you arguing a

9  *Batson* challenge to that juror?

10          **MR. BRYSON:**  I guess we would need know what the

11  remainder of their strikes are before we can evaluate whether

12  or not that is discriminatory or not at this point.

13          **THE COURT:**  Are you raising a *Batson* strike at this

14  point?

15          **MR. BRYSON:**  Is that the only African-American

16  challenge that they are making in this pass?

17          **THE COURT:**  If that were the case, what's your

18  argument?  Or do you have an argument?

19          **MR. FOSTER:**  Well, this is --

20          **THE COURT:**  Well, let me ask:  Do you have any

21  concern answering that question?

22          **MR. GREEN:**  No, I have no concern.

23          **THE COURT:**  Okay.  That's the only challenge they

24  have, I believe.  I take that back.  No, they have two other

25  challenges.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **MR. BRYSON:**  Not at this time, Your Honor.

2          **THE COURT:**  No *Batson* challenge?

3          But they do have two other challenges.  I don't know

4    if you heard me when I said that.

5          **MR. BRYSON:**  I guess that goes to that -- that was my

6    original question is, you know, if they've used -- if they are

7    using more challenges in this strike against other

8    African-Americans, then it would be yes.

9          **THE COURT:**  Okay.  Any objection to my indicating who

10   is being challenged?

11         **MR. GREEN:**  No objection.

12         **THE COURT:**  My understanding is the challenges right

13   now are to Ms. Ingram; Ms. Rouse, No. 10; and Ms. Riddle, No 4.

14         **MR. BRYSON:**  Then I think we would have a *Batson*

15   challenge, yes.

16         **THE COURT:**  All right.  Well, it looks like Jurors

17   No. 2 and No. 4 are African-American.  Agreed?

18         **MR. GREEN:**  We didn't strike Juror No. 4.

19         **THE COURT:**  Ms. Riddle?

20         **MR. PRINCIPE:**  She's in a different seat.

21         **THE COURT:**  Ms. Riddle is No. 4.

22         **MR. GREEN:**  Okay.  Yes.

23         **THE COURT:**  You agree she's African-American?

24         **MR. GREEN:**  I do.

25         **THE COURT:**  So apparently in a racial minority group.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          You also struck a non-African-American juror, No. 10.

2          **MR. GREEN:**  Correct.

3          **THE COURT:**  What is the inference of race in this

4     strike?

5          **MR. BRYSON:**  Your Honor, it would appear to us that

6     in its current composition there are three African-American

7     jurors that have been submitted to the Government for their

8     review or proposal, and they have struck two out of the three.

9     That would mean they have exercised their challenges to

10    eliminate two-thirds of the potential African-American jurors,

11    and I believe that that is prima facie -- it meets a prima

12    facie case for a *Batson* challenge.

13         **THE COURT:**  All right.  Do you want to respond to

14    that, or do you want to talk about your reasons for strikes?

15         **MR. GREEN:**  Yeah, I don't know that it would meet a

16    prima facie, but we are prepared to talk about our reasons for

17    the strikes.

18         **THE COURT:**  Okay.  What are your reasons?

19         **MR. GREEN:**  In both instances, if I read the jury

20    disclosure forms correctly, both jurors indicated that they had

21    family members that had been charged with criminal offenses.  I

22    believe Juror No. 4 indicated a son and Juror No. 2 said --

23    again, let me back up.  Juror No. 2 referenced an uncle and a

24    sister in her answer.  When the Court made inquiry of those

25    jurors, they did not respond to whether those individuals had

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  been -- that they had close family members and friends that had

2  been charged with criminal offenses.

3          **THE COURT:**  Okay.  So that's as to Ms. Ingram.

4          What is it as to Ms. Riddle?

5          **MR. GREEN:**  The same.  She was -- I believe her jury

6  form, if I've read it correctly, her brother had been charged

7  with a criminal offense.

8          **THE COURT:**  Do you want to respond before I say

9  anything?

10         **MR. FOSTER:**  Yes.  As to Juror No. 2, Ms. Ingram,

11  what she said in Court about an uncle was that he was a victim

12  of fraud is what I understood, not a defendant.  I didn't hear

13  anything about an uncle being accused of a crime.  He was a

14  victim of a crime.

15         **MR. GREEN:**  I will agree with that, but there is a

16  reference on the form to a sister.

17         **THE COURT:**  Okay.  You got anything further on that

18  one?

19         **MR. FOSTER:**  No, sir.

20         **THE COURT:**  The form asks about whether they have

21  been a plaintiff or defendant in a case:  Civil, criminal, or

22  domestic.

23         **MR. GREEN:**  It does.

24         **THE COURT:**  There is nothing in there about

25  criminal -- that limits it to criminal.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **MR. GREEN:**  There's not, Your Honor.

2          **THE COURT:**  So was my question about whether they had

3  been involved in a criminal case?

4          **MR. GREEN:**  I think you said a plaintiff or a

5  defendant in a case.  I think you specifically excluded

6  "criminal," even though that's what -- the Government had asked

7  that question, but I would trust the transcript as far as what

8  the Court said.

9          **THE COURT:**  All right.  What about the other juror,

10  which would be Riddle?

11          **MR. BRYSON:**  Is there any way we could look at her

12  questionnaire again?

13          **THE COURT:**  Yes.

14      (Pause in the proceedings.)

15          **MR. BRYSON:**  It just indicates that she indicates a

16  brother, and it happened "many years now."

17          **MR. GREEN:**  So, Your Honor, it may be important as

18  how you ask that question.

19          **THE COURT:**  Which question?

20          **MR. GREEN:**  The question to the jury -- if you recall

21  there was -- the Government prompted you a couple of times to

22  ask that question and how you categorized it, but I think -- I

23  don't know that you -- I think you said "plaintiff or a

24  defendant in a case," but I could be incorrect.  That's how I

25  understood you to say it and, thus, the lack of disclosure was

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  what was concerning.

2            **THE COURT:**  That's as to which juror?

3            **MR. GREEN:**  Well, you asked the group.

4            **THE COURT:**  So that's the question as to both of

5  these that you're concerned about?

6            **MR. GREEN:**  Yes.  You asked that question to the

7  group, and I think Ms. Ingram even indicated initially, "Not

8  me."  And then you again asked the question -- we first asked

9  you to ask the question specifically.  You then asked a

10  question that did not address that, but the Government had

11  asked.  We came back.  We asked for follow-up.  You then asked

12  that question again.

13            **THE COURT:**  The follow-up was in relation to a

14  criminal matter.

15            **MR. GREEN:**  Well, I can't recall -- I'm not sure you

16  qualified it in that way.  You may have.

17            **THE COURT:**  Do you want to know the answer to that

18  before we go further?

19            **MR. GREEN:**  Yes.  Your Honor, I guess the key is that

20  at this point, neither -- when you asked that question, neither

21  of those jurors, the record will show, answered -- raised their

22  hand or gave any indication consistent with the information we

23  have here.

24            **THE COURT:**  So your argument is that when I at least

25  asked the follow-up whether they had a close family member or

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 friend who was involved in a criminal case as a victim or as

2 a -- defendant or victim, I think is what I asked --

3          **MR. GREEN:**  Yes, Your Honor.

4          **THE COURT:**  -- then neither one raised their hand?

5          **MR. GREEN:**  They did not.

6          **THE COURT:**  Is that the basis of your challenge?

7          **MR. GREEN:**  It is.

8          **THE COURT:**  No. 3 -- how do we know No. 3 had an

9 affirmative answer that was not disclosed?

10          **MR. GREEN:**  No. 3?

11          **THE COURT:**  As to the criminal matter.

12          **MR. FOSTER:**  Who is No. 3?

13          **MR. GREEN:**  Ms. Ingram.

14          **THE COURT:**  I'm sorry.  It's juror numbered three.

15 She's actually sitting in Seat No. 2.  I'm sorry.

16          **MR. GREEN:**  If you look, No. 4 asked:  Have you,

17 family members -- "Have you or any of your family members ever

18 been a plaintiff or a defendant in a court case (criminal,

19 civil, domestic)?"  The answer was circled "Yes."  And then

20 under the thing "Who," there's handwritten "Uncle, sister."

21 And then the answer to "How many years" is "Ten or more years."

22 And then the inquiry about her uncle, I believe she said that

23 was eight years ago.  There was no mention of a sister.

24          **THE COURT:**  Okay.  I guess my question is -- I

25 thought you said your challenge was because you thought it was

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  a criminal case that was not disclosed, because that was the

2  last question I asked.

3  　　　　　MR. GREEN:  Again, I'm not certain how you -- the

4  words you used, but I think the import of the repeated

5  question, and that juror again has said "Not me" as to the

6  first follow-up; and then when you asked that question again,

7  there was no affirmative answer.  But I think the answer to

8  that question, as to whether it was criminal, may affect the

9  Government's view of that answer or lack of answer.

10  　　　　　THE COURT:  In other words, if I asked if it were

11  limited to a criminal case, that would affect your decision?

12  　　　　　MR. GREEN:  Yes.

13  　　　　　THE COURT:  I thought that's what I asked, but let me

14  check.  Let me start there.  Hold on a minute.

15  　　　(Pause in the proceedings.)

16  　　　　　THE COURT:  The specific follow-up question that I

17  asked at the end was whether they had been -- had a close

18  family member or friend who had been a victim or a defendant in

19  a criminal case.

20  　　　　　MR. GREEN:  Okay.

21  　　　　　THE COURT:  Does that affect your challenge?

22  　　　　　MR. GREEN:  It does.

23  　　　　　THE COURT:  So how does it affect your challenge?

24  　　　　　MR. GREEN:  We would not challenge Ms. Ingram based

25  on that answer.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

 1            THE COURT:  I'm going to hand your sheet back then

 2    and let you decide what you want to do with that.

 3            MR. GREEN:  Your Honor, could we have the Court ask

 4    the actual question that we thought the Court asked, since it

 5    was the one that was on the form?

 6            THE COURT:  What exactly do you want me -- any

 7    objection to my asking at this point?

 8            MR. BRYSON:  No.

 9            MR. GREEN:  It's just as worded on the form.

10            THE COURT:  Have any -- have you or any of your

11    family members ever been a plaintiff or defendant in a court

12    case:  Civil, criminal, or domestic?

13            MR. GREEN:  Yes, Your Honor.

14            THE COURT:  That's the question you want me to ask?

15            MR. GREEN:  Yes.

16            THE COURT:  Okay.  Did Ms. Ingram answer

17    affirmatively to that?

18            MR. GREEN:  You never asked that question.

19            THE COURT:  Okay.

20            MR. GREEN:  If you recall, you asked about them

21    personally.  She said, "Not me."  And then we had a follow-up,

22    and we said we would like you to ask about close family member

23    or friends, and then you answered [sic] the question with kind

24    of a focus on criminal law.

25            THE COURT:  I'm sorry.  I thought that's what you all

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    were interested in.  Let me -- do you want to just wait here?

2            **MR. GREEN:**  Yes, Your Honor.

3        (End of bench conference.)

4            **THE COURT:**  All right.  Ladies and gentlemen, I

5    appreciate your patience.  We'll take a break here shortly,

6    comfort break for everybody.

7            I have one more question of the group here, and it's

8    as follows:  Have you or any of your family members ever been a

9    plaintiff or a defendant in a court case:  Criminal, civil, or

10   domestic?  If so raise, your hand.

11           Mr. Doughton?

12           **PROSPECTIVE JUROR NO. 12:**  My parents sued someone

13   who backed out of buying their house probably about 15, 20

14   years ago now in civil court.  It was resolved out of court.

15           **THE COURT:**  Anything about that matter that would

16   affect your ability to be fair and impartial in this case?

17           **PROSPECTIVE JUROR NO. 12:**  No.

18           **THE COURT:**  Anybody else raise their hand?

19           All right.  Thank you.

20        (The following proceedings were had at the bench by the

21        Court and Counsel out of the hearing of the jury:)

22           **THE COURT:**  All right.

23           **MR. BRYSON:**  She did raise her hand.

24           **MR. GREEN:**  She did?

25           **MR. BRYSON:**  She just did.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  You said she raised her hand?

2          **MR. BRYSON:**  She did.  I watched her.  She went like

3    this.

4          **THE COURT:**  Let me just ask.

5      (End of bench conference.)

6          **THE COURT:**  I'm not sure if I missed it.

7          Ms. Ingram, did you raise your hand?

8          **PROSPECTIVE JUROR NO. 2:**  No.

9          **THE COURT:**  Oh, okay.  All right.  Thank you.

10      (The following proceedings were had at the bench by the

11      Court and Counsel out of the hearing of the jury:)

12          **THE COURT:**  All right.

13          **MR. GREEN:**  We're -- that doesn't --

14          **THE COURT:**  What do you mean?

15          **MR. GREEN:**  I mean, given the clarity with that

16    answer and the inconsistency with what's on the verdict form,

17    we are going to remain with those challenges.

18          **THE COURT:**  All right.  So what's your position at

19    this point?

20          **MR. BRYSON:**  We still think that there's been a prima

21    facie showing, and we feel like the reason put forward, while

22    race neutral, is -- I just think it's hard to tell these people

23    are being deceptive when they've already disclosed this answer

24    on their questionnaire.

25          **THE COURT:**  Okay.  All right.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          So as to Ms. Riddle, tell me your argument on

2     Ms. Riddle.

3          **MR. GREEN:**  Again, if I may see her form?

4          As I recall, she marked "yes" in No. 4A.  She

5     answered her "brother."  And on the back, she wrote -- I'm

6     sorry -- "brother, 20 years, a drug charge."  He did the time

7     and "brother doing has a job many years now" on the back.  And

8     she did not answer now twice the Court's inquiry as to whether

9     a close family member or friend has been a plaintiff or a

10    defendant.

11         **THE COURT:**  All right.  Do you want to be heard

12    further?

13         **MR. FOSTER:**  I do.  I mean, the fact that they

14    disclosed it on a written form is evidence of an intent not to

15    hide it.  It may be that the jurors simply misunderstand the

16    legal jargon of who's a plaintiff, who's a defendant, who's a

17    victim, who's a defendant.  It doesn't seem to me to be

18    indicative of some sort of intent to hide something from the

19    Court.

20         **MR. PRINCIPE:**  Your Honor, the issue is that you've

21    asked the question exactly as it was on the form.  They

22    answered the form.  They did not answer here, and that deprived

23    the Court the opportunity to ask them, like you've asked with

24    other questions:  Would that information impact your ability to

25    be fair and impartial?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          So the Government's been deprived of an opportunity

2    for that kind of follow-up question from the Court and also

3    shows perhaps some lack of candor from the two jurors who did

4    not answer the questions in the same way they answered the

5    form.

6          **THE COURT:**  All right.  We're going to take a break,

7    and then I'll let you know.  Thank you.

8          (End of bench conference.)

9          **THE COURT:**  Ladies and gentlemen, we've been going

10   here for not quite an hour and a half.  I think this is a good

11   time to take a comfort break for everybody.  It's a little more

12   cumbersome to do that compared to how normally we would because

13   of the virus.  So I'm going to ask Ms. Engle and staff to take

14   all the prospective jurors out of the courtroom and take you

15   back into where you were before, and you'll have the

16   opportunity to use the restroom.  When you come back, we'll

17   hopefully complete the process, and I don't know if we'll

18   finish before lunch.  We might very well do that.

19          So, remember, you're not to talk about this case or

20   any matter connected to the case.  I gave you all those

21   admonitions earlier:  Not doing any research, don't discuss

22   anything about the case amongst yourself.  Simply remember

23   everything I told you.  Relax, use the facilities, get a drink

24   of water, if there's water in there, and be prepared to come

25   back in because we're going to bring you all back in here

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  shortly.

2          So we'll take a break for roughly 15 minutes,

3  whatever it takes to get you all -- so you can use the

4  facilities and then be ready to come back, ready to go.  And

5  then we'll then hopefully complete the process as best we can.

6          So, Ms. Engle, if you would at this time go ahead and

7  help the jurors out of the courtroom.

8          You can take your things with you.

9      (Prospective jurors exited the courtroom.)

10         **THE COURT:**  All jurors are removed from the

11  courtroom.

12         I'll take a 15-minute break, and then we'll start

13  together after that.  Just so that you are aware, the jurors, I

14  believe, are in Courtroom No. 2.  They should not be able to

15  hear anything occurring in this courtroom or in the hallway in

16  between, but just keep in mind -- I don't know if you're going

17  to be talking to your client or not during the break.  If you

18  do that, I would recommend you do it in the courtroom maybe and

19  not back in the holding cell, but that's up to you.

20         So we'll take a break briefly and then proceed.

21     (Proceedings recessed at 11:41 a.m.)

22     (Proceedings called back to order at 12:32 p.m.)

23     (The Defendant was present.)

24         **THE COURT:**  I apologize for the delay.  I was trying

25  to review the transcript.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

So what I have here is two challenges based on race from the Defendant, *Batson* challenges, to jurors Ms. Riddle and Ms. Ingram.  Ms. Ingram is in Seat 2; Riddle, Seat 4.  Both are African-American.  There is one other African-American juror.  That's Mr. Okafor, No. 7.  I believe that's the only other African-American juror, if I'm not mistaken.

So the Government did strike three, peremptory challenges:  Ms. Ingram; Ms. Rouse, who is a white female; and Ms. Riddle, African-American female.  So Ms. Ingram and Ms. Riddle are both African-American females.

So the Defendant's made a *Batson* challenge.  The three-step process is, first, the Defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race.

Second, the requisite showing, if it's been made, then the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror.

Third, the trial court must determine whether a Defendant has carried his burden of proving purposeful discrimination.

The decisive question is whether counsel's race-neutral explanation should be believed.  In this case the Government has given its reasons for both witnesses that derive from the same basic argument, as I understand it, in that they were not candid disclosing prior involvement of family members

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 87 of 247

1  in civil or criminal cases.  It gets more specific when you get

2  down to it.

3        Some of it turns on what I asked, and both of these

4  turn on the questionnaires that each filled out under oath.

5  The pertinent question in each one is the following:  "Have you

6  or any of your family members ever been a plaintiff or a

7  defendant in a court case (civil, criminal, domestic)?"

8        Ms. Ingram indicated "Yes."  And under the "Who"

9  section wrote, "Uncle, sister."  Under "When," she wrote "Ten

10  or more years ago."  And under the "What," she wrote

11  "Concluded."

12        Ms. Riddle answered "Yes."  First, she answered "No"

13  and struck it and then answered "Yes" -- or, I should say, at

14  some point she wrote "No" and struck it.  And under the "Who,"

15  she wrote "Brother."  Under the "When," 20 years ago -- or "20

16  years."  "What" was "drug charge."  Current status, she wrote,

17  "No.  Did the time."  And on the back, she wrote, "Brother

18  doing has a job many years now."  I'm not exactly sure what

19  that means, but it seems to me to indicate that he's back at

20  work.

21        So the Government did not strike Juror No. 7, who is

22  an African-American male.

23        Assuming there is an inference of a prima facie

24  showing of challenge based on race, without deciding that, then

25  the burden does shift to the Government to show a race-neutral

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 88 of 247

1   reason.

2           As to Ms. Riddle, I clearly asked in a follow-up the

3   following question, I asked -- I said the following:

4           "I asked about whether you were a plaintiff or a

5   defendant in a case.

6           "Have any of you had a close family member or close

7   friend who was involved in a criminal case either as a

8   defendant or as a victim?  If so, please raise your hand."

9           And Ms. Riddle did not answer to that question, nor

10  did she answer to any other question that would have elicited

11  the response that she had a brother who had a drug charge

12  resolved.  Now, she did fill out the questionnaire, but she was

13  asked in open court, and she did not answer it.  That was the

14  Government's response, which serves, in my view, as a

15  race-neutral explanation for striking the juror.

16          As to Ms. Ingram, it's a little more complicated.  I

17  went back and looked at my actual questions, and there was

18  significant discussion at the bench about exactly what I asked.

19  But I did ask during the normal jury selection:  "Has anyone

20  ever been involved in a legal proceeding as a party or a

21  witness?"  That would not have elicited Ms. Ingram's answer

22  about her uncle and sister necessarily, and she did not answer

23  to that.

24          And then I asked for you to approach the bench, and

25  the Government asked -- or indicated the following:

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          "Your Honor, you didn't ask the -- whether the jurors

2  had a close family member or friend who had been a plaintiff or

3  a defendant in a case."

4          That is the question that's on the form without the

5  reference to criminal, civil, or domestic.  However, after

6  that, the question I asked actually was:  "Ladies and

7  gentlemen, have any of you been a plaintiff or a defendant in a

8  case?"  I didn't ask about close family members or friends, so

9  Ms. Ingram did not answer to that, which would not have been

10  misleading.  My recollection is at some point she did tell us

11  about an uncle who had a fraud case.  I can't find exactly what

12  that was in response to.  Maybe counsel remembers.

13          But then the Government then asked me to ask the

14  following:

15          Mr. Green said, "We would like you to ask the jurors

16  if they have family or close friends who have been a plaintiff

17  or a defendant in a criminal case."

18          I said, "In a criminal case?"

19          "Yes, Your Honor."

20          So I asked.  I said, "Let me follow-up.  I asked

21  about whether you were a plaintiff or a defendant in a case.

22          "Have any of you had a close family member or close

23  friend who was involved in a criminal case either as a

24  defendant or as a victim?  If so, please raise your hand."

25          After that, I asked if there was anything further,

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 and the Government said, "No."  And then you exercised your

2 peremptories, and then we came to the question about the *Batson*

3 challenge as to Ms. Ingram.

4 So then I asked what the basis was, and I asked --

5 there was some dispute or argument by the lawyers as to exactly

6 what the Court asked, and the argument was that I had asked the

7 question of the group and that Ms. Ingram had not made the

8 disclosure that was on her sheet fully.

9 And I said, "I think my follow-up was in relation to

10 a criminal matter."

11 And Mr. Green said, "I'm not sure you qualified it

12 that way.  You may have."

13 I did.  I said, "Do you want to know the answer to

14 that before we go further?"

15 And you said, "Yes.  Your Honor, I guess the key is

16 at this point neither -- when you asked the question, neither

17 of those jurors, the record will show, answered -- raised their

18 hand or gave any indication consistent with the information we

19 have here."

20 And I then said, "So your argument is that when

21 I...asked the follow-up whether they had a close family member

22 or friend who was involved in a criminal case as a victim -- as

23 to a defendant or victim, I think is what I asked --

24 Mr. Green says, "Yes, Your Honor."

25 And then I said, "-- neither raised their hand?"

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          And then you said, "They did not."

2          "Is that the basis of your challenge?" I asked.

3          You said, "It is."

4          Then clarified that:  "...the import of the repeated

5  question, and then that the juror again has said 'Not me' as to

6  the first follow-up; and then when you asked that question

7  again, there was no affirmative answer.  But I think the answer

8  to that question as to whether it was criminal may affect the

9  Government's view of that answer or lack of answer."

10          Then the Government indicated -- well, I said, "In

11  other words, if I had asked if it were limited to the criminal

12  case, would that affect your decision?"

13          And Mr. Green said, "Yes."

14          And I said, "I thought that was what I asked.  Let me

15  check.  Hold on."  And then I said, "The specific follow-up

16  question that I asked at the end was whether they had been --

17  had a close family member or friend who had been a victim or a

18  defendant in a criminal case."

19          Mr. Green says, "Okay."

20          I asked, "Does that affect your challenge?"

21          Answer, "It does."

22          "So how does it affect your challenge?"

23          Answer:  "We would not challenge Ms. Ingram based on

24  that answer."

25          And I said, "Well, I am going to hand back your sheet

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1   then and let you decide what you want to do with it."

2          And then you asked whether I could ask the actual

3   question that's on the sheet.  Up until now, I don't believe I

4   had asked that question.  So it was apparent that you were not

5   going to strike that juror until I asked that question, at

6   least that's the inference because you wanted your sheet back.

7   I guess I can't say for sure what you were going to do, but

8   that was the inference.

9          And I asked whether there was any objection to my

10  asking the question on the sheet, and the Defendant's lawyers

11  said "No."

12         Frankly, I thought that might resolve the issue

13  because the answer was already on the sheet, but I guess

14  perhaps it didn't because I asked the question as it's worded

15  on Question 4 on the jury questionnaire and got no affirmative

16  answer from Ms. Ingram even when the Defendant suggested that

17  maybe she was raising her hand, and she said she was not.

18         So Ms. Ingram's situation is complicated a little bit

19  because the inference is the Government was going to withdraw

20  its objection to her until -- it wanted the answer from the

21  actual sheet; in which case, then it got the different answer,

22  or at least one that's arguably inconsistent, one that did not

23  disclose the sister.

24         I don't know what -- whether there was a case with

25  the sister and, if so, whether it was civil or criminal.  We

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

don't know the answer to that, but we do know that she
disclosed something about an uncle who had been the victim of
fraud apparently, and, presumably, that's what it is.

So as -- my inclination then is as to Ms. Riddle the
Government has given a race-neutral reason and that the
Defendant has not demonstrated both that the reason was a
pretext or that race was the real reason.

Ms. Ingram's situation is little more complicated.
It sounds like maybe -- well, I should say it's just more
complicated.

So let me hear from you further as to Ms. Ingram.  I
mean, the Defendant argues that maybe she just misunderstood
what's on the form.  We, frankly, don't know what her answer is
on the form.

**MR. GREEN:**  We don't.  We do know she wrote "sister"
under the -- associated with the block where she had also
referenced her earlier "uncle" and had that disclosed that on
the form.

As I understood initially kind of where we are, I
thought I heard Mr. Bryson initially concede that that would be
a race-neutral reason, inconsistency with the form, and then
counsel was arguing that maybe she was just confused.

Whatever the reason --

**THE COURT:**  The one oddity in this case is that
wasn't 100 percent apparent until I asked the actual question

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    on the form, which came after you had exercised your strike.

2            **MR. GREEN:**  Right.  I think the question becomes

3    exactly that.  I think the Government was unclear exactly which

4    question you asked and, more specifically, was the juror

5    hearing that correctly.  In other words, is the juror hearing

6    the import of the Court's question, which is family member or

7    friends.

8            And if you recall, Your Honor, before we began jury

9    selection, before the Government would have any indication of

10   the race of the jurors, I referenced Ms. Ingram's answer and

11   whether I thought she had indicated she wanted to talk about

12   that particular circumstance in private.

13           But the import of the Government's question was the

14   same for both jurors.  We have what appears to be a disclosure

15   on the form that is inconsistent with what they're saying --

16   well, not saying in court.  And I certainly understand the

17   back-and-forth with the Court, but where we got to is I would

18   like you to ask this specific question with regards to --

19   because it's the form and the discussion on the form, and that

20   is the reason why the Government says -- we're trying to get at

21   essentially is she going to -- this juror going to mention the

22   sister that she referenced on the form.

23           **THE COURT:**  What effect, if any, is it that the

24   actual question had not been requested prior to that time?

25           **MR. GREEN:**  I don't think it is an effect.  I think

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    it's certainly demonstrated in the record that there was

2    substantial -- "confusion" may be the right word, but a

3    substantial back-and-forth in terms of what exactly the Court

4    answered [sic], and what I heard you ask that question.  And

5    you -- I think it should be fair to say, I hope, that, again,

6    the Government is continuing to prod the Court to get to that

7    answer -- to get to that question.

8         And you did say, Your Honor -- I think you said

9    "plaintiff or defendant."  Of course, we don't normally use the

10   word "plaintiff" in describing criminal activity, and the point

11   is not -- the point was the lack of consistency with the

12   disclosure on the form.  And I think if you, again, trace it

13   back from the very -- before the jurors even came in here,

14   before the Government had any idea of what anybody's racial

15   background was, we drew attention to that particular thing.  I

16   thought incorrectly that was something the juror wanted to

17   speak about in private.  You pointed out that it was not.  The

18   importance of those forms, which we do review and review for

19   accuracy, is important.

20        So I don't think there is an important -- the

21   question is is that race neutral that a juror -- any juror,

22   white, black, whatever their race may be, would not disclose

23   something to the Court?  And reasonably, Your Honor, I think

24   all the reasons around -- if we have a disclosure about the

25   uncle and not about the sister, that only kind of further

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  raises our concern about is there something going with the

2  sister?  Maybe she was treated unfairly.  Maybe there's

3  something that we're not aware of.

4          And, again, I think the Court kind of coming back to

5  this question again and again would certainly prompt a

6  reasonable juror, I think, to say, oh, yeah, my sister, who I

7  put down on the form, and disclose that.  That never came.  And

8  so I certainly understand the back-and-forth and reading the

9  dry transcript, but I think the Court could certainly assess

10 that from the questions and, again, trying -- and this is not a

11 criticism at all -- trying to prompt the Court to get to that

12 question, which was, in essence, the conflict with the form.

13         That's where the Government was.

14         **THE COURT:**  Do you want to be heard at all?

15         **MR. BRYSON:**  Can I just ask a question?  I thought I

16 heard Mr. Green say that on Ms. Ingram's form she checked the

17 box that said she would not feel comfortable discussing this in

18 court?

19         **MR. GREEN:**  No.  I thought she did.

20         **THE COURT:**  He had argued before we started he had

21 thought she did, and I thought I indicated to both of you she

22 checked "No," that there would be not a problem.

23         **MR. BRYSON:**  Okay.  Then the only thing I would say

24 is this, in terms of -- they have disclosed these things on

25 their forms.  And I would say, you know, if you wanted do to a

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  follow-up question, and you want to say, you know, Ms. Ingram,

2  tell us about your sister that you indicated on your form, that

3  would be a very reasonable and rational follow-up question to

4  do.  But to just purposefully ask the same question that

5  they've already answered on a form, I would argue that that in

6  itself is pretextual.  I mean, it's like we're looking for some

7  kind of trap or trick to trick these people so that we can

8  excuse them for cause.  There's no real gathering of

9  information here.  It's just simply let's ask the same question

10  again and see if there is any distinction.  I would argue

11  that's pretextual.

12          **THE COURT:**  All right.  So what's the evidence that

13  race is the real reason?  Do you have any evidence of that?  I

14  mean, it has to not only be pretextual, but you have to further

15  show that it was based on race.

16          **MR. BRYSON:**  Well, in that regard, I would say they

17  have exercised, I believe, three challenges and two of them

18  have been against African-Americans and that they have excused

19  two out of three African-Americans that were presented to them.

20          **THE COURT:**  Okay.

21          **MR. GREEN:**  Your Honor, if I may?

22          **THE COURT:**  Yes.

23          **MR. GREEN:**  I would also note that I think if we look

24  at this also in the broader context -- I don't think I'm

25  incorrect here -- some of the other jurors had disclosed other

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 things on their form. I think, for instance, Mr. Doughton

2 disclosed a civil lawsuit -- a civil thing with his parents, I

3 believe -- which juror is it? -- Mr. Brandis disclosed a

4 situation with his stepson and his wife on their forms that

5 were also disclosed in court.

6      (Pause in the proceedings.)

7      **THE COURT:** All right. I'm going to deny both

8 challenges. If I presume that the Defendant has made a prima

9 facie showing that the prosecutor exercised peremptories

10 challenges on the basis of race, I would note that another

11 African-American juror was not struck. These two were struck.

12 The Government's proffered reasons; both relate to whether the

13 jurors were being candid in terms of what they were willing to

14 say in the open courtroom versus what they had written down on

15 their papers, which had been written under penalty of perjury.

16      In this case, Ms. Riddle and Ms. Ingram are both

17 African-American females. Ms. Riddle was specifically, though,

18 asked a question that would have elicited the response that she

19 had a son -- I'm sorry -- she had a brother that had a drug

20 charge. She did not disclose that. Whatever the reasons are,

21 she didn't disclose it, but certainly it's a failure to

22 disclose in open court any matter of that sort. She is the one

23 who did check the box "Yes" as to Question 4; it would be

24 embarrassing to speak in open court to provide the information

25 about that. But she didn't -- that doesn't mean she can't

US v. Wiley -- Trial/Jury Selection -- 4/19/21

answer the question in open court. She at least should -- can raise her hand. And then I've told them all earlier they can approach the bench; we'll have a private discussion. She did not do that. So that goes to the truthfulness or forthcoming nature of Ms. Riddle, which I think is a nondiscriminatory reason, and there's no indication on this record as to her that that was a pretext for actual discrimination.

Ms. Ingram's situation might have been contributed to, inadvertently, by the way I asked the question because the Government did ask -- did bring her positive responses on the jury questionnaire to the Court's attention before we picked a jury; then did ask at one point in follow-ups for me to ask what was apparently the question that was on the form. I didn't realize it was exactly in that form.

So when you asked me to ask the question, Mr. Green, you did ask me to ask whether any family members or -- whether they or any family members had been a plaintiff or a defendant in a court case; but then when I asked the question, I didn't ask it that way. I limited it, I believe, to a criminal case, and then I pointed that out.

There seemed to have been some confusion about that, about exactly what I asked, but the Government's proffered reason at the time was that that was the reason; she was not being forthcoming. That was the reason that that was being requested of the Court.

US v. Wiley -- Trial/Jury Selection -- 4/19/21

1          And then the Government did indicate that if I were

2    to actually ask the question that was on the form, if she

3    answered that, that that might change the Government's view,

4    tending to indicate they would not strike the witness -- or the

5    juror.  And so I did ask it.  There was no objection by the

6    Defendant, which I asked whether there would be an objection.

7          So the question in my mind is whether, throughout

8    that process, the Government maintained its actual reason or

9    whether it was pretextual.  There are different ways to ask

10   questions and ask follow-ups, but Mr. Bryson's correct that one

11   way to do it is to ask follow-up questions about what they put

12   on the form.  The other is to give them the opportunity to

13   respond to the same type of question in the courtroom, and then

14   see what they say, which might indicate something further about

15   whether somebody is willing to be forthcoming.

16         That does not appear to me on its face to be

17   pretextual to do it the way the Government asked that it be

18   done in this case, which is eventually what the Court did.  And

19   at that point, unfortunately, Ms. Ingram did not respond

20   positively, even when she was prompted that perhaps she had

21   raised her hand, after Mr. Bryson suggested maybe she had, and

22   she had not.  So she did not disclose the information that she

23   had put on her form and was unwilling to raise her hand in open

24   court, and she had not indicated any hesitancy about doing

25   that.  So we don't know anything about whether she has a sister

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 who has some kind of legal proceeding.  According to her form,

2 she did and she did not disclose it in the courtroom.  That's

3 at least an inconsistency.  Whether she was truthful in the

4 courtroom or truthful on the form, we don't know on this

5 record; but it's certainly an inconsistency that is a

6 non-pretextual reason.

7      It's true that two of the three that were struck were

8 African-American, but they both did the same thing; they both

9 did not disclose information that was on their forms.  And they

10 are the only two that have been brought to my attention who are

11 in that situation, that failed to disclose what was on their

12 forms when given the opportunity to open court.  In fact,

13 others who were not struck did disclose such information.

14      So, on this record, I'm going to find that the

15 Defendant has not carried his burden to show that the pretext

16 was the -- that the Government's reason was pretextual and that

17 race was the real reason for the strike.  So I will deny the

18 motion.

19      Okay.  Anybody have anything further they need to

20 hear on that?

21           **MR. GREEN:**  No, not on this matter.

22           **THE COURT:**  Okay.

23           **MR. BRYSON:**  No, Your Honor.

24           **THE COURT:**  It is now 1:05.  I think I'm going to

25 need to let the jurors go to lunch.  What I would like to do is

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  at least dismiss out the ones who will not be chosen this

2  morning, bring them in and send them out to lunch.  Now that

3  you've exercised your strikes, I would intend to do that.  And

4  then send the others -- if there are any who are selected, send

5  them home, and then we'll continue after lunch.  All right.

6            So why don't we bring the jurors back in, please.

7        (Prospective jurors entered the courtroom at 1:10 p.m.)

8            **THE COURT:**  All right.  Ladies and gentlemen, I

9  apologize for the delay.  We're going to take a lunch break in

10  just a minute.  We can make some decisions on some folks.

11            I'm going to ask Ms. Engle to go ahead and make an

12  announcement, please.

13            **DEPUTY COURTROOM CLERK:**  Your Honor, five jurors have

14  been selected.

15            When I call your name, you will be dismissed for the

16  day.  When you come back tomorrow morning at 9:00, you will be

17  reporting to Courtroom 3.

18            **THE COURT:**  Wait a minute.  If you're dismissed,

19  then --

20            **DEPUTY COURTROOM CLERK:**  I'm sorry.  These are the

21  jurors that have been selected?

22            **THE COURT:**  Okay.  So then the following, then, are

23  people who will be selected for the jury; right?

24            **DEPUTY COURTROOM CLERK:**  Yes.

25            **THE COURT:**  And so you'll be dismissed for the day.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1   You need to come back tomorrow at what time?

2               **DEPUTY COURTROOM CLERK:**  Well, you said 9:00.

3               **THE COURT:**  9:00 -- I'm actually going to say 8:45

4   a.m. in Courtroom No. 3, which is across the hall.

5               And then for all of those who will be on the jury,

6   remember all of my admonitions that I gave you throughout this

7   morning:  Not to discuss the case, not to do any research,

8   don't talk to anybody about the case.  Simply put it out of

9   your mind.  I'm going to ask you about that when you come back,

10  whether you've done any research or heard from anybody about

11  the case, even if it's inadvertent.  So make sure that you

12  simply put it out of your mind and set your schedule so that

13  you'll be available for trial for just a few days.

14              **DEPUTY COURTROOM CLERK:**  Sonia Lancaster, Quentin

15  Queen, Anthony Okafor, Christopher Putnam, and Samuel Doughton,

16  you can go ahead and leave.

17              **THE COURT:**  So those individuals will be on the jury.

18  And remember all of my admonitions and be back tomorrow at 8:45

19  in Courtroom No. 3.  You're free to go home for the day.  Thank

20  you.

21              So the remainder of you here in the jury box and in

22  the well, the three of you, you are now free to leave.  Your

23  services will not be needed for this jury.  So I thank you for

24  being patient today and for going through the process with us.

25  You are free to go home, and your services will not be required

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  for this trial.

2          **DEPUTY COURTROOM CLERK:**  Please call back again

3  Sunday.

4          **THE COURT:**  That's to see whether there is another

5  case that needs your services.  Thank you for your service

6  today.

7      (Selected and excused jurors departed the courtroom at

8      1:15 p.m.)

9          **THE COURT:**  All right.  Ladies and gentlemen, for the

10 rest of you, I apologize for the late break.  I thought we

11 could resolve this quicker than we did.  We're going to take an

12 hour break for lunch, so I ask you to come back at 2:15.

13 You'll need to collect again in Courtroom No. 2 where you

14 collected earlier.  As soon as we're ready for you -- hopefully

15 it will be right at 2:15 -- we'll bring you in here, and we'll

16 finish up what we're doing.

17          In the meantime, my admonition applies to you all as

18 well, all of my admonitions:  Don't do any research; don't talk

19 about the case; don't try to learn anything about it; if

20 anybody tries to talk to you about the case or discuss it at

21 all, let me know immediately.  Simply put it out of your mind,

22 grab something to eat, and then come back ready to go at 2:15.

23 There are places to eat downtown.  There is a Subway restaurant

24 in the Winston Tower building.  There's another cafe on the

25 first floor of the One West Fourth Street building which is

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 right across the street. There are probably other places

2 downtown, but there are several places where you can grab a

3 quick sandwich or a bite to eat, so I hope you can -- unless

4 you brought something, and then grab something to eat.

5        Does anybody need more than an hour? If so, please

6 raise your hand.

7        All right. I appreciate your ongoing patience, and I

8 look forward to seeing you at 2:15.

9    (Prospective jurors departed the courtroom at 1:17 p.m.)

10       **THE COURT:** All right. If the court security

11 officers will let me know when the vestibule is cleared out,

12 I'd appreciate that.

13       So we'll wait here just a minute to make sure they

14 have the jurors all cleared out.

15       **MR. GREEN:** I do have one matter I would like to

16 bring to the Court's attention whenever you're ready.

17       **THE COURT:** That's fine. Now would be a good time.

18       **MR. GREEN:** All right. Your Honor, I think we had

19 discussed, if we were able to complete jury selection, that we

20 might turn to the question of the Defendant's motion in limine

21 as it relates to certain text messages.

22       **THE COURT:** Yes.

23       **MR. GREEN:** The individual in those text messages,

24 Miss Poole, is here. She had previously been appointed counsel

25 from the Public Defender's Office, but that counsel was

US v. Wiley -- Trial/Jury Selection -- 4/19/21

1  Mr. Davis.  And, of course, Mr. Davis has passed.  I contacted

2  the Public Defender's Office, Mr. Allen, and he informs me that

3  they cannot represent Miss Poole any further.

4          The Government does believe that there exists the

5  possibility that Miss Poole is -- potentially could incriminate

6  herself, both at this hearing and the trial.  And, obviously,

7  I'm not asking you to decide right now what to do about that,

8  but I think it would be advisable to warn Miss Poole in some

9  context outside the presence of the jury; and if she either

10 needs or qualifies for counsel, that we appoint her counsel

11 before we proceed, because it would be the Government's

12 intention to call her in the context of that motion in limine.

13         **THE COURT:**  Does she fall under our CJA plan as

14 entitlement to counsel?

15         **MR. GREEN:**  She did previously certainly.

16         **THE COURT:**  Is there any reason not to appoint her

17 counsel at this point?

18         **MR. GREEN:**  There is not, in my view.  In fact, I

19 think she probably would benefit from counsel.

20         **THE COURT:**  Okay.  Is there a reason she hasn't been

21 appointed counsel now?  Mr. Davis passed several months ago.

22         **MR. GREEN:**  She was subpoenaed to appear before the

23 grand jury; and once that appointment passed, I understood

24 that -- I assumed that that representation continues, but,

25 apparently, after speaking Mr. Allen, it does not.  To be

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

clear, I did not discuss with him anything related to the --

what I provided Mr. Allen was a copy of the investigative file

related to Miss Poole, which counsel has and says this is the

nature of what the concern is.  And when he responded to me, he

said they could not represent her, both because the appointment

had expired and I believe he identified there might be a

conflict now.

     **THE COURT:**  Does one of the FPD lawyers represent a

co-defendant?

     **MR. GREEN:**  I don't know the nature of the conflict.

I did not inquire.

     **THE COURT:**  Okay.

     **MR. GREEN:**  But I would think that it would not be

the Public Defender's Office.

     **THE COURT:**  Do you want to be heard at all?  Is there

any reason I should not appoint counsel for Miss Poole?

     **MR. BRYSON:**  Not that we know of, Your Honor.

     **THE COURT:**  All right.  Well, I'll make sure she gets

counsel appointed.  I will do it over lunch and order that she

be appointed counsel forthwith.

     When do you anticipate her potential testimony?

     **MR. GREEN:**  It would be later in the trial, and we'll

obviously -- we could certainly do some arguments around the

question of the text messages.  If we got to do that today,

certainly might be able to frame up the case.  Again, until she

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 108 of 247

1  has counsel, I don't know whether she asserts a Fifth Amendment

2  privilege not to testify if compelled to do so or says things

3  inconsistent with a prior statement that she's given.  And I

4  think counsel has referred to those statements in there.

5          **THE COURT:**  I'm going to enter an order right now

6  that she be appointed counsel forthwith.

7          If you would enter a text order in that effect in the

8  case.

9          **MR. GREEN:**  Thank you, Your Honor.

10         **THE COURT:**  They will have to come off the CJA panel,

11  because -- if she qualifies, I assume she does, because the FPD

12  Office has a conflict.  If you would follow up, Ms. Engle, and

13  make sure that gets resolved this afternoon.

14         Thank you.

15         **MR. GREEN:**  Thank you.

16         **THE COURT:**  I want to make sure you all get a chance

17  to take a lunch break.  We've got the other jurors who are

18  upstairs, so we have two sets of potential jurors now in the

19  building.  I'm hopeful we can get this resolved here before the

20  end of the afternoon and then start in the morning.

21         I would be glad to hear you all on the issue of the

22  text messages; but if it's not going to happen in day one or

23  two, we might do it some other day.

24         **MR. GREEN:**  Yes, Your Honor.

25         **THE COURT:**  I did read all the briefs.  I have some

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  thoughts about it.  I don't know to what extent that's
2  contingent in its nature, depending on what happens in the
3  trial.  If it is, resolving it later rather than earlier would
4  be my inclination.  I do want to make sure you've looked at the
5  preliminary charge at some time before the end of the day so
6  that we're all in agreement, and I can at least give that and
7  start the trial.
8          All right.  So enjoy your lunch.  I would like to
9  start, if we can, at 2:15.
10         Does that give you all enough time to do what you
11  need to?
12             **MR. GREEN:**  It does.
13             **THE COURT:**  Okay.  If you have any trouble, let me
14  know.  As I said, at least while the other jurors are here --
15  they are in the other courtroom, so if you're having any
16  conversations with Mr. Wiley in the lockup area -- I would
17  encourage you to have them upstairs on the fourth floor and not
18  over here.
19      (Off-the-record discussion.)
20             **THE COURT:**  Any question about that?
21             **MR. GREEN:**  No, Your Honor.
22             **THE COURT:**  Okay.  All right.  So we'll see you all
23  then at 2:15.
24      (Proceedings recessed at 1:23 p.m.)
25      (Proceedings called back to order at 2:21 p.m.)

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1      (The Defendant was present.)

2           **THE COURT:**  We are awaiting jurors, I believe.  We

3 have two who have not come back.

4           Are they back?

5           **DEPUTY COURTROOM CLERK:**  We have them all now.

6           **THE COURT:**  Apparently we now have everybody back, so

7 we'll bring them in in a minute.

8           Let me just -- I want to make something clear that

9 hopefully was clear before, and, that is, on the *Batson*

10 challenge, ultimately there is a question of credibility.  I

11 found, and I am expressly finding, that based on my assessment

12 of the credibility and the reasons offered by the assistant

13 U.S. attorney in the case, that the reason for the challenges

14 were based on the inconsistency between the responses orally in

15 court and the responses on the written forms.  And that's based

16 on my assessment of the credibility of the lawyers, and

17 Mr. Green, in particular.  And I'm expressly finding that that

18 was the reason -- legitimate reason the Government offered for

19 its reasons and that it's not based on race.

20           All right.  Okay.  Are we ready to bring in the rest

21 of the jurors and continue the process?

22           So what we're going to do is -- we picked five so

23 far.  I will bring seven more.  I am going to seat them in the

24 empty seats so that you can keep your charts accurate.  And

25 then once we've finished that process and choose 12, then I

1 will bring in the alternates.  And then if we can do that with

2 the morning group, we will.  If not, the afternoon group is

3 upstairs, and we'll bring them in.  Okay.

4     (Prospective jurors returned to the courtroom at

5     2:22 p.m.)

6         **THE COURT:**  Ms. Powell, if you would make sure that

7 no jurors are seated what would be behind counsel table.  Thank

8 you.

9         All right.  Ms. Engle, if you would please call seven

10 jurors to the jury box.

11         **DEPUTY COURTROOM CLERK:**  Brent Mitchell, will you

12 please step forward and have a seat in Seat No. 2.

13         Tina Spach, will you please have a seat in Seat

14 No. 3.  If will you just come around and go that way.

15         Paul Rice, please have seat in the back row in Seat

16 No. 4.

17         Henry Christian, if you will please have a seat in

18 Seat No. 5, and if you will go through here so you don't have

19 to step over each other.

20         Wayne Daniels, if will you please have a seat right

21 here in the front row in Seat No. 9.

22         Jonathan Clegg, if will you please have a seat in the

23 middle there in Seat No. 10.

24         Lynda Hunter, if will you please have a seat in Seat

25 No. 11.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  All right.  Ladies and gentlemen, my

2    questions now are directed -- be careful.  We don't want to

3    lose anybody.

4          My questions are directed to those of you who are in

5    the jury box area here.  Again, everybody else listen because

6    if you would have answered "Yes" to any of these questions as

7    well -- they should be the same as before or largely the same,

8    but if you would, make a mental note.

9          So before I get into the general questions, let me

10   just get a little background information then from each of you.

11         So let me start with Mr. Mitchell.

12         What county do you live in, sir?

13         **PROSPECTIVE JUROR NO. 2:**  Orange County.

14         **THE COURT:**  How long have you lived there?

15         **PROSPECTIVE JUROR NO. 2:**  Forty-plus years.

16         **THE COURT:**  How far did you attend in school?

17         **PROSPECTIVE JUROR NO. 2:**  B.A. in psychology.

18         **THE COURT:**  And what do you do for a living?

19         **PROSPECTIVE JUROR NO. 2:**  I'm an IT business systems

20   analyst.

21         **THE COURT:**  Do you have a significant other or a

22   spouse?

23         **PROSPECTIVE JUROR NO. 2:**  I'm married, yes.

24         **THE COURT:**  What does your spouse do?

25         **PROSPECTIVE JUROR NO. 2:**  She is a dean of a local

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 private school.

2          **THE COURT:**  What grades?

3          **PROSPECTIVE JUROR NO. 2:**  It is kindergarten through

4 fifth grade, I believe.

5          **THE COURT:**  Is the school affiliated with any

6 organization?

7          **PROSPECTIVE JUROR NO. 2:**  It's the Christian

8 Education Society.

9          **THE COURT:**  Okay.  Do you have any adult children?

10          **PROSPECTIVE JUROR NO. 2:**  Yes.

11          **THE COURT:**  What do they do?

12          **PROSPECTIVE JUROR NO. 2:**  My oldest is an artist,

13 floral artist; my second is an executive admin, works for UNC;

14 my son is an EMT; my next son is a teacher in woodworking; and

15 then my daughter is a project manager for home improvement.

16          **THE COURT:**  Where is your son an EMT?

17          **PROSPECTIVE JUROR NO. 2:**  He is in Indianapolis.

18          **THE COURT:**  All right.  Is that in conjunction with

19 any law enforcement agency or not?

20          **PROSPECTIVE JUROR NO. 2:**  I don't believe so.

21          **THE COURT:**  Okay.

22          **PROSPECTIVE JUROR NO. 2:**  Primarily ambulance care.

23          **THE COURT:**  Thank you.

24          Ms. Spach, what county do you live in, ma'am?

25          **PROSPECTIVE JUROR NO. 3:**  Forsyth.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

**THE COURT:** How long have you lived there?

**PROSPECTIVE JUROR NO. 3:** Over 30 years.

**THE COURT:** And how far did you attend in school?

**PROSPECTIVE JUROR NO. 3:** I have a master's in clinical social work.

**THE COURT:** And are you working?

**PROSPECTIVE JUROR NO. 3:** Yes.

**THE COURT:** What do you do, ma'am?

**PROSPECTIVE JUROR NO. 3:** I am a mental health therapist and mental health specialist.

**THE COURT:** Do you work with any criminal offenders in your work?

**PROSPECTIVE JUROR NO. 3:** Yes.

**THE COURT:** You do?

**PROSPECTIVE JUROR NO. 3:** Yes.

**THE COURT:** So do you have any interaction with law enforcement folks?

**PROSPECTIVE JUROR NO. 3:** I have had -- no, not law enforcement. I do work with TASC.

**THE COURT:** I'm sorry?

**PROSPECTIVE JUROR NO. 3:** TASC, T-A-S-C.

**THE COURT:** What is that?

**PROSPECTIVE JUROR NO. 3:** It's treatment for -- let's see. I don't know. I would have to look it up, but it's just kind of -- not like drug court, but they will have an officer

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  that's more like a case manager.

2        **THE COURT:**  All right.  Do you ever go to court in

3  your role?

4        **PROSPECTIVE JUROR NO. 3:**  No.

5        **THE COURT:**  And do you have a spouse or significant

6  other?

7        **PROSPECTIVE JUROR NO. 3:**  Yes.

8        **THE COURT:**  And what does that person do?

9        **PROSPECTIVE JUROR NO. 3:**  He is a driver manager for

10 FirstFleet, and they contract with Rock-Tenn.

11       **THE COURT:**  Did you say FirstFleet?

12       **PROSPECTIVE JUROR NO. 3:**  Uh-huh.

13       **THE COURT:**  And they contract with whom?

14       **PROSPECTIVE JUROR NO. 3:**  Rock-Tenn.

15       **THE COURT:**  Okay.  Do you have adult children?

16       **PROSPECTIVE JUROR NO. 3:**  No.

17       **THE COURT:**  All right.  Thank you.

18       Mr. Rice, what county are you from, sir?

19       **PROSPECTIVE JUROR NO. 4:**  I'm from Forsyth County,

20 sir.

21       **THE COURT:**  For how long?

22       **PROSPECTIVE JUROR NO. 4:**  Going on 50 years.

23       **THE COURT:**  How far did you attend in school?

24       **PROSPECTIVE JUROR NO. 4:**  I have an associate's

25 degree in electronic engineering and biotech.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

```
 1          THE COURT:  Are you working?
 2          PROSPECTIVE JUROR NO. 4:  No.  I'm retired
 3 thankfully.
 4          THE COURT:  What did you do when you were working?
 5          PROSPECTIVE JUROR NO. 4:  I was an electrologist for
 6 a pharmaceutical company.
 7          THE COURT:  What is that basically?
 8          PROSPECTIVE JUROR NO. 4:  It entails calibrating,
 9 qualifying electrical equipment used in R&D labs.
10          THE COURT:  All right.  Are you married or have a
11 significant other?
12          PROSPECTIVE JUROR NO. 4:  Oh, I'm married, yes, sir.
13          THE COURT:  What does your spouse do?
14          PROSPECTIVE JUROR NO. 4:  She's retired also.
15          THE COURT:  From what business?
16          PROSPECTIVE JUROR NO. 4:  She's from Wake Forest
17 University Health Sciences.  She was the payroll manager there.
18          THE COURT:  Do you have adult children?
19          PROSPECTIVE JUROR NO. 4:  Two.
20          THE COURT:  What do they do?
21          PROSPECTIVE JUROR NO. 4:  My daughter is a paralegal,
22 and my son is a computer website analyst.  Both of them are for
23 BB&T.
24          THE COURT:  In connection with your daughter's work,
25 does she get involved in any criminal matters, or is it mostly
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 civil?

2          **PROSPECTIVE JUROR NO. 4:**  It's mostly civil.

3          **THE COURT:**  Okay.  Do you know whether she does any

4 criminal law-related work?

5          **PROSPECTIVE JUROR NO. 4:**  No, she doesn't do any

6 criminal law.

7          **THE COURT:**  Thank you.

8          Mr. Christian, what county do you live in, sir?

9          **PROSPECTIVE JUROR NO. 5:**  Montgomery County, sir.

10          **THE COURT:**  And how long have you lived there, sir?

11          **PROSPECTIVE JUROR NO. 5:**  My whole life.

12          **THE COURT:**  All right.  How far did you attend in

13 school?

14          **PROSPECTIVE JUROR NO. 5:**  Right now, I am still

15 enrolled in Montgomery Community College for my associate's.

16          **THE COURT:**  All right.  And what are studying, sir?

17          **PROSPECTIVE JUROR NO. 5:**  Business management.

18          **THE COURT:**  Are you working currently other than

19 you're studying?

20          **PROSPECTIVE JUROR NO. 5:**  Yes, sir.

21          **THE COURT:**  What do you do, sir?

22          **PROSPECTIVE JUROR NO. 5:**  I'm an overnight stocker at

23 Lowe's.

24          **THE COURT:**  Are you married, or do you have a

25 significant other?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 5:**  No, sir.

2          **THE COURT:**  All right.  And I know it may sound like

3    a dumb question, but do you have any adult children?

4          **PROSPECTIVE JUROR NO. 5:**  No, sir.

5          **THE COURT:**  All right.  Thank you.

6          Let me then turn to folks here on the floor.

7          Mr. Daniels, what county are you from, sir?

8          **PROSPECTIVE JUROR NO. 9:**  Cabarrus County.

9          **THE COURT:**  How long have you lived there?

10         **PROSPECTIVE JUROR NO. 9:**  All my life.

11         **THE COURT:**  How far did you attend in school?

12         **PROSPECTIVE JUROR NO. 9:**  Twelfth grade, diploma.

13         **THE COURT:**  All right.  Are you working?

14         **PROSPECTIVE JUROR NO. 9:**  Yes.

15         **THE COURT:**  What do you do, sir?

16         **PROSPECTIVE JUROR NO. 9:**  I do electrical work.

17         **THE COURT:**  Does that mean you're an electrician?

18         **PROSPECTIVE JUROR NO. 9:**  Yep.

19         **THE COURT:**  All right.  Do you have your own

20   business, or do you work for somebody?

21         **PROSPECTIVE JUROR NO. 9:**  I work for my brother as a

22   matter of fact.

23         **THE COURT:**  Okay.  Are you married, or do you have a

24   significant other?

25         **PROSPECTIVE JUROR NO. 9:**  I'm married.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  What does your spouse do?

2          **PROSPECTIVE JUROR NO. 9:**  She is a healthcare worker.

3          **THE COURT:**  Can you tell me a little more precisely

4  what that means?

5          **PROSPECTIVE JUROR NO. 9:**  She takes care of people

6  that's got, like, disabilities.

7          **THE COURT:**  Okay.  Do you have any adult children?

8          **PROSPECTIVE JUROR NO. 9:**  I have one son.  He

9  graduates this year.

10          **THE COURT:**  From high school or college?

11          **PROSPECTIVE JUROR NO. 9:**  High school.

12          **THE COURT:**  All right.  Is he working?

13          **PROSPECTIVE JUROR NO. 9:**  No.

14          **THE COURT:**  All right.  Do you know if he has a job

15  lined up yet or not?

16          **PROSPECTIVE JUROR NO. 9:**  I have no idea.

17          **THE COURT:**  Okay.  All right.  Fair enough.  Thank

18  you.

19          Mr. Clegg, what county do you live in, sir?

20          **PROSPECTIVE JUROR NO. 10:**  I live in Lee County.

21          **THE COURT:**  How long have you lived there?

22          **PROSPECTIVE JUROR NO. 10:**  All my life.

23          **THE COURT:**  How far did you attend in school?

24          **PROSPECTIVE JUROR NO. 10:**  Twelfth grade.

25          **THE COURT:**  All right.  And are you working

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  currently?

2          **PROSPECTIVE JUROR NO. 10:**  Yes, sir.

3          **THE COURT:**  What do you do, sir?

4          **PROSPECTIVE JUROR NO. 10:**  I'm a material handler at

5  Caterpillar.

6          **THE COURT:**  Make sure that these folks over here can

7  hear everything that you're saying.

8          Are you married, or do you have a significant other?

9          **PROSPECTIVE JUROR NO. 10:**  No, I'm not married.

10          **THE COURT:**  The reason I ask that question is if --

11  whether there is somebody who is a spouse or a significant

12  other and whether they are working, because what they do might

13  be important for the parties to know in this case.  And that's

14  why I ask a question like that.

15          Do you have any adult children?

16          **PROSPECTIVE JUROR NO. 10:**  No, sir.

17          **THE COURT:**  All right.  Thank you, sir.

18          And, finally, Ms. Hunter, what county do you live?

19          **PROSPECTIVE JUROR NO. 11:**  Rowan County.

20          **THE COURT:**  And how long have you lived there?

21          **PROSPECTIVE JUROR NO. 11:**  About 20 years.

22          **THE COURT:**  How far did you attend in your schooling?

23          **PROSPECTIVE JUROR NO. 11:**  I have a bachelor's degree

24  in elementary ed.

25          **THE COURT:**  Are you working?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    **PROSPECTIVE JUROR NO. 11:**  I am.

2    **THE COURT:**  What do you do?

3    **PROSPECTIVE JUROR NO. 11:**  I teach fifth grade.

4    **THE COURT:**  Any particular subjects?

5    **PROSPECTIVE JUROR NO. 11:**  All of them.

6    **THE COURT:**  All right.  Are you married, or do you

7  have a significant other?

8    **PROSPECTIVE JUROR NO. 11:**  I'm a widow.

9    **THE COURT:**  I'm sorry to hear that.

10    What did your spouse do?

11    **PROSPECTIVE JUROR NO. 11:**  He worked with the City of

12  Concord with the traffic lights.

13    **THE COURT:**  Okay.  Do you have any adult children?

14    **PROSPECTIVE JUROR NO. 11:**  I do.  I have two.  One is

15  graduating on May 8th from college, and the other one is in the

16  military police in the Army.

17    **THE COURT:**  All right.  So the one who is graduating

18  May 8th, does that child have a job lined up?

19    **PROSPECTIVE JUROR NO. 11:**  She's going to Memphis to

20  work with an organization called World Relief.

21    **THE COURT:**  What is that?

22    **PROSPECTIVE JUROR NO. 11:**  They work with immigrants

23  and refugees.

24    **THE COURT:**  All right.  And then you said you had a

25  son who is a military policeman?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 11:**  He's military police in

2     the Army stationed at Fort Bragg.

3          **THE COURT:**  All right.  How long has he been in that

4     position?

5          **PROSPECTIVE JUROR NO. 11:**  This is the second year.

6          **THE COURT:**  Pardon me?

7          **PROSPECTIVE JUROR NO. 11:**  Second year.

8          **THE COURT:**  Okay.  Is there anything about the work

9     that he does or his position that you think in any way would

10    impair your ability to be fair and impartial in this case?

11         **PROSPECTIVE JUROR NO. 11:**  No, I don't think so.

12         **THE COURT:**  There may be -- as I have indicated,

13    there may be law enforcement officers who may testify.

14         Would you be able to judge their testimony like you

15    would any other witness?

16         **PROSPECTIVE JUROR NO. 11:**  I come from a long line of

17    law enforcement officers.  So I think I can judge fairly,

18    though.

19         **THE COURT:**  All right.  Well, my question is -- let

20    me see if I can get my exact question.

21         Would you tend to give any more or less weight to

22    their testimony simply because they are law enforcement

23    officers?

24         **PROSPECTIVE JUROR NO. 11:**  No, I don't think so.

25         **THE COURT:**  All right.  So would you be able to judge

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  their testimony based on the same standards of credibility you

2  apply to any other witness?

3           **PROSPECTIVE JUROR NO. 11:**  Yes, sir.

4           **THE COURT:**  All right.

5           So I asked a number of general questions to

6  everybody.  And just to refresh your recollection, I asked

7  about any prior employment by the U.S. Government or any agency

8  of the government, any military employment, any employment by

9  law enforcement.

10           So let me ask:  Would any of you have answered "Yes"

11  to any of those questions?

12           All right.  Mr. Rice?

13           **PROSPECTIVE JUROR NO. 4:**  United States Air Force.

14           **THE COURT:**  When did you serve?

15           **PROSPECTIVE JUROR NO. 4:**  '76 to 1980.

16           **THE COURT:**  You know the Air Force obviously is a

17  branch of the federal government, and the case here is being

18  brought by one of the agencies of the government, the

19  Department of Justice.

20           Would your prior Air Force duty in any way affect

21  your ability to be fair and impartial to Mr. Wiley and to the

22  Government?

23           **PROSPECTIVE JUROR NO. 4:**  No.

24           **THE COURT:**  Would you be able to decide this case

25  based solely on the evidence presented without regard to your

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 124 of 247

1 prior employment by the Air Force?

2 **PROSPECTIVE JUROR NO. 4:** Yes.

3 **THE COURT:** Thank you.

4 Anybody else?

5 Then I asked if you knew any of the lawyers or the

6 potential witnesses, or the Defendant, or any of the alleged

7 coconspirators.

8 Did anybody answer "Yes" to those? Raise your hand.

9 All right. I asked whether anybody heard about this

10 case. If so, please raise your hand if you think you've heard

11 about it.

12 Prior jury service? Any prior jury service? Raise

13 your hand.

14 All right. Mr. Rice, when was that?

15 **PROSPECTIVE JUROR NO. 4:** Oh, gosh, I am going to say

16 eight to ten years ago.

17 **THE COURT:** Okay. Was it civil or criminal?

18 **PROSPECTIVE JUROR NO. 4:** It was criminal and in

19 Forsyth County.

20 **THE COURT:** What was the charge?

21 **PROSPECTIVE JUROR NO. 4:** It was hired for murder --

22 murder for hire, excuse me.

23 **THE COURT:** So listen to my questions carefully, if

24 you would, and just answer what I ask.

25 Without telling me what your verdict was, can you say

1  yes or no, did you reach a verdict?

2          **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

3          **THE COURT:**  Did you happen to serve as the foreman of

4  that jury or not?

5          **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

6          **THE COURT:**  Okay.  Were any firearms involved in that

7  case?

8          **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

9          **THE COURT:**  Okay.  Is there -- well, you said this

10 was how long ago?

11         **PROSPECTIVE JUROR NO. 4:**  I'm going to say eight to

12 ten years, to my recollection.

13         **THE COURT:**  All right.  Is there anything about that

14 case that you think would impair your ability to decide this

15 case fairly and impartially?

16         **PROSPECTIVE JUROR NO. 4:**  No, sir.

17         **THE COURT:**  So would you be able to render a verdict

18 in this case based solely on whatever evidence is presented

19 here in this courtroom and the law as I give it to you without

20 regard to your involvement in that jury service and any matter

21 that may have been involved in that criminal case?

22         **PROSPECTIVE JUROR NO. 4:**  Yes, I can.

23         **THE COURT:**  All right.  Anybody else?

24         I asked whether you had been a victim of a crime or

25 had an immediate member of their family or close friend who was

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  a victim of a crime.  If so, please raise your hand.

2          I asked about whether you belonged to any group that

3  advocates for or against gun ownership or have strong feelings

4  about guns and firearms.  If you do, raise your hand.

5          I indicated that one of the elements of the offense

6  Mr. Wiley is charged with is that he has a previous felony

7  conviction.  And I asked whether that fact, if it's proved,

8  would cause any of you to believe that Mr. Wiley is probably

9  guilty of the crime he's charged with in this case because of

10  that fact.  If you believe that, raise your hand, please.

11          The victims -- I asked questions about the alleged

12  victims which are of Asian descent and asked some questions

13  about whether that would affect your ability to be fair and

14  impartial and, also, whether you are involved in any way in

15  organizations whose purpose is to oppose anti-Asian

16  discrimination or violence or whether you participated in such

17  activities.  If so, please raise your hand.

18          I asked about gangs and that there may be evidence

19  that individuals involved in this case may have been involved

20  in certain street gangs.  And I asked:  If such evidence were

21  presented, would that fact impair your ability to be the type

22  of fair and impartial juror I discussed earlier?  If so, please

23  raise your hand.

24          And I also asked whether you have any close family

25  member or friend who has been a victim of gang crime or

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 witnessed it or whether you or a close family member has been a

2 member of a gang.  If so, please raise your hand.

3         Then I indicated the presumption of innocence that

4 must be applied in this case, the Defendant's right to remain

5 silent, and asked whether you would have any trouble applying

6 those legal principles.  If so, please raise your hand.

7         Then I asked:  If the Government failed to carry its

8 burden, would any of you have any difficulty finding the

9 Defendant not guilty?  If so, please raise your hand.

10        And then the reciprocal of that is, if the Government

11 does carry its burden, would any of you have any difficulty

12 finding the Defendant guilty?  If so, please raise your hand.

13        Then I asked whether you had any involvement in prior

14 legal proceedings as a party or witness.  If so, please raise

15 your hand.

16        Do you know anybody who's been called here as a juror

17 today?  If so, please raise your hand.

18        The parties have estimated five to maybe six or seven

19 days for the trial.  Would that present any special particular

20 problem for you given your situation?  If so, please raise your

21 hand.

22        All right.  Does anybody have any physical disability

23 or hearing problem or vision problem that would make serving

24 difficult?  If so, raise your hand.

25        Mr. Daniels?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 9:**  I have a hard time

2    comprehending on things.

3          **THE COURT:**  What do you mean by that?

4          **PROSPECTIVE JUROR NO. 9:**  By understanding some

5    things that you say.

6          **THE COURT:**  Okay.  Have you been able to understand

7    what I have said so far?

8          **PROSPECTIVE JUROR NO. 9:**  So far I have.

9          **THE COURT:**  Okay.  And do you have that problem

10   outside the courtroom or just in the courtroom?

11         **PROSPECTIVE JUROR NO. 9:**  No, I have it outside too

12   at times, yeah.  Often I'm pretty bad.  I got hurt on a job and

13   got pretty well -- messed up pretty bad, and my head ain't been

14   100 percent right.

15         **THE COURT:**  You can pull your mask down so we can

16   hear you better.

17         Did you have a head injury?

18         **PROSPECTIVE JUROR NO. 9:**  I haven't been right ever

19   since.  It's been, you know, fuzzy.

20         **THE COURT:**  Did you have a head injury?

21         **PROSPECTIVE JUROR NO. 9:**  I had a 150-pound press

22   fall on my chest and separated my sternum.

23         **THE COURT:**  Sorry to hear that.

24         Do you have memory issues?

25         **PROSPECTIVE JUROR NO. 9:**  Not a whole lot.  Sometimes

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  I do.

2          **THE COURT:**  Okay.  Well --

3          **PROSPECTIVE JUROR NO. 9:**  I'm just here trying to do

4  my duty, you know.

5          **THE COURT:**  I understand, and I appreciate that.

6          **PROSPECTIVE JUROR NO. 9:**  I'm being honest.

7          **THE COURT:**  And I appreciate that.  That's exactly

8  what we want.

9          So the job of a juror is to sit and listen to all the

10 evidence, listen to the law as I give it to you, and then

11 deliberate on that when I instruct you to do that.  We'll take

12 breaks throughout the day.  So we won't sit more than an hour

13 and a half at any one period of time before we take about a

14 20-minute break.

15         Do you think you would have any trouble doing that?

16         **PROSPECTIVE JUROR NO. 9:**  I shouldn't have.

17         **THE COURT:**  All right.  Can you tell me the kind of

18 problem that you have when you say you've had this kind of

19 problem?  Can you give me an example?

20         **PROSPECTIVE JUROR NO. 9:**  Sometimes it's like things

21 being done in the electrical field.  They tell me something,

22 you know, and I just -- it just goes in one ear and out the

23 other.  I have a hard time comprehending what they're saying.

24 If I can see it being done, I can go right back and do it; but

25 as far as somebody telling me to do something, I can't

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 130 of 247

1  comprehend that.  If I see you do it, I can go back and do it

2  with no problem at all.

3          **THE COURT:**  Well, some of the evidence that will be

4  presented in this case will come from the witness stand, and it

5  will be witnesses testifying.  It will be important for the

6  jurors to be able to understand that and to remember it.

7          Do you think you'll be able to do that, or is that

8  going to be a problem?

9          **PROSPECTIVE JUROR NO. 9:**  I will try to, try my best.

10         **THE COURT:**  Let me say I appreciate your candor, and

11  I appreciate you're going to try.  I guess my question is:  Do

12  you think you'll be successful doing that, given what you know

13  about your situation, or do you think you have some reason to

14  think you may not be?

15         **PROSPECTIVE JUROR NO. 9:**  I can't say on that part.

16  I don't know.

17         **THE COURT:**  Okay.  Well, are you having some

18  difficulty getting to the point where you can assure the

19  parties that you'll be able to understand and follow all of the

20  evidence?

21         **PROSPECTIVE JUROR NO. 9:**  This is my first time ever

22  doing this.

23         **THE COURT:**  I appreciate that, and I appreciate your

24  candor.

25         **PROSPECTIVE JUROR NO. 9:**  I am so shook up and

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 nervous and everything.

2          **THE COURT:**  That's fine.  I just -- I'm trying to get

3 a sense because you know your situation better than I do.

4          Do you think you're likely --

5          **PROSPECTIVE JUROR NO. 9:**  It comes and goes.

6          **THE COURT:**  Well, when -- how often does it come and

7 go?

8          **PROSPECTIVE JUROR NO. 9:**  Here lately, it's been

9 doing it pretty regularly.

10          **THE COURT:**  What does that mean?  Once a day or once

11 an hour?

12          **PROSPECTIVE JUROR NO. 9:**  During the week, my

13 brothers notice it a lot.

14          **THE COURT:**  Is it possible it can very well happen

15 during this week?

16          **PROSPECTIVE JUROR NO. 9:**  I hope not.

17          **THE COURT:**  I understand.  But is it possible?

18          **PROSPECTIVE JUROR NO. 9:**  I will try my best.

19          **THE COURT:**  Thank you, sir.  Thank you for telling me

20 that.

21          Let's see.  Is there anything about the nature of the

22 case, including the charges against Mr. Wiley, that you think

23 would make it difficult for you to be fair and impartial as

24 I've described it?  If so, this would be the time to tell me.

25          In other words, if there is something that I did not

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  ask about and you think I need to know about because it's

2  weighing on your mind that you think might affect your ability

3  to be fair and impartial, raise your hand and we'll talk about

4  it.

5  All right.  Has anybody formed an opinion about the

6  case in your own mind already, or have you expressed an opinion

7  to anybody about the case?  If so, raise your hand.

8  Okay.  Give me a minute to chat with the lawyers, and

9  then we'll proceed.  So if everybody would just be quiet just

10  for a moment.

11  (The following proceedings were had at the bench by the

12  Court and Counsel out of the hearing of the jury:)

13  **THE COURT:**  Okay.  Let me ask the Government:

14  Mr. Green, any follow-up questions?

15  **MR. GREEN:**  I guess the same one that was the subject

16  of the earlier --

17  **THE COURT:**  You want me to ask Question 4 off the

18  sheet?

19  **MR. GREEN:**  I do.

20  **THE COURT:**  Okay.  Any from the Defendant?

21  **MR. BRYSON:**  We did not get any sheets from these

22  jurors, did we?

23  **THE COURT:**  You only got sheets if they answered

24  "Yes" to those questions.  I believe that's what the clerk

25  says.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1      **MR. BRYSON:**  Did you have any follow-up questions?

2      **MR. FOSTER:**  So why are we going to ask the questions

3  if they said "No"?  I'm not following.

4      **THE COURT:**  Do you want to respond to that?

5      **MR. GREEN:**  They didn't answer "Yes," I should say,

6  on the question.  So if we had the sheet, they would have

7  answered "Yes."  But, nevertheless, I would like the Court to

8  ask.

9      **THE COURT:**  I believe that's the situation; is that

10  right?

11      Do you have the other juror sheets?

12      **DEPUTY COURTROOM CLERK:**  I don't have the other ones.

13      **THE COURT:**  We don't have them handy.  My

14  understanding is that any time that they would have answered

15  "Yes" to any prior involvement on Question No. 4, that those

16  sheets would have been provided to the parties.

17      **MR. GREEN:**  They were.

18      **THE COURT:**  That's the standard from the clerk's

19  office.

20      **MR. GREEN:**  That's right.  And there were none in

21  this group.

22      **THE COURT:**  There were none provided in this group?

23      **MR. GREEN:**  That's correct.

24      **THE COURT:**  But you want me to ask the question of

25  the group?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **MR. GREEN:**  Yes.

2          **THE COURT:**  Okay.  All right.

3          Anything you want me to ask?

4          **MR. BRYSON:**  I did want the Court to know -- the

5   answer is, no, we don't have anything.

6          I did want the Court to know that I think the parties

7   are prepared to stipulate or agree to cause for Daniels.

8          **THE COURT:**  Mr. Daniels.  Okay.

9          **MR. GREEN:**  Yes.

10          **THE COURT:**  We'll strike him for cause then.

11          Okay.  Don't go away.  Let me ask the question and

12   then see if you have any other follow-ups.  Hopefully, I'll ask

13   it the correct way this time.  If I don't, make sure you ask me

14   to ask it in the exact way you want it asked.

15          **MR. GREEN:**  I will.  Thank you, Your Honor.

16      (End of bench conference.)

17          **THE COURT:**  All right.  One other question:  Have you

18   or any of your family members ever been a plaintiff or

19   defendant in a court case:  Criminal, civil, or domestic?  If

20   so, raise your hand.

21          Mr. Christian, what kind of case?

22          **PROSPECTIVE JUROR NO. 5:**  I believe it was a civil

23   case.  My mom, she went to court there, and she was a juror.

24          **THE COURT:**  She was a what?

25          **PROSPECTIVE JUROR NO. 5:**  She was part of the jury.

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 135 of 247

1          THE COURT:  I'm not asking about jury service.  I'm

2  asking about whether you or any family member has been a

3  plaintiff or a defendant, that is, a party, to the case?

4          PROSPECTIVE JUROR NO. 5:  No, sir.

5          THE COURT:  Okay.  Anybody else?

6          All right.  Give me just a minute.

7      (The following proceedings were had at the bench by the

8      Court and Counsel out of the hearing of the jury:)

9          MR. GREEN:  No follow-up.

10          THE COURT:  Any follow-up from the Defendant?

11          MR. BRYSON:  No.

12          THE COURT:  Okay.  All right.  So Mr. Daniels will be

13  struck for cause, and you can exercise your remaining

14  peremptories, please.

15      (End of bench conference.)

16      (Pause in the proceedings.)

17          DEPUTY COURTROOM CLERK:  Your Honor, the following

18  jurors have been selected:  Tina Spach, Henry Christian,

19  Jonathan Clegg.

20          THE COURT:  All right.  So those individuals will be

21  chosen as jurors:  Ms. Spach, Mr. Christian, and Mr. Clegg.

22  You will be selected as jurors for tomorrow.  So, if you would,

23  return at 8:45 in the morning to Courtroom No. 3 across the

24  hall, and you will be checked in there.  We're using that as

25  the jury room for purposes of these proceedings.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          And you will need to remember all my admonitions to

2   you about not doing any research, don't discuss the case, don't

3   try to learn anything about the case.  Everything you will

4   learn and need to learn and should learn about the case will be

5   presented here in this courtroom once I rule on the

6   admissibility of all the evidence.

7          So, in the meantime, go home, be prepared to come

8   back tomorrow ready to work, and don't discuss this matter with

9   anybody else.  When it's over with, you'll be free to talk to

10  whoever you choose.  For the time being, you'll need to just

11  tell folks you're not permitted to discuss it and don't listen

12  to anything they say.

13         So remember all of my admonitions to you.  As I said,

14  I'll probably ask you in the morning whether you've done any

15  research or learned anything, whether directly on

16  inadvertently.  So be prepared for that.

17         If your name was not selected as a juror and you're

18  in the jury area, you are free to leave, and you leave with our

19  thanks for being here today.  You'll need to call back after

20  5:00 on Sunday to see whether you are needed for some other

21  matter.

22         So you all are free to leave, and we'll look forward

23  to seeing the three of you tomorrow.  And, again, thanks to the

24  rest of you for doing your duty and being here today.

25         (Selected and excused jurors departed the courtroom at

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1      3:03 p.m.)

2              **THE COURT:**  Please call four more jurors.

3              **DEPUTY COURTROOM CLERK:**  Karen Smith, if you will

4   please take Seat No. 2.

5              Maxwell Kiser, if will you please take Seat No. 4 on

6   the back row.

7              Courtney Alderman, if will you please take Seat No. 9

8   here in the front.

9              And, John Roberts, if will you please take Seat No.

10  11.

11             **THE COURT:**  All right.  So my questions are to the

12  four of you all.  Let me start with just the background

13  questions, and I will start with Ms. Smith.

14             What county do you live in, ma'am?

15             **PROSPECTIVE JUROR NO. 2:**  Randolph.

16             **THE COURT:**  For how long.

17             **PROSPECTIVE JUROR NO. 2:**  Fifty-eight years.

18             **THE COURT:**  And how far did you attend in school?

19             **PROSPECTIVE JUROR NO. 2:**  I had one year of transfer

20  courses at a community college.

21             **THE COURT:**  All right.  Are you working at this time?

22             **PROSPECTIVE JUROR NO. 2:**  Childcare provider for my

23  two grandchildren.

24             **THE COURT:**  Are you married, or have a significant

25  other?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1              **PROSPECTIVE JUROR NO. 2:**  Married.

2              **THE COURT:**  What does your spouse do?

3              **PROSPECTIVE JUROR NO. 2:**  He's self-employed.  He has

4   a rural garbage service.

5              **THE COURT:**  Do you have adult children?

6              **PROSPECTIVE JUROR NO. 2:**  Yes, two.

7              **THE COURT:**  What do they do?

8              **PROSPECTIVE JUROR NO. 2:**  One is an EC teacher

9   assistant for Randolph County schools, and my son is an

10  automotive technician.

11             **THE COURT:**  Thank you.

12             Mr. Kiser, what county do you live in, sir?

13             **PROSPECTIVE JUROR NO. 4:**  Moore County.

14             **THE COURT:**  How long?

15             **PROSPECTIVE JUROR NO. 4:**  Thirty-nine years.

16             **THE COURT:**  How far did you attend in school?

17             **PROSPECTIVE JUROR NO. 4:**  Eleven and a half years.

18             **THE COURT:**  Are you working currently, and, if so,

19  what do you do?

20             **PROSPECTIVE JUROR NO. 4:**  Commercial food delivery.

21             **THE COURT:**  Are you married or have a significant

22  other?

23             **PROSPECTIVE JUROR NO. 4:**  Married.

24             **THE COURT:**  What does your spouse do?

25             **PROSPECTIVE JUROR NO. 4:**  She works at a bank.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  All right.  What does she do at the bank?

2          **PROSPECTIVE JUROR NO. 4:**  Teller.

3          **THE COURT:**  Okay.  Has she ever been the subject of

4   any kind of robbery?

5          **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

6          **THE COURT:**  When was that?

7          **PROSPECTIVE JUROR NO. 4:**  It was about four years

8   ago.  She was working at the bank.  A guy come in with a gun,

9   put it to her face.  The woman next to her pushed the silent

10  alarm.  The guy heard sirens, and he took off before the cops

11  got there, but he was later apprehended.

12         **THE COURT:**  Was she involved working with law

13  enforcement?

14         **PROSPECTIVE JUROR NO. 4:**  She was questioned.

15         **THE COURT:**  Do you know what agency that was?

16         **PROSPECTIVE JUROR NO. 4:**  Southern Pines Police

17  Department.

18         **THE COURT:**  How long ago was this?

19         **PROSPECTIVE JUROR NO. 4:**  Four or five years ago.  I

20  don't remember.

21         **THE COURT:**  So this case involves allegations of a

22  robbery.  Do you believe that your wife's involvement as a

23  teller in the robbery you've described would impair your

24  ability to hear the evidence in this case fairly?

25         **PROSPECTIVE JUROR NO. 4:**  Well, when your wife has a

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 140 of 247

1  gun to her head, I mean, that changes the aspect of something

2  like that, so yes.

3          **THE COURT:**  You think it would impair your ability?

4          **PROSPECTIVE JUROR NO. 4:**  Yes.

5          **THE COURT:**  All right.  I'm sorry?

6          **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

7          **THE COURT:**  Would you be able to decide this case

8  just based solely on the evidence and putting out of your mind

9  what happened with your wife or not?

10          **PROSPECTIVE JUROR NO. 4:**  I mean, I'm pretty sure I

11  could.

12          **THE COURT:**  Well, I mean, there's no doubt that the

13  robbery had an impact on you and your wife.

14          The question is -- the parties here are entitled to

15  have a fair and impartial jury.

16          **JUROR:**  Yes, sir, I understand.

17          **THE COURT:**  And they are entitled to have jurors who,

18  if they have had something in their life happen, can put that

19  aside and not let that affect their decision in the case one

20  way or the other so that they can be fair and impartial to the

21  Defendant and to the Government in this case.

22          **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

23          **THE COURT:**  So do you think you could set aside your

24  wife's situation and render a verdict that's based just on the

25  evidence that's presented and the law as I give it to you

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  without being influenced one way or the other by your wife's

2  situation or not?

3         **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

4         **THE COURT:**  Pardon me?

5         **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

6         **THE COURT:**  Okay.  Do you think that will be

7  difficult to do or not?

8         **PROSPECTIVE JUROR NO. 4:**  I'll get by.

9         **THE COURT:**  Well, do you believe you'll be able to do

10  that?

11         **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

12         **THE COURT:**  Okay.

13         Do you have adult children?

14         **PROSPECTIVE JUROR NO. 4:**  No, sir.  I have an

15  8-year-old girl.

16         **THE COURT:**  Thank you.

17         So then, Ms. Alderman, where do you live?

18         **PROSPECTIVE JUROR NO. 9:**  Rowan County.

19         **THE COURT:**  For how long?

20         **PROSPECTIVE JUROR NO. 9:**  My whole life.

21         **THE COURT:**  And how far did you attend in school?

22         **PROSPECTIVE JUROR NO. 9:**  I have a bachelor's degree

23  in business administration.

24         **THE COURT:**  What do you do for a living?  Are you

25  working?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

**PROSPECTIVE JUROR NO. 9:**  I am an account manager for United Natural Foods.  They are based out of Providence, Rhode Island.

**THE COURT:**  Out of where?

**PROSPECTIVE JUROR NO. 9:**  They are based out of Providence, Rhode Island, and I work from home.

**THE COURT:**  All right.  Do you have a significant other?

**PROSPECTIVE JUROR NO. 9:**  I do.

**THE COURT:**  And what does that person do?

**PROSPECTIVE JUROR NO. 9:**  He is a supervisor for Broad Links, which is -- they subcontract out for cable companies.

**THE COURT:**  All right.  Do you have any adult children?

**PROSPECTIVE JUROR NO. 9:**  No.

**THE COURT:**  All right.  Thank you.

And, Mr. Roberts --

**PROSPECTIVE JUROR NO. 11:**  Yes, sir.

**THE COURT:**  -- what county do you live in?

**PROSPECTIVE JUROR NO. 11:**  Montgomery County.

**THE COURT:**  For how long?

**PROSPECTIVE JUROR NO. 11:**  About 14, 15 years.

**THE COURT:**  How far did you attend in school?

**PROSPECTIVE JUROR NO. 11:**  I got my GED in Vietnam.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

**THE COURT:**  Are you working currently?

**PROSPECTIVE JUROR NO. 11:**  I'm medically retired.

**THE COURT:**  What did you do when you were working?

**PROSPECTIVE JUROR NO. 11:**  HVAC, sheet metal, commercial.

**THE COURT:**  And you say you're medically retired.

**PROSPECTIVE JUROR NO. 11:**  I had open-heart surgery. They had to replace a valve and do a bypass and I have degenerative -- some congestive heart failure where they had to put tubes in my chest to drain -- put tubes around my lungs to drain that.

**THE COURT:**  How long ago was that, sir?

**PROSPECTIVE JUROR NO. 11:**  Four years ago.

**THE COURT:**  All right.  Do you believe you'll be able to sit as a juror if you were selected in this case?

**PROSPECTIVE JUROR NO. 11:**  As long as I don't drift off.  I tend to drift off every once in a while.

**THE COURT:**  Do you have trouble staying awake?

**PROSPECTIVE JUROR NO. 11:**  Well, I'm on temazepam, 20 mg.

**THE COURT:**  What does that mean?

**PROSPECTIVE JUROR NO. 11:**  I need that so I can sleep at night.  During the daytime, I tend to drift off and go off into a haze.  I can tell you what I did 40 years ago, but I can't tell you what I did this morning.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  I appreciate that.  Well, obviously, as a

2    juror, we need somebody who can sit and listen and hear all the

3    evidence and concentrate on all of it, not just parts of it,

4    and who will be able to remember that when it comes to time to

5    deliberate.

6          And you know your situation better than the rest of

7    us.  Do you think your medical condition is such that that

8    would make that difficult?

9          **PROSPECTIVE JUROR NO. 11:**  You would have to talk to

10   my psychiatrist, sir.

11         **THE COURT:**  Well, what's your sense of it?

12         **PROSPECTIVE JUROR NO. 11:**  I know I can't remember

13   good.  I can't even -- you know the ticker tapes going across

14   the bottom of the TV screens?

15         **THE COURT:**  Right.

16         **PROSPECTIVE JUROR NO. 11:**  I'll be watching it and

17   it'll go to a commercial, and I will have forgotten what was on

18   the ticker tape.

19         **THE COURT:**  So you have a short-term memory issue?

20         **PROSPECTIVE JUROR NO. 11:**  I couldn't tell what I did

21   do today, but I can tell what I did -- I remember reading

22   *Shogun* back in 1978.

23         **THE COURT:**  All right.  Thank you, sir.

24         **PROSPECTIVE JUROR NO. 11:**  I just can't remember

25   today.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

 1          THE COURT:  Thank you.  I appreciate you being honest

 2  with us.

 3          I asked a number of questions, and I repeated them

 4  all just a moment ago after lunch.  Would any of you have

 5  answered "Yes" to any of those?  And if you would, raise your

 6  hand, and then I'll call on you and we'll talk about them.  But

 7  would you have answered "Yes," whether it's prior jury service

 8  or ability to follow the Court's instructions or the

 9  presumptions in the case?  Any of the questions, any single

10  one, if you would have answered "Yes," raise your hand.

11          Mr. Roberts, what was yours?

12          PROSPECTIVE JUROR NO. 11:  I was a defendant in a

13  criminal DWI.

14          THE COURT:  So you were a defendant?

15          PROSPECTIVE JUROR NO. 11:  Yes, sir.

16          THE COURT:  How long ago?

17          PROSPECTIVE JUROR NO. 11:  2004.

18          THE COURT:  Okay.  All right.  Thank you, sir.

19          All right.  Let me ask the lawyers to step up here.

20  Give me just a minute.

21      (The following proceedings were had at the bench by the

22      Court and Counsel out of the hearing of the jury:)

23          THE COURT:  Okay.  I did not ask any more of

24  Mr. Roberts because I presume maybe you might agree as to

25  cause.  Is that true?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

```
1              MR. GREEN:  Yes, Your Honor.

2              MR. BRYSON:  Yes.

3              THE COURT:  Okay.  So we'll strike Mr. Roberts for

4    cause.

5              Any other follow-ups?

6              MR. GREEN:  No other follow-ups.

7              MR. FOSTER:  I think -- never mind.  No.

8              THE COURT:  Okay.  You can exercise your strikes.

9              MR. BRYSON:  I would at least like to put on the

10   record a challenge for cause to No. 4, Mr. Kiser.  At one point

11   he clearly said that his ability to be fair and impartial was

12   impaired.

13             THE COURT:  Okay.  Do you want to respond to that?

14             MR. GREEN:  He did say that.  So in the interest of

15   fairness -- he got back around to saying the words, but I share

16   the concern that earlier he may have just been parroting back

17   to the Court --

18             THE COURT:  Are you in agreement with the challenge?

19             MR. GREEN:  I am.

20             THE COURT:  Okay.  If the parties are in agreement,

21   then I will strike him.  I think he did rehabilitate himself to

22   some extent; but if you're in agreement, I will strike him for

23   cause.

24             Okay.  You can exercise your strikes as to the

25   remainder.
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1     (End of bench conference.)

2     (Pause in the proceedings.)

3         **DEPUTY COURTROOM CLERK:**  Your Honor, Karen Smith and

4   Courtney Alderman have been selected as jurors.

5         **THE COURT:**  All right.  So Ms. Smith and

6   Ms. Alderman, you'll be added to the jury, so we'll need to see

7   you tomorrow at 8:45 a.m. across the hall in Courtroom No. 3,

8   our socially distanced jury room.

9         Remember all my admonitions.  Don't do any research.

10  Don't discuss the case, whether you're tempted to or not.

11  Just -- it's an easy discipline.  Just say, I can't talk about

12  it.  Don't try to read about it, whether there is any press or

13  not.  Like I said, I'll ask tomorrow about that.  So just put

14  yourself in a good position where you can go home and relax,

15  and then we'll see you tomorrow ready to go.  Follow all my

16  admonitions I gave you about conduct as a juror.

17        And for the other two, thank you for your service.

18  I'm sorry it's taken this long to get to this point for you

19  all, but the good news is, for all four of you, we have now

20  made a decision, and you are all free to go this afternoon, and

21  we'll see the two of you tomorrow.  You are free to go with our

22  thanks.

23        For the two that are not chosen, call back Sunday at

24  5:00.

25        (Selected and excused jurors departed the courtroom at

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1      3:21 p.m.)

2              **THE COURT:**  All right.  Please call two more.

3              **DEPUTY COURTROOM CLERK:**  Laurie White, if will you

4  please have a seat in Seat No. 4 on the back row.

5              David Saunders, you're No. 11 right there.

6              **THE COURT:**  All right.  So let me get a little

7  background first, starting with Ms. White.

8              What county do you live in?

9              **PROSPECTIVE JUROR NO. 4:**  Forsyth County.

10             **THE COURT:**  For how long?

11             **PROSPECTIVE JUROR NO. 4:**  Eleven years.

12             **THE COURT:**  And how far did you attend in school?

13             **PROSPECTIVE JUROR NO. 4:**  Doctorate in nursing

14  practice.

15             **THE COURT:**  And are you working, and what do you do?

16             **PROSPECTIVE JUROR NO. 4:**  Yes.  I work for Novant

17  Health, and I'm the director for patient education, endoscopy

18  and diabetes services.

19             **THE COURT:**  Are you married, or do you have a

20  significant other?

21             **PROSPECTIVE JUROR NO. 4:**  Yes, I'm married.

22             **THE COURT:**  What does your spouse do?

23             **PROSPECTIVE JUROR NO. 4:**  He is in pharmaceutical

24  sales.

25             **THE COURT:**  Do you have adult children?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 4:**  I do.  I have two.

2          **THE COURT:**  What do they do?

3          **PROSPECTIVE JUROR NO. 4:**  One is a senior at UNC

4    Charlotte, and the other is an art student at Virginia

5    Commonwealth.

6          **THE COURT:**  All right.  Mr. Saunders, what county do

7    you live in?

8          **PROSPECTIVE JUROR NO. 11:**  Forsyth County.

9          **THE COURT:**  How long have you lived there, sir?

10          **PROSPECTIVE JUROR NO. 11:**  Came back in '09.

11          **THE COURT:**  Where had you been?

12          **PROSPECTIVE JUROR NO. 11:**  I just went to the

13    mountains in Boone.

14          **THE COURT:**  Okay.  How far did you attend in school?

15          **PROSPECTIVE JUROR NO. 11:**  Two years at Appalachian.

16          **THE COURT:**  What were you studying?

17          **PROSPECTIVE JUROR NO. 11:**  Arts.

18          **THE COURT:**  Are you working currently?

19          **PROSPECTIVE JUROR NO. 11:**  Yes, sir.

20          **THE COURT:**  What do you do, sir?

21          **PROSPECTIVE JUROR NO. 11:**  Maintenance technician.

22          **THE COURT:**  Do you have a significant other or a

23    spouse?

24          **PROSPECTIVE JUROR NO. 11:**  Yes, sir.

25          **THE COURT:**  What does that person do?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1         **PROSPECTIVE JUROR NO. 11:**  She's in customer service.

2         **THE COURT:**  All right.  In what kind of industry?

3         **THE COURT REPORTER:**  I'm sorry?

4         **THE COURT:**  You need to speak up real loud so all

5    these people over here can hear you.

6         **PROSPECTIVE JUROR NO. 11:**  She's customer service for

7    Blue Rhino.

8         **THE COURT:**  All right.  Do you have adult children?

9         **PROSPECTIVE JUROR NO. 11:**  Yeah.  Do you consider 18

10   to be an adult?

11        **THE COURT:**  Yes.

12        **PROSPECTIVE JUROR NO. 11:**  So I have two that

13   graduated from high school and two girls in college and one

14   older son in the military.

15        **THE COURT:**  All right.  And for the one in the

16   military, what branch is he in?

17        **PROSPECTIVE JUROR NO. 11:**  Navy.

18        **THE COURT:**  What does he do?

19        **PROSPECTIVE JUROR NO. 11:**  He's a SEAL.

20        **THE COURT:**  And for the other ones, are any of them

21   working?

22        **PROSPECTIVE JUROR NO. 11:**  College jobs.

23        **THE COURT:**  Okay.  What kind of jobs are those?

24        **PROSPECTIVE JUROR NO. 11:**  The one at Appalachian,

25   she's in, I guess, daycare.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  All right.

2          **PROSPECTIVE JUROR NO. 11:**  That's the field she wants

3 to go into.

4          And my daughter is in -- is getting ready to graduate

5 and working at, like, Bojangles.

6          **THE COURT:**  Do you know whether she's ever been the

7 victim of a robbery attempt?

8          **PROSPECTIVE JUROR NO. 11:**  I think Raina (phonetic)

9 has when she used to work at Marco's Pizza.

10          **THE COURT:**  That's one of your daughters?

11          **PROSPECTIVE JUROR NO. 11:**  Yes, sir.

12          **THE COURT:**  Was she personally subject to the robbery

13 attempt?

14          **PROSPECTIVE JUROR NO. 11:**  She was there, but I think

15 she was in the back.

16          **THE COURT:**  How long ago would that have been?

17          **PROSPECTIVE JUROR NO. 11:**  Maybe three years.

18          **THE COURT:**  Do you know whether a firearm was

19 involved?

20          **PROSPECTIVE JUROR NO. 11:**  I can't remember.

21          **THE COURT:**  All right.  Do you know whether they

22 caught the individual or individuals involved?

23          **PROSPECTIVE JUROR NO. 11:**  No, I don't think they

24 did.

25          **THE COURT:**  Is there anything about your daughter's

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 involvement in that robbery that you think would impair your

2 ability to be fair and impartial in this case?

3          **PROSPECTIVE JUROR NO. 11:**  No, sir.

4          **THE COURT:**  All right.  Will you able to decide this

5 case based solely on the evidence presented and the law as I

6 give it to you without regard to your situation with your

7 daughter?

8          **PROSPECTIVE JUROR NO. 11:**  Yes, sir.

9          **THE COURT:**  In doing that, do you think you can be

10 fair and impartial?

11          **PROSPECTIVE JUROR NO. 11:**  Yes, sir.

12          **THE COURT:**  All right.  And your son who is in -- you

13 said he's a Navy SEAL?

14          **PROSPECTIVE JUROR NO. 11:**  Yes, sir.

15          **THE COURT:**  The Navy, obviously, is a branch of the

16 federal government which is also bringing this case, the U.S.

17 Department of Justice.

18          Would your son's employment as a Navy SEAL in any way

19 affect your ability to be fair and impartial in this case?

20          **PROSPECTIVE JUROR NO. 11:**  No, sir.

21          **THE COURT:**  Will you be able to put your son's

22 employment aside and decide this case based solely on the

23 evidence and the law without regard to the fact that your son

24 is a SEAL in the government?

25          **PROSPECTIVE JUROR NO. 11:**  Yes, sir.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  Thank you.

2          All right.  Now, I asked a lot of questions, and,

3   hopefully, you all kept track of those.

4          Would you have answered "Yes" to any of the various

5   questions I asked?  If so, please raise your hand.

6          Ms. White?

7          **PROSPECTIVE JUROR NO. 4:**  No, sir.

8          **THE COURT:**  No?

9          **PROSPECTIVE JUROR NO. 4:**  No.

10         **THE COURT:**  All right.  And, Mr. Saunders?

11         **PROSPECTIVE JUROR NO. 11:**  Yes.

12         **THE COURT:**  What would you have answered "Yes" to?

13         **PROSPECTIVE JUROR NO. 11:**  I was a defendant in a

14  case back in -- I was, like, 19 years old.

15         **THE COURT:**  All right.  What kind of case was it?

16         **PROSPECTIVE JUROR NO. 11:**  I guess criminal.

17         **THE COURT:**  Okay.  What were you accused of?

18         **PROSPECTIVE JUROR NO. 11:**  Felonious robbery,

19  assault, and breaking and entering.

20         **THE COURT:**  Okay.  And what happened in that case?

21  What happened to the actual case?

22         **PROSPECTIVE JUROR NO. 11:**  I took a plea deal of

23  misdemeanors.

24         **THE COURT:**  Okay.  Was a firearm involved?

25         **PROSPECTIVE JUROR NO. 11:**  No, sir.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

**THE COURT:**  Okay.  What kind of robbery was it allegedly?  Was it an individual or a business or what?

**PROSPECTIVE JUROR NO. 11:**  It was an individual.  Allegedly he stole my friend's dog.  We went to go get it.  So we went down to get the dog back, and he said that we assaulted him, took money from him, and me going into his house was the breaking and entering part.

**THE COURT:**  Whose dog was it?

**PROSPECTIVE JUROR NO. 11:**  It was my friend's dog.

**THE COURT:**  Okay.  So you went to go get it back?

**PROSPECTIVE JUROR NO. 11:**  Yes, sir.

**THE COURT:**  Okay.  Where was that prosecuted?

**PROSPECTIVE JUROR NO. 11:**  Greenville, South Carolina.

**THE COURT:**  And how many years ago was that?

**PROSPECTIVE JUROR NO. 11:**  Maybe '94, '95, something like that.

**THE COURT:**  All right.  Did you ever have to -- well, what was your punishment for that?

**PROSPECTIVE JUROR NO. 11:**  I was locked up for probably, like, eight months.  They just gave me time served, I guess, when I took the misdemeanor.

**THE COURT:**  All right.  Were you involved in any other matter as a party, whether it's civil or criminal?

**PROSPECTIVE JUROR NO. 11:**  No, sir.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1        **THE COURT:** Okay. So this case involves allegations

2   of a robbery. Would your prior situation that you've described

3   to us involving a robbery -- would that color your opinion here

4   in any way that would make it difficult for you to be fair and

5   impartial to Mr. Wiley as well as to the Government right here?

6        **PROSPECTIVE JUROR NO. 11:** No, sir.

7        **THE COURT:** Will you be able to decide this case

8   based solely on the law and the evidence you hear in this

9   courtroom without regard to your own personal history in the

10  case you've described for us?

11       **PROSPECTIVE JUROR NO. 11:** Yes, sir.

12       **THE COURT:** In doing that, do you think you can

13  render a verdict that's fair and impartial to the Government

14  and to Mr. Wiley?

15       **PROSPECTIVE JUROR NO. 11:** Yes, sir.

16       **THE COURT:** All right. Anything else you would have

17  answered "Yes" to, sir?

18       **PROSPECTIVE JUROR NO. 11:** No, sir.

19       **THE COURT:** All right. All right. Let me ask the

20  parties to step up here, the lawyers, just for a minute.

21       (The following proceedings were had at the bench by the

22       Court and Counsel out of the hearing of the jury:)

23       **THE COURT:** All right. Any follow-up questions from

24  the Government, Mr. Green?

25       **MR. GREEN:** No.

US v. Wiley -- Trial/Jury Selection -- 4/19/21

1          **THE COURT:**  From the Defendant?

2          **MR. BRYSON:**  No.

3          **THE COURT:**  All right.  Any challenges for cause?

4   Mr. Green?

5          **MR. GREEN:**  Not for cause.

6          **THE COURT:**  Defendant?

7          **MR. BRYSON:**  No, Your Honor.

8          **THE COURT:**  All right.  You can exercise your

9   peremptories.

10       (End of bench conference.)

11       (Pause in the proceedings.)

12          **DEPUTY COURTROOM CLERK:**  Your Honor, David Saunders

13  was selected as a juror.

14          **THE COURT:**  All right.  Mr. Saunders, you have been

15  selected for the jury.  And, Ms. White, you are excused.

16       So remember all my admonitions:  Not to discuss the

17  case; don't do any research.  Everything you will need to learn

18  about the case is going to come within the four walls of this

19  courtroom.  Simply go home and be ready to be back tomorrow

20  morning at 8:45 across the hall in Courtroom 3.

21       Ms. White, you leave with everyone's thanks for your

22  service here today.  Call back after 5:00 on Sunday to see

23  whether your service is needed for any other matter.

24       You both are free to go.

25       (Selected and excused jurors departed the courtroom at

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1      3:33 p.m.)

2              **THE COURT:**  All right.  If you will call one more

3  juror.

4              **DEPUTY COURTROOM CLERK:**  Michael Boston, if will you

5  please have a seat in the second row in Seat No. 4.

6              **THE COURT:**  All the way to the end here.  Thank you.

7              All right.  What county do you live in, sir?

8              **PROSPECTIVE JUROR NO. 4:**  Guilford.

9              **THE COURT:**  For how long?

10             **PROSPECTIVE JUROR NO. 4:**  Over 40 years.

11             **THE COURT:**  And what is your education level?

12             **PROSPECTIVE JUROR NO. 4:**  High school.

13             **THE COURT:**  All right.  Are you working?

14             **PROSPECTIVE JUROR NO. 4:**  I'm semiretired.

15             **THE COURT:**  All right.  What do you do semi, and what

16  did you do before?

17             **PROSPECTIVE JUROR NO. 4:**  I'm a business investor,

18  primarily funeral homes, crematories, nightclubs, restaurants.

19             **THE COURT:**  And you say you're semiretired.  What do

20  you do now?

21             **PROSPECTIVE JUROR NO. 4:**  Well, I still oversee the

22  main operation.  It's a family business.  And when we get to my

23  adult children --

24             **THE COURT:**  Are they involved?

25             **PROSPECTIVE JUROR NO. 4:**  They are hands on.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:** All right. Are you married?

2          **PROSPECTIVE JUROR NO. 4:** I am.

3          **THE COURT:** What does your spouse do?

4          **PROSPECTIVE JUROR NO. 4:** She is a mortgage insurance

5    investigator.

6          **THE COURT:** All right. And your adult children, you

7    said they are involved, some of them, in the business. What do

8    they do?

9          **PROSPECTIVE JUROR NO. 4:** They run the funeral homes

10   and, of course, oversee the restaurants.

11         **THE COURT:** How many children do you have?

12         **PROSPECTIVE JUROR NO. 4:** I have three adult

13   children.

14         **THE COURT:** Are they all involved in the family

15   business?

16         **PROSPECTIVE JUROR NO. 4:** Yes.

17         **THE COURT:** Have any of them ever been involved in

18   any robbery attempt at any of the businesses?

19         **PROSPECTIVE JUROR NO. 4:** Not robberies. One of my

20   restaurants in Greensboro has been burglarized quite a few

21   times.

22         **THE COURT:** What kind of restaurant is it?

23         **PROSPECTIVE JUROR NO. 4:** It is a jazz club and

24   restaurant.

25         **THE COURT:** So when you say "burglarized," what do

1  you mean by that?

2          **PROSPECTIVE JUROR NO. 4:**  Broken into while closed.

3          **THE COURT:**  When it was closed?

4          **PROSPECTIVE JUROR NO. 4:**  Yes.

5          **THE COURT:**  Do you know whether any firearms were

6  involved in that?

7          **PROSPECTIVE JUROR NO. 4:**  No.

8          **THE COURT:**  Well, this case involves allegations of a

9  robbery.  Would the fact that your businesses have been broken

10 into before -- would that impair your ability to sit in this

11 case and be fair and impartial?

12         **PROSPECTIVE JUROR NO. 4:**  Honestly, I would have to

13 say so.

14         **THE COURT:**  Why is that?

15         **PROSPECTIVE JUROR NO. 4:**  Well, I was -- one of my --

16 Boston's House of Jazz, which is the primary restaurant in

17 Greensboro, have been burglarized six times in eight days.  And

18 once during the pandemic when we were closed -- when the

19 government closed all the bars and restaurants, it was actually

20 broken in during that time.

21         **THE COURT:**  All right.  Do you think you could set

22 aside your thoughts about your businesses and the burglaries

23 and render a verdict based just on the evidence here and the

24 law as I give it to you or not?

25         **PROSPECTIVE JUROR NO. 4:**  Honestly, as hard as it's

Case 1:19-cr-00529-TDS  Document 359  Filed 02/04/22  Page 160 of 247

been for the restaurants during the pandemic, it's so near and
dear to me, honestly, I don't think I could be fair.

**THE COURT:** Would you have answered "Yes" to any of
my other questions?

**PROSPECTIVE JUROR NO. 4:** No.

**THE COURT:** Let me talk with the lawyers just
briefly. Bear with me.

(The following proceedings were had at the bench by the
Court and Counsel out of the hearing of the jury:)

**THE COURT:** All right. Any further questions, or do
you want to be heard?

**MR. GREEN:** No, Your Honor.

**MR. BRYSON:** No.

**THE COURT:** All right. Any challenges?

**MR. GREEN:** No.

**MR. BRYSON:** No.

**MR. GREEN:** Can we challenge him for cause, I assume?

**THE COURT:** Yes. You said there are no follow-ups.
I'm asking whether there are any challenges.

**MR. BRYSON:** Wait just a second.

(Defendant's attorneys conferred.)

**MR. BRYSON:** Yes, we will challenge for cause.

**THE COURT:** Okay. What is your challenge?

**MR. BRYSON:** He clearly articulated that he could not
be fair.

US v. Wiley -- Trial/Jury Selection -- 4/19/21

1          THE COURT:  Okay.  All right.  He appears to be

2   African-American.  You accept that fact too?

3          MR. BRYSON:  Yes, Your Honor.

4          THE COURT:  Do you want to be heard?

5          MR. GREEN:  No, Your Honor.

6          THE COURT:  Okay.  Do you oppose the motion?

7          MR. GREEN:  I do not.

8          THE COURT:  I'll accept the challenge.  He did say he

9   would have difficulty being fair, so he'll be struck for cause.

10          We'll call another.

11       (End of bench conference.)

12          DEPUTY COURTROOM CLERK:  Mr. Boston, you are

13   dismissed, and you will call back Sunday at 5:00.

14          THE COURT:  Thank you, sir.  Watch your step, please.

15       (Excused juror departed the courtroom at 3:39 p.m.)

16          THE COURT:  Please call another juror.

17          We'll take a break in a minute, ladies and gentlemen,

18   but -- actually, gentlemen, I guess.  We're getting close, so

19   if you'll bear with me.  Unless you need to take an immediate

20   break, let's see how we do.

21          DEPUTY COURTROOM CLERK:  Stanley Carlton, if will you

22   please have a seat back there in No. 4.

23          THE COURT:  Mr. Carlton, good afternoon.

24          Where do you live?  What county are you in, sir?

25          PROSPECTIVE JUROR NO. 4:  Cabarrus.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  For how long, sir?

2          **PROSPECTIVE JUROR NO. 4:**  Forty years.

3          **THE COURT:**  And how far did you attend in school?

4          **PROSPECTIVE JUROR NO. 4:**  Twelfth grade.

5          **THE COURT:**  And are you working?

6          **PROSPECTIVE JUROR NO. 4:**  Retired.

7          **THE COURT:**  What did you do in your work life?

8          **PROSPECTIVE JUROR NO. 4:**  Construction company,

9   grading company.

10         **THE COURT:**  All right.  Are you married, or do you

11  have a significant other?

12         **PROSPECTIVE JUROR NO. 4:**  Yes.

13         **THE COURT:**  And what does that person do?

14         **PROSPECTIVE JUROR NO. 4:**  She's retired.

15         **THE COURT:**  What did she do when she was working?

16         **PROSPECTIVE JUROR NO. 4:**  She was a bookkeeper,

17  managed our office.

18         **THE COURT:**  All right.  Were you running your own

19  business?

20         **PROSPECTIVE JUROR NO. 4:**  Yeah.

21         **THE COURT:**  All right.  Did you ever have anybody

22  attempt to rob your business?

23         **PROSPECTIVE JUROR NO. 4:**  No.

24         **THE COURT:**  All right.  Do you have adult children?

25         **PROSPECTIVE JUROR NO. 4:**  Yes.

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 163 of 247

1            **THE COURT:**  What do they do?

2            **PROSPECTIVE JUROR NO. 4:**  My oldest daughter is --

3  she's got a lot of physical problems.  She's at home right now.

4            **THE COURT:**  All right.

5            **PROSPECTIVE JUROR NO. 4:**  And my son is -- works as a

6  manager in a paper mill, and my other daughter works for a

7  manager in a real estate company.

8            **THE COURT:**  All right.  Would you have answered "Yes"

9  to any of the questions I asked?

10            **PROSPECTIVE JUROR NO. 4:**  No.

11            **THE COURT:**  Do you believe you could serve as a fair

12  and impartial juror in this case based on everything I have

13  asked?

14            **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

15            **THE COURT:**  All right.  Will you be able to follow my

16  instructions on the law whether you agree with it or not?

17            **PROSPECTIVE JUROR NO. 4:**  Yes.

18            **THE COURT:**  All right.  Is there anything weighing on

19  your mind that I have not asked about that you think in any way

20  would prevent you from being the kind of fair and impartial

21  juror that I mentioned?

22            **PROSPECTIVE JUROR NO. 4:**  No, sir.

23            **THE COURT:**  Please step up here, please.

24        (The following proceedings were had at the bench by the

25        Court and Counsel out of the hearing of the jury:)

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

          1           **THE COURT:**  All right.  Any further questions from

          2  the Government?

          3           **MR. GREEN:**  Not from the Government, Your Honor.

          4           **THE COURT:**  Mr. Bryson?

          5           **MR. BRYSON:**  No.

          6           **THE COURT:**  All right.  Any cause challenge?

          7           **MR. GREEN:**  No cause challenge, Your Honor.

          8           **MR. BRYSON:**  No cause challenge.

          9           **THE COURT:**  You can exercise your strikes.

         10       (End of bench conference.)

         11       (Pause in the proceedings.)

         12           **DEPUTY COURTROOM CLERK:**  Mr. Carlton, you are

         13  dismissed.  You just need to call Sunday after 5:00.

         14           **THE COURT:**  Thank you for your service here today,

         15  sir.

         16       (Excused juror departed the courtroom at 3:46 p.m.)

         17           **THE COURT:**  All right.

         18           **DEPUTY COURTROOM CLERK:**  Stephen Sutton, if will you

         19  have a seat in Seat No. 4, please.  There is a ramp right

         20  there.

         21           **THE COURT:**  All right.  Sir, what county do you live

         22  in?

         23           **PROSPECTIVE JUROR NO. 4:**  Forsyth.

         24           **THE COURT:**  How long have you lived here?

         25           **PROSPECTIVE JUROR NO. 4:**  Twenty-five years.

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 165 of 247

```
1            THE COURT:  How far did you attend in school?
2            PROSPECTIVE JUROR NO. 4:  Bachelor of Science in
3   Industrial Management.
4            THE COURT:  What do you do for a living?
5            PROSPECTIVE JUROR NO. 4:  Training director of Volvo
6   Group.
7            THE COURT:  There was another individual here from
8   Volvo Group.  Did you know that other juror?
9            PROSPECTIVE JUROR NO. 4:  Yes, sir.
10           THE COURT:  I don't know that he was selected.
11           PROSPECTIVE JUROR NO. 4:  He was dismissed.
12           THE COURT:  Okay.  Do you have a significant other or
13  a spouse?
14           PROSPECTIVE JUROR NO. 4:  Yes, sir.  She is an IT
15  project manager at BB&T.
16           THE COURT:  All right.  Do you have any adult
17  children?
18           PROSPECTIVE JUROR NO. 4:  I do not.
19           THE COURT:  All right.  Would you have answered "Yes"
20  to any of my questions?
21           PROSPECTIVE JUROR NO. 4:  I would not.
22           THE COURT:  All right.  Do you believe that, based on
23  everything you've heard in this case, you could sit and hear
24  the evidence and decide the case solely based on the evidence
25  in the courtroom and apply the law as I give it to you, whether
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  you agree with it or not, and render a verdict that's fair and

2  impartial to the Government and to Mr. Wiley?

3           **PROSPECTIVE JUROR NO. 4:**  Yes, sir, I do.

4           **THE COURT:**  All right.  Thank you, sir.

5           If the lawyers would step up here.

6       (The following proceedings were had at the bench by the

7       Court and Counsel out of the hearing of the jury:)

8           **THE COURT:**  Okay.  Any follow-up?

9           **MR. GREEN:**  No, Your Honor.

10          **THE COURT:**  Any from the Defendant?

11          **MR. BRYSON:**  Can you ask him what a training director

12  does?  I don't really understand.  And as part of that, can you

13  find out how many people he supervises in his current position?

14          **THE COURT:**  Hold on just a minute.  Don't go away.

15      (End of bench conference.)

16          **THE COURT:**  Mr. Sutton, can you tell us briefly, what

17  does a training director do?

18          **PROSPECTIVE JUROR NO. 4:**  I am responsible heavily

19  for the white-collar training in U.S., Canada, and Mexico.  So

20  we train management, professional development, project

21  management skills.

22          **THE COURT:**  And how many people do you supervise?

23          **PROSPECTIVE JUROR NO. 4:**  How many people do I

24  supervise?

25          **THE COURT:**  Yes, sir.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 4:**  Six.

2          **THE COURT:**  All right.  Thank you.

3       (The following proceedings were had at the bench by the

4       Court and Counsel out of the hearing of the jury:)

5          **THE COURT:**  Anything further?

6          **MR. GREEN:**  Not from the Government.

7          **THE COURT:**  Any cause challenges?

8          **MR. GREEN:**  Not from the Government.

9          **MR. BRYSON:**  No.

10         **THE COURT:**  You can exercise your strikes.

11      (End of bench conference.)

12      (Pause in the proceedings.)

13         **DEPUTY COURTROOM CLERK:**  Mr. Sutton, you are

14   dismissed and you just need to call back Sunday after 5:00.

15         **THE COURT:**  Thank you for your service, sir.

16      (Excused juror departed the courtroom at 3:51 p.m.)

17         **DEPUTY COURTROOM CLERK:**  John Dixon, if you will

18   please have a seat in Seat No. 4.

19         **THE COURT:**  All right, sir.  What county do you live

20   in?

21         **PROSPECTIVE JUROR NO. 4:**  Forsyth County.

22         **THE COURT:**  How long have you lived here?

23         **PROSPECTIVE JUROR NO. 4:**  Twenty-seven years.

24         **THE COURT:**  How far did you attend in school?

25         **PROSPECTIVE JUROR NO. 4:**  MBA.

US v. Wiley  —— Trial/Jury Selection  —— 4/19/21

1          **THE COURT:**  What do you for a living?

2          **PROSPECTIVE JUROR NO. 4:**  I own several business, but

3  the largest one U.S. Industrial Piping.

4          **THE COURT:**  Are any of them retail operations?

5          **PROSPECTIVE JUROR NO. 4:**  No.

6          **THE COURT:**  All right.  Have you ever been the

7  subject of a robbery?

8          **PROSPECTIVE JUROR NO. 4:**  No, sir.

9          **THE COURT:**  Okay.  Are you married, or do you have a

10  significant other?

11          **PROSPECTIVE JUROR NO. 4:**  Significant other.

12  Divorced.

13          **THE COURT:**  All right.  What did your prior spouse

14  do?  Is it the same person?

15          **PROSPECTIVE JUROR NO. 4:**  No, I'm divorced with a

16  significant other.

17          **THE COURT:**  All right.  I got it.

18          So your first -- your wife, what did she do?

19          **PROSPECTIVE JUROR NO. 4:**  As little as possible.

20          **THE COURT:**  Did she work for a living outside the

21  home?

22          **PROSPECTIVE JUROR NO. 4:**  No, sir.

23          **THE COURT:**  Okay.  And then your significant other

24  now, what does that -- does that person work outside the home?

25          **PROSPECTIVE JUROR NO. 4:**  Yes.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    **THE COURT:** What does she do?

2    **PROSPECTIVE JUROR NO. 4:** Sells 401K plans, some life

3 insurance, some health insurance.

4    **THE COURT:** All right.

5    **PROSPECTIVE JUROR NO. 4:** Owns her own business.

6    **THE COURT:** All right. Do you know whether she's

7 ever been the subject of a robbery?

8    **PROSPECTIVE JUROR NO. 4:** She's never been.

9    **THE COURT:** All right. Do you have adult children?

10    **PROSPECTIVE JUROR NO. 4:** If you can call them that,

11 yeah. They work for me.

12    **THE COURT:** In your family business?

13    **PROSPECTIVE JUROR NO. 4:** Yes.

14    **THE COURT:** How many do you have?

15    **PROSPECTIVE JUROR NO. 4:** Including my significant

16 other?

17    **THE COURT:** How many children?

18    **PROSPECTIVE JUROR NO. 4:** Eight.

19    **THE COURT:** Eight children?

20    **PROSPECTIVE JUROR NO. 4:** Not Mormon or Catholic.

21    **THE COURT:** Would you have answered "Yes" to any of

22 my questions?

23    **PROSPECTIVE JUROR NO. 4:** No, sir.

24    **THE COURT:** If you were selected in this case to

25 serve as a juror, do you believe you could listen to the

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 evidence and apply the law as I give it to you, whether you

2 agree with it or not, and render a verdict that's fair and

3 impartial to the Government of the United States as well as to

4 Mr. Wiley?

5        **PROSPECTIVE JUROR NO. 4:**  Yes, sir.

6        **THE COURT:**  All right.  Is there anything that I have

7 not asked you about that you think is something you feel like

8 you need to disclose that's weighing on your mind that might

9 affect your ability to be fair and impartial?

10        **PROSPECTIVE JUROR NO. 4:**  No, sir.

11        **THE COURT:**  All right.  Give me just a moment.

12     (The following proceedings were had at the bench by the

13     Court and Counsel out of the hearing of the jury:)

14        **THE COURT:**  Any follow-up from the Government?

15        **MR. GREEN:**  No, sir.

16        **THE COURT:**  From the Defendant?

17        **MR. BRYSON:**  How many employees does U.S. Piping

18 have?

19        **THE COURT:**  Okay.  Any other questions?

20        **MR. FOSTER:**  Yes.  He said he had eight children.  Do

21 they all work in his businesses?  If not, what do the others

22 do?

23        **THE COURT:**  Hold on.

24     (End of bench conference.)

25        **THE COURT:**  Mr. Dixon, how many employees does your

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 171 of 247

1 business have?

2        **PROSPECTIVE JUROR NO. 4:** Currently about 35. At

3 max, probably 78.

4        **THE COURT:** And why does it fluctuate?

5        **PROSPECTIVE JUROR NO. 4:** I'm a job shop. So when we

6 have work, you know, I hire more people.

7        **THE COURT:** Okay. You said you have eight children.

8 Do all eight work in the business?

9        **PROSPECTIVE JUROR NO. 4:** No, sir. One owns her own

10 business, works a massage business in Virginia. And the next

11 one works for me in sales. And the next one works for another

12 company I own that does nondestructive testing, nondestructive

13 examination, so he's working with another gentleman in getting

14 that one going. Then I have one fixing to graduate. He is

15 going to work with my significant other when he graduates.

16 Then I have another one in college, which he has a year to go.

17 Then I have another one who is fixing to go to college. And

18 then I have two more in high school.

19        **THE COURT:** All right. To your knowledge, have any

20 of them ever been the subject of a robbery?

21        **PROSPECTIVE JUROR NO. 4:** No, sir.

22        **THE COURT:** All right. Thank you.

23     (The following proceedings were had at the bench by the

24     Court and Counsel out of the hearing of the jury:)

25        **THE COURT:** All right. Anything further from the

US v. Wiley -- Trial/Jury Selection -- 4/19/21

1  Government?

2          **MR. GREEN:**  No, Your Honor.

3          **THE COURT:**  From the Defendant?

4          **MR. BRYSON:**  No, Your Honor.

5          **THE COURT:**  Any cause challenges from the Government?

6          **MR. GREEN:**  No, Your Honor.

7          **THE COURT:**  From the Defendant?

8          **MR. BRYSON:**  No, Your Honor.

9          **THE COURT:**  You can exercise your strikes.

10     (End of bench conference.)

11     (Pause in the proceedings.)

12          **DEPUTY COURTROOM CLERK:**  Mr. Dixon, you are

13     dismissed.  You just need to call back Sunday after 5:00.

14          **THE COURT:**  Thank you for your service here today.

15     (Excused juror departed the courtroom at 3:58 p.m.)

16          **THE COURT:**  All right.  What we're going to do is

17     take a 15-minute break.  We have more jurors, the afternoon

18     group.  So we'll bring them down.  I'll to have reread my whole

19     introduction to them.  So that will take another 30 minutes or

20     so.  Hopefully, we'll be able to pick our last juror and then

21     alternates from that list as well.

22          Anybody have any issue you want to raise before we do

23     that?

24          **MR. GREEN:**  I just saw a note from Ms. Engle about

25     the representation of Miss Poole, and that was the question I

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  was going to ask.

2          **THE COURT:**  Let's take a break for 15 minutes.

3      (Proceedings recessed at 3:59 p.m.)

4      (Proceedings called back to order at 4:20 p.m.)

5      (The Defendant was present.)

6          **THE COURT:**  Okay.  I'm trying to deal with logistics

7  at 4:20 to see if we can finish today.

8          So you should have had the sheets that have some kind

9  of positive response on some of those.  My guess is we're not

10 going to make it through all of those, because we have one

11 juror to get and then three alternates; but are any of those

12 that you want to be heard on at this moment?  Otherwise, I will

13 resolve them when they come in.

14         **MR. GREEN:**  We haven't quite made it through.  Could

15 we have maybe five more minutes?

16         **THE COURT:**  Okay.

17         **MR. BRYSON:**  During this time period, can we ask the

18 clerk to confirm how many peremptories each party has left?

19         **THE COURT:**  Sure.  Do you want that -- do you want to

20 know that separately?  In other words -- you want to know how

21 many --

22         **MR. BRYSON:**  Yeah, we want to know how many we have

23 left.

24         **THE COURT:**  She can write that number and leave it

25 with you.  I don't know if you want the Government to know that

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1   or not.

2           **MR. BRYSON:**  We have a number.  We just want to make

3   sure our number is correct with her number.

4           **MR. GREEN:**  I think the Government has used five.

5           **THE COURT:**  Okay.

6           **DEPUTY COURTROOM CLERK:**  I'm sorry?

7           **THE COURT:**  The Government says it thinks it's used

8   five, so it has one left.

9           Do you want that number confidentially, Mr. Bryson,

10  or do you care?

11          **MR. BRYSON:**  No.  We think we have eight -- we've

12  used eight, I should say.

13      (Deputy Courtroom Clerk handed paper to Defendant's

14      attorneys.)

15          **THE COURT:**  Do those numbers match with your system?

16          **MR. BRYSON:**  No.  You switched them up maybe?

17          **DEPUTY COURTROOM CLERK:**  I'll double-check it.

18          **MR. PRINCIPE:**  Your Honor, the Government's records

19  reflect that we have used five and would have one left.

20          **THE COURT:**  Hold on just a minute.

21          Is that what you have, Ms. Engle?

22          **DEPUTY COURTROOM CLERK:**  My numbers are different.

23          **THE COURT:**  Okay.  She's looking at them.

24          Mr. Bryson, while she's doing that, did you say you

25  want to know that confidentially for you, or do you want it

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  publicly disclosed here?

2         **MR. BRYSON:**  It doesn't really matter.  We don't need

3  it confidentially.

4         **THE COURT:**  Okay.  And you think you've used how

5  many?

6         **MR. BRYSON:**  It's eight or nine.  That's in conflict

7  with yours.

8         **THE COURT:**  All right.  She'll be able to tell you,

9  and then she can tell you which jurors.  Then you can decide

10 whether you are in agreement.  I would like to be efficient

11 about it, though.  It's 4:25.

12     (Pause in the proceedings.)

13        **DEPUTY COURTROOM CLERK:**  Do they want their numbers

14 publicly?

15        **THE COURT:**  They said they did not care, so you can

16 disclose them.

17        **DEPUTY COURTROOM CLERK:**  I have the Government used

18 five and the Defendant used nine.  I apologize for that.

19        **MR. BRYSON:**  Thank you very much.

20        **THE COURT:**  Are you in agreement with that?

21        **MR. PRINCIPE:**  Yes, the Government is.

22        **THE COURT:**  The Defendant?

23        **MR. BRYSON:**  Yes.

24        **THE COURT:**  All right.

25     (Pause in the proceedings.)

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

```
 1            THE COURT:  All right.

 2            MR. GREEN:  If it please the Court, after

 3   conversations with the attorneys, we believe we've reached some

 4   agreement for cause as to three of the jurors.

 5            THE COURT:  Which ones?

 6            MR. GREEN:  Let's see if I can do this numerically.

 7   No. 43, which was Max Gonzales, indicated an inability to take

 8   notes; No. 44, Mr. Watson, indicated he was being treated for

 9   major depressive disorder that would affect his ability to

10   deliberate; and then No. 61, Ms. Averett, who I believe is

11   scheduled for major hip surgery or has it and is taking

12   narcotics for it.

13            THE COURT:  Are you in agreement, Mr. Bryson?

14            MR. BRYSON:  Yes, Your Honor.

15            THE COURT:  I'll strike all three for cause by

16   agreement of the parties for the reasons indicated.

17            Are there any others either party wishes to raise for

18   cause challenge?

19            MR. GREEN:  Not for cause.

20            THE COURT:  Mr. Bryson?

21            MR. BRYSON:  No, Your Honor.

22            THE COURT:  So my plan would be to announce that

23   Jurors 43, 44, and 61 are dismissed; they need not come in.

24   And then that will leave us with roughly 22, I believe,

25   something in that range, and we'll bring them in the courtroom.
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  We'll pick the last juror, and then I will seat as many as

2  possible and do the alternate.

3           Since I'm picking three alternates, you each have two

4  strikes.  Are you in agreement?

5           **MR. GREEN:**  We are, Your Honor.

6           **THE COURT:**  Okay.  All right.  Let's bring all the

7  prospective jurors in, please.  You can dismiss out 43, 44, 61.

8      (Prospective jurors entered the courtroom at 4:28 p.m.)

9           **THE COURT:**  All right.  Ms. Engle, please administer

10  the oath to the panel.

11      (Prospective jurors were sworn/affirmed.)

12          **THE COURT:**  Ladies and gentlemen, good afternoon.  My

13  name is Tom Schroeder.  I am a United States District Judge.  I

14  want to welcome you as you begin your jury service here.

15          It's 4:35 p.m.  I'm going to tell you we've selected

16  all but one juror for the jury, and then I just need to select

17  three alternates.  So we're almost done with the process.  I'm

18  hoping we'll finish sometime a little after 5:00.  Otherwise,

19  if we stop at 5:00, I'll need to have you come back tomorrow.

20  My goal would be, since some of you may have come from a little

21  bit of a distance, to try to finish today.

22          Is that a particular problem for anybody if we

23  finish, say, at 5:30 or so?  Raise your hand if that's a

24  problem.

25          Okay.  So I have some preliminary comments, and then

1    I will have some questions for you.  Listen carefully.  If you

2    have any difficulty hearing me at any time, raise your hand,

3    and I will repeat myself.

4         So I understand that you're summoned here for your

5    jury service at some sacrifice to other plans you have in your

6    life, whether it's work outside the home; work inside the home;

7    for some, working from home during the pandemic; or perhaps

8    some time off you were hoping to take.

9         Let me say we're going to be as efficient as possible

10   as we have you here.  We were actually working while you were

11   waiting and purposely did not call you in until the afternoon

12   so you didn't have to sit here all morning.

13        For some of you, this may be your first experience as

14   a juror.  You may be apprehensive.  Do not be.  While it is a

15   great responsibility to be a juror, let me tell you it's my

16   intention to try to help you understand more about your

17   service.

18        Jury service is a duty that should command your pride

19   because it affords you an opportunity to express your faith in

20   our nation's judicial system.  It's one of the highest callings

21   of our citizenship.  For over 230 years, our Constitution has

22   guaranteed the right of a defendant in a criminal case to a

23   public jury trial.  Our system is unique in that it shows the

24   confidence that the Framers of our Constitution had in their

25   fellow citizens by making them their judges.  The United States

        US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1   is one of the few countries in the world with a jury system.

2           You have the distinction of having been selected as

3   having qualifications of judicial stature.  No higher honor or

4   duty can be imposed upon any citizen than that of sitting in

5   judgment on the facts that may be presented to you in a civil

6   or a criminal case.  For that reason, there's probably no

7   single person working in the state of North Carolina today who

8   is more essential than you are at this time.  I thank you for

9   your service to our nation and to our Constitution.

10          While jury service may not come at the most

11  convenient time for some of you, I ask that you reflect on your

12  duties as a citizen to ensure the promises of our Constitution.

13  At this very moment, there are men and women in our country's

14  armed services who are in foreign lands and in harm's way

15  defending our very freedoms.  You are not being asked to do

16  that.  Rather, we ask that you sit in this climate-controlled

17  courtroom for a few days to carefully hear the evidence in this

18  case.

19          We are all aware that as a nation we are still

20  dealing with the coronavirus pandemic.  Fortunately, vaccines

21  are now available, and the public health community has learned

22  much about the virus and how to address it.  I want to assure

23  you that this Court has engaged in extensive preparation with

24  consultation with public health experts to ensure that we are

25  taking all reasonable precautions to make your participation as

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  a juror as safe as practicable.  As recommended by the Centers

2  for Disease Control, medical experts, and other major public

3  health organizations, we have, of course, deferred jury service

4  for anyone who has COVID-19, or who has been in recent contact

5  with someone with the virus, or who has a temperature or other

6  symptoms of the disease.

7          We require everybody in our building to wear a mask

8  and to socially distance.  If you have your own mask, you are

9  free to wear it as long as it does not have any political or

10 other message on it.  Otherwise, the Court has plenty of

11 disposal masks for your use.

12         There is also plenty of hand sanitizer throughout the

13 courthouse.  I encourage you to do your part by washing your

14 hands regularly, using hand sanitizer, and socially distancing

15 from others.

16         The lawyers have asked me to advise you that all of

17 them, as well as the Defendant, Maurice Owen Wiley, Jr., have

18 been fully vaccinated against the coronavirus.  The lawyers

19 will also wear their masks during the trial and when they

20 approach any witness for questioning.  I can tell you that I

21 have been fully vaccinated, as have many of my court staff,

22 including, importantly, Ms. Engle, my deputy clerk, immediately

23 in front of me, with whom you may have some interaction from

24 time to time.

25         But let me say that if anyone is apprehensive about

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 serving for health reasons, we will discuss that, and I will

2 consider excusing you.  I realize the circumstances in which

3 we're conducting this trial.  Let me remind you, however, that

4 we've had trials through wars, hurricanes, through tornadoes,

5 and, yes, even through pandemics.  The Constitution has endured

6 because citizens have answered the call that "We, the people,"

7 in the very first words of the Constitution, have pledged to

8 one another for centuries.  So if you're apprehensive about

9 serving to the point where you believe you would not be able to

10 pay attention the way that you should, please let me know.

11          It is the constitutional right of every citizen to

12 have the facts of his or her case, be it civil or criminal,

13 heard and determined fairly and impartially by a jury of his or

14 her peers.  That is what you would want.  That is what the

15 parties here want, and that's what they are entitled to.

16          In a jury trial, the judge and the jury have separate

17 yet equally important functions.  I will see that the trial is

18 conducted according to established rules of procedure.  I will

19 determine what's proper evidence and instruct the jury as to

20 the law.  These rulings and instructions the jury must follow.

21          Your duty as jurors is to listen carefully to the

22 evidence and to determine the facts.  When the case has been

23 submitted to you, you will carefully scrutinize and weigh the

24 evidence in light of the law and return a just verdict.  You

25 will be the sole judges of the facts and the credibility of the

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

witnesses.  The final determination, or verdict, rests solely with you.

If I commit an error in my rulings or instructions, I am responsible for that error.  If the jury reaches an erroneous verdict, the responsibility rests solely with the jury.  Unless both the judge and the jury perform their duties fairly and impartially and without fear, favor, prejudice, or sympathy, then justice will not be done.

Upon your acceptance as jurors, you will become officers of the court, which imposes grave responsibilities on you and enlists your best talents of appraisal and judgment.  Morality and justice dictate that you render a verdict above reproach and beyond suspicion, and I feel sure you will do this.

I want to emphasize that each party is entitled to a fair and impartial trial, free from sympathy or prejudice.  These are not idle words, and the application of them often is not easy.  As the working of the human mind is the product of education, experience, and observation, no two minds think alike.  We all have our sympathies and prejudices, and some are so deeply embedded, we could not put them aside, however hard we might try.

If anything about a case in which you are being considered as a juror evokes your sympathy or prejudice sufficiently to impair your ability to be impartial, then you

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  should freely disqualify yourself from consideration on that

2  jury.  Nobody can read your mind and only you know what it

3  contains.

4          You would say that any judge who did not hear and

5  decide a case solely on the evidence and pursuant to the law,

6  free from sympathy and prejudice, would be unfit to sit as a

7  judge on that case.  The same principle applies to a member of

8  the jury.

9          In our system of justice, jurors, not judges,

10  determine the facts.  I don't determine who wins or loses a

11  trial; the jurors do.

12          If you are selected to sit in this case for a trial,

13  it is very important for you to know and understand that your

14  sole source of information must come solely from the evidence

15  presented to you here in this courtroom.  You will not be

16  deciding this case on the basis of what you may have read or

17  heard outside the courtroom or according to any predisposition

18  you may have.

19          You shall not do any type of research of any kind

20  concerning anything related to the case.  For example, you

21  shall not do a computer search of any kind in the evening or at

22  any other time concerning anything related to the case.  You

23  cannot supply the answer to unanswered questions, conjecturing

24  what you might think was the probable answer.  The answer must

25  be found solely within the confines of the evidence presented

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    to you here as jurors together in this courtroom.

2            Herein lies one of the judge's most difficult

3    problems.  And, again, if you are selected to serve as a juror,

4    you will be a judge, a judge of the facts of the case.  This

5    prohibition on any type of research is based on a very

6    important principle, fairness.  Believe it or not, there are

7    things on the Internet that are just not true.  Moreover, in a

8    case the lawyers have the opportunity to present disputed

9    evidence to a judge before a trial so the judge can determine

10   whether the evidence is admissible in the case, that is,

11   whether the jury should be allowed to hear it.  If a juror does

12   independent research, the lawyers and the parties in the case

13   and the judge do not know anything about that research.  Such

14   independent research is unfair to your fellow jurors, to the

15   parties, to the lawyers, to the Court, and to our trial process

16   under our Constitution of the United States.

17           You also shall not talk or communicate about the case

18   with anyone or let anybody talk or communicate about the case

19   with you, even your fellow jurors, before all the evidence has

20   been received and you have retired to the jury room to

21   determine your verdict together.

22           You also shall not read about the case in the

23   newspaper or look at or listen to any news reports about it, if

24   there are any.

25           These principles, again, are based on fairness.  The

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 parties are entitled to have you determine the case based

2 solely on the evidence that you see and hear in this courtroom

3 together and only after you hear all the evidence together in

4 the courtroom, hear all the arguments together in the

5 courtroom, and hear all of my instructions on the law together

6 in this courtroom.

7        This prohibition on communication about the case

8 includes all forms of communication.  For example, you shall

9 not text about the case or tweet about it or Facebook about it,

10 or use any of those forms or other forms of communication.  You

11 may very well know more about that than I do.  There are so

12 many ways we can communicate now as a people, but you cannot do

13 any of that or let anybody communicate with you about the case.

14 If anybody does try to communicate with you about the case,

15 please bring it to my attention immediately.

16        My instructions not to talk or communicate about the

17 case with anyone or let anybody communicate or talk about the

18 case with you until it is time for you as the jury to

19 deliberate is based on an important principle.  It is no

20 accident that a jury consists of 12 individuals.  Our Framers

21 did that by design in order to better ensure the impartiality

22 of a jury verdict and the quality of the justice resulting from

23 a jury trial.  If that is to be true, then it is necessary for

24 each of you jurors to consider the opinions of your fellow

25 jurors.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          When you begin your deliberations, it may well be

2    that you may be uncertain as to just what you think about the

3    facts of the case that you must decide.  In all likelihood,

4    some of your fellow jurors will point out important parts of

5    the evidence or make persuasive arguments to you that will in

6    some way influence in helping you to decide just what the truth

7    of the matter is.

8          In the final analysis, your verdict is supposed to do

9    what the Latin words which make up the word "verdict" mean, and

10   that is to speak the truth.  Thus, it is very important that

11   you not only not read or listen to any reports about the case,

12   but it's equally important that you not talk or communicate

13   about the case with anyone or let anybody do so with you.

14         You are also not to make up your mind about the case

15   until all of the evidence is in, all of the arguments have been

16   made, and my instructions on the law have been given to you.

17         So as I said, we're here to select 12 jurors.  We've

18   already selected 11 from this morning's group.  So I have to

19   select one more juror for the 12, and then three alternates.

20         The case is brought by the lawyers, and you will meet

21   them in a moment.  They estimate the case may take five to

22   maybe six or seven days.

23         Let me describe the process for the selection.

24         Once we question jurors in the front up here and we

25   either select a juror or we dismiss them, I am going to let you

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

leave for the day. You don't have to wait around with
everybody else. That way people will not be congregating in
the courtroom. We won't start the trial until tomorrow and I
have all the jurors and alternates selected.

I have a large room set aside for the jury to use as
a jury room. There will be bottled water and snacks for your
use and restrooms available.

We'll start the trial at 9:00. We'll take a
mid-morning break for 20 minutes. We'll recess about
12:30 p.m. We'll restart the trial about 2:00 p.m. We'll take
a 20-minute afternoon break and finish promptly at 5:00. The
trial is not an endurance contest, and if anybody needs a break
throughout, simply raise your hand and we'll take a break.

I want to thank you in advance for being stewards of
each other's time, and I can assure you we're doing all we can
to be a good steward of your time while you're here.

So there are several people here in the courtroom you
will likely see assisting me. Ms. Engle, who is the deputy
clerk seated right in front of me in the teal blouse; Ms. Bell
is our court reporter who is transcribing all of this; my law
clerk is seated in front of me on my right to your left. There
are also computer technicians who are helping from time to time
with computers and the sound system, as well as other court
officers in the building.

This is a criminal case. That's a case when a person

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

is accused of violating one of the laws passed by Congress which sets out criminal offenses. When a criminal case is charged, the allegations are brought in a document called an indictment.  If the indictment is amended, as it was in this case at one time, it's called a superseding indictment.  My reference to the indictment or superseding indictment is meant to refer to the current indictment.  Keep in mind that an indictment only describes the charge brought; it is not evidence of guilt.

One of the most valued and fundamental principles under our Constitution is that every person charged with a crime is presumed to be not guilty of the charge unless the prosecution is able to prove each and every element of the charge beyond a reasonable doubt.

Another valuable and fundamental principle is that no defendant is ever expected to prove himself or herself not guilty of a charge.  The Government always has the burden of proof.  In fact, if a defendant in a criminal case elects not to testify or not to present any evidence at all, the jury may not consider that election for any purpose during its deliberations.

I'm now going to summarize the charges in this case for you.  Remember, these are only charges.  They are simply allegations.  They are not proof.

There are four counts of the indictment against

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  Mr. Wiley.  Count One of the indictment alleges that from on or

2  about April 13, 2018, continuing up to and including on or

3  about April 15, 2018, the Defendant, Maurice Owen Wiley, Jr.,

4  knowingly conspired with one or more persons to commit a

5  robbery; that is, Defendant Maurice Owen Wiley, Jr., also known

6  as Tweet, conspired with Darryl Bradford, Jr., also known as

7  Stretch; Hykeem Deshun Cox, also known as Chub; Semaj

8  Jayron-Maleek Bradley, also known as Squeeze; Charles Winfor

9  Daniels, also known as Murda; and other persons, known and

10  unknown, to take and obtain United States currency and

11  merchandise from owners and employees of China Wok by robbery

12  in Durham, North Carolina, in violation of Title 18 of the U.S.

13  Code, Section 1951(a).

14         Count Two of the indictment alleges that on or about

15  April 15, 2018, Defendant Maurice Owen Wiley, Jr., also known

16  as Tweet, Darryl Bradford, Jr., Hykeem Deshun Cox, Semaj

17  Jayron-Maleek Bradley, and Charles Winfor Daniels, all with the

18  nicknames I mentioned earlier, did unlawfully attempt to take

19  and obtain United States currency and merchandise belonging to

20  China Wok from the possession of the owners and employees of

21  that business by robbery in Durham, North Carolina, in

22  violation of Title 18 of the U.S. Code, Sections 1951(a) and 2.

23         Count Three of the indictment charges that from on or

24  about April 13, 2018, continuing up to and including on or

25  about April 15, 2018, Defendant, Maurice Owen Wiley, Jr.,

Case 1:19-cr-00529-TDS  Document 359  Filed 02/04/22  Page 190 of 247

1 Darryl Bradford, Jr., Hykeem Deshun Cox, Semaj Jayron-Maleek

2 Bradley, and Charles Winfor Daniels, also with all of the

3 nicknames I mentioned earlier, and other coconspirators did

4 unlawfully conspire with each other and other persons, known

5 and unknown, to possess firearms in furtherance of a crime of

6 violence in violation of Title 18 of the U.S. Code, Section

7 924(o).

8 Count Four of the indictment charges that on or about

9 April 15, 2018, Defendant Maurice Owen Wiley, Jr., having been

10 convicted of a crime punishable by imprisonment for a term

11 exceeding one year, and with knowledge of that conviction, did

12 knowingly and intentionally unlawfully possess, in and

13 affecting commerce, ammunition, that is, Winchester .45 caliber

14 ammunition, Winchester .40 caliber ammunition, and Winchester

15 9mm ammunition.  This is alleged to be a violation of Title 18,

16 U.S. Code, Sections 922(g)(1), 924(a)(2), and Section 2.

17 As to all of these charges against him, the

18 Defendant, Maurice Owen Wiley, Jr., has entered a plea of not

19 guilty.

20 So in terms of the jury selection, we're going to

21 place one remaining juror up here; and as soon as we pick the

22 juror for the jury, I'll then place a number of others up here

23 for selection of an alternate, and then we'll be finished.

24 So while I'm questioning people here in the jury box

25 and in the well of the courtroom, if you're not called, please

1 listen carefully because we may call you into that box if we
2 dismiss out some of the others.  And to avoid my having to
3 repeat all the questions, if you would have had an affirmative,
4 meaning a yes, answer to any of my questions, then you can just
5 let me know that, and we'll follow up with those.  If you have
6 any trouble with any of those or remembering, let me know and
7 I'll prompt you.

8          Each of the parties has a certain number of
9 challenges that they can file, which are called peremptory
10 challenges, which allows them to excuse any number of jurors.

11          So the goal of the Court and the parties is to select
12 jurors who will be fair and impartial in this case.  What do I
13 mean by that?  The jury must determine this case, that is,
14 whether the Government has proven the charges beyond a
15 reasonable doubt, whether to believe or not to believe the
16 testimony of the witnesses that are called during the trial,
17 whether to believe any other evidence that may be presented.

18          A fair and impartial juror is one who has not made up
19 his or her mind prior to hearing the witnesses and seeing the
20 evidence, but one who can listen to the witnesses' testimony
21 and judge their credibility and follow all of the instructions
22 that I give, not leaving out some instructions you don't like
23 or choosing to follow some others but not all of them.  A fair
24 and impartial juror follows all of the Court's instructions.
25          A fair and impartial juror will wait until all of the

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

evidence is presented before making up his or her mind.  A fair
and impartial juror will decide the facts of this case based
solely on the evidence and not based on bias, sympathy, or
prejudice.

And if you're not selected, do not worry about what
that may mean, whether anybody thinks you can't be fair and
impartial.  It just may be that the lawyers know something
about the case that you're not aware of that, to them, they
determine this may not be the right case for you.

At this time let me ask the attorneys to introduce
themselves, and please introduce anybody else who is with you.

Mr. Green.

**MR. GREEN:**  Good afternoon.  My name is Graham Green.
I'm an assistant United States attorney in the Middle District
of North Carolina.  That means I'm a federal prosecutor.

There are three federal districts in North Carolina,
and you're in the Middle District.  The Middle District
stretches roughly from Concord up I-77, almost straight to
Virginia, all the way over on the east side until about Durham
and a little further into Chapel Hill, north and south along
that corridor.

My boss is Assistant United States Attorney -- acting
United States Attorney Sandra Hairston.  Beside me is Craig
Principe, and I'll let him introduce himself.

**MR. PRINCIPE:**  My name is Craig Principe.  I'm also

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 193 of 247

1    an assistant United States attorney.  I also will be handling

2    the case for the Government.

3          **MR. GREEN:**  Also seated at our table is Jennifer

4    Collins.  Ms. Collins is an employee in our office, and she is

5    going to be running the technology for us.  You will see us

6    address her sometimes as she pulls documents up on these

7    monitors.

8          And at the far side, if you will stand up, this is

9    Special Agent Maria Jocys.  She is a special agent with the

10   Federal Bureau of Investigation, and you will see her come and

11   go out of the courtroom sometimes as we proceed.

12         **THE COURT:**  Mr. Bryson.

13         **MR. BRYSON:**  My name is John Bryson.  I'm an

14   attorney.  I practice in High Point with a law firm called

15   Wyatt Early Harris Wheeler.  And assisting me, my cocounsel, I

16   should say, today is --

17         **MR. FOSTER:**  My name is Mark Foster.  I'm an attorney

18   practicing in Charlotte.

19         **MR. BRYSON:**  And this is Maurice Owen Wiley, Jr.,

20   and you will sometimes refer to him -- you will sometimes hear

21   him referred to throughout the trial as Tweet.

22         Thank you.

23         **THE COURT:**  Okay.  So we're ready to try to pick our

24   last juror for the actual jury, and then we'll pick the

25   alternates.  At this time I'm going to ask Ms. Engle to call

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 one juror forward for Seat No. 4.

2        **DEPUTY COURTROOM CLERK:**  Cherie Thomas, if will you

3 please come forward and then take Seat No. 4 on the second row

4 in the box.  Be careful.  There is a ramp right here.

5        **THE COURT:**  All right.  Ms. Thomas, good afternoon.

6 Let me ask you just a few background questions.

7        And let me say to everybody:  There's no intention to

8 pry here.  I have been doing this for over 13 years now, and I

9 don't believe I've ever had an incident where somebody has felt

10 like we were prying.  Obviously, there will be some questions

11 and background questions.  If, at any point, anybody feels like

12 the answer you would give is one you would rather give

13 privately, I can have you come over to the side microphone, and

14 we'll all put on headsets and then we'll hear what one has to

15 say.  But I don't anticipate that to be the case with anyone,

16 but know that that's an option.

17        So, Ms. Thomas, what county do you live in?

18        Please —— you can remove your masks for purposes of

19 answering all the questions so we can see and hear you.

20        **PROSPECTIVE JUROR NO. 4:**  Person County.

21        **THE COURT:**  How long have you lived there?

22        **PROSPECTIVE JUROR NO. 4:**  Fifty-five years.

23        **THE COURT:**  And how far have you attended in school,

24 ma'am?

25        **PROSPECTIVE JUROR NO. 4:**  I have some college.

US v. Wiley  —— Trial/Jury Selection  —— 4/19/21

**THE COURT:**  Are you working currently?

**PROSPECTIVE JUROR NO. 4:**  Yes.

**THE COURT:**  What do you do?

**PROSPECTIVE JUROR NO. 4:**  I'm a child support officer for Orange County.

**THE COURT:**  Okay.  And please speak loud enough so all the folks over here can hear you.

What does a child support officer do?

**PROSPECTIVE JUROR NO. 4:**  I establish child support orders for the purpose of the noncustodial parent to pay the custodial parent for their minor child.

**THE COURT:**  Do you work with law enforcement?

**PROSPECTIVE JUROR NO. 4:**  Some, yes.

**THE COURT:**  Could you describe what that capacity is? How do you do that?

**PROSPECTIVE JUROR NO. 4:**  I issue complaints for -- to have the noncustodial parent brought to court to establish paternity and orders.

**THE COURT:**  Do you ever have to testify?

**PROSPECTIVE JUROR NO. 4:**  I do.

**THE COURT:**  How many times do you think you've done that?

**PROSPECTIVE JUROR NO. 4:**  More than 20.

**THE COURT:**  Okay.  All right.  Is that in state court?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 4:**  Yes.

2          **THE COURT:**  Have you ever testified in the federal

3    courtroom?

4          **PROSPECTIVE JUROR NO. 4:**  No, sir.

5          **THE COURT:**  All right.  How long have you been doing

6    that job?

7          **PROSPECTIVE JUROR NO. 4:**  Fifteen-plus years.

8          **THE COURT:**  Okay.  Do you have a significant other,

9    or are you married?

10          **PROSPECTIVE JUROR NO. 4:**  I'm currently separated.

11          **THE COURT:**  Okay.  What does your spouse do?

12          **PROSPECTIVE JUROR NO. 4:**  He's in the beer business.

13          **THE COURT:**  The beer business?

14          **PROSPECTIVE JUROR NO. 4:**  Uh-huh.

15          **THE COURT:**  In what way?

16          **PROSPECTIVE JUROR NO. 4:**  He works with, like, a

17    distributorship.

18          **THE COURT:**  Okay.  All right.

19          Do you have any adult children?

20          **PROSPECTIVE JUROR NO. 4:**  I do, two.

21          **THE COURT:**  What do they do?

22          **PROSPECTIVE JUROR NO. 4:**  My daughter, she works at

23    BB&T, and my son, he works at Sport Durst, a car dealership in

24    Durham.

25          **THE COURT:**  Do either of them work in the retail

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  side?

2          **PROSPECTIVE JUROR NO. 4:**  He sells cars.

3          **THE COURT:**  There are allegations in the case of a

4  robbery.  Do you know whether either of your children have ever

5  been involved in a situation through their work or otherwise

6  involving a robbery?

7          **PROSPECTIVE JUROR NO. 4:**  No.

8          **THE COURT:**  Okay.  No, you don't know or, no, they

9  haven't?

10          **PROSPECTIVE JUROR NO. 4:**  No, they have not.

11          **THE COURT:**  All right.  So now I have a number of

12  questions to ask.  Again, everybody please listen because if

13  you would have answered "Yes" to any of these when you come

14  forward at some point, if you do, you can tell me which ones

15  would you have answered "Yes" to.  So you can make a mental

16  note.

17          Have you ever been employed by the U.S. Government?

18          **PROSPECTIVE JUROR NO. 4:**  No.

19          **THE COURT:**  And who is your current employer?

20          **PROSPECTIVE JUROR NO. 4:**  Orange County Government.

21          **THE COURT:**  Okay.  Have you ever been in the

22  military?

23          **PROSPECTIVE JUROR NO. 4:**  No, sir.

24          **THE COURT:**  All right.  Is your kind of work one you

25  would regard as law enforcement?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

**PROSPECTIVE JUROR NO. 4:**  Not really.  I mean, it's the purpose of issuing the complaints to get the noncustodial parent in court, but it's not me, per se, serving the noncustodial parent.

**THE COURT:**  Do you write out the request for the noncustodial parent?

**PROSPECTIVE JUROR NO. 4:**  Yes.  Yes, we print the complaint.

**THE COURT:**  Okay.  And then who ends up making sure that gets sent to the right person?

**PROSPECTIVE JUROR NO. 4:**  We have admin staff that sends it out.

**THE COURT:**  Okay.  Do you involve sheriffs or anybody else to serve that?

**PROSPECTIVE JUROR NO. 4:**  The sheriff's department, yes, mostly.

**THE COURT:**  Do you personally work with them?

**PROSPECTIVE JUROR NO. 4:**  They'll call me sometimes to give me an update.

**THE COURT:**  All right.  Is there anybody in your immediate family or close friend who is involved in law enforcement?

**PROSPECTIVE JUROR NO. 4:**  My dad is a retired lieutenant with the Roxboro Police Department.

**THE COURT:**  How long did he work there?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE JUROR NO. 4:**  Over 20 years.

2          **THE COURT:**  When did he retire?

3          **PROSPECTIVE JUROR NO. 4:**  I think it was 2000.

4          **THE COURT:**  This case may involve the testimony of

5   law enforcement officers.  Would you tend to give more or less

6   weight to a law enforcement officer's testimony simply because

7   they are a law enforcement officer?

8          **PROSPECTIVE JUROR NO. 4:**  Not really.

9          **THE COURT:**  Would you be able to judge their

10  testimony like you would any other witness?

11         **PROSPECTIVE JUROR NO. 4:**  Yes.

12         **THE COURT:**  And would you be able to do without

13  regard to the fact that your father is retired law enforcement?

14         **PROSPECTIVE JUROR NO. 4:**  Yes.

15         **THE COURT:**  All right.  Do you know any of the

16  lawyers involved in this case?

17         **PROSPECTIVE JUROR NO. 4:**  No, I do not.

18         **THE COURT:**  Have you had any prior dealings with

19  members of the U.S. Attorney's Office or the U.S. Department of

20  Justice?

21         **PROSPECTIVE JUROR NO. 4:**  No, sir.

22         **THE COURT:**  Do you know the Defendant, Mr. Wiley?

23         **PROSPECTIVE JUROR NO. 4:**  No.

24         **THE COURT:**  Do you know any of the other alleged

25  coconspirators, Mr. Bradford, Mr. Cox -- Darryl Bradford, Jr.,

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  Hykeem Deshun Cox, Semaj Jayron-Maleek Bradley, Charles Winfor

2  Daniels?

3           **PROSPECTIVE JUROR NO. 4:**  No.

4           **THE COURT:**  Now, I have a list of witnesses.  And I

5  ask everybody to listen carefully.  This is a list of persons

6  who may be called as witnesses, but I have to ask you about all

7  of them.  If you know any of these people or think you do, let

8  me know.  And everybody else make a mental note.

9           Wai Ping Chan?

10          **PROSPECTIVE JUROR NO. 4:**  No.

11          **THE COURT:**  Crystal Rodriguez?

12          **PROSPECTIVE JUROR NO. 4:**  No.

13          **THE COURT:**  Eastern Zheng?

14          **PROSPECTIVE JUROR NO. 4:**  No.

15          **THE COURT:**  Jade Zheng?

16          **PROSPECTIVE JUROR NO. 4:**  No.

17          **THE COURT:**  Robert Turner?

18          **PROSPECTIVE JUROR NO. 4:**  No.

19          **THE COURT:**  Rex McQueen?

20          **PROSPECTIVE JUROR NO. 4:**  No.

21          **THE COURT:**  David Keith Laxton?

22          **PROSPECTIVE JUROR NO. 4:**  No.

23          **THE COURT:**  Mat Hofmeier?

24          **PROSPECTIVE JUROR NO. 4:**  No.

25          **THE COURT:**  Evrardo Macias?

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 201 of 247

1          **PROSPECTIVE JUROR NO. 4:**  No.

2          **THE COURT:**  Betty Scruggs?

3          **PROSPECTIVE JUROR NO. 4:**  No.

4          **THE COURT:**  Marcus Edwards?

5          **PROSPECTIVE JUROR NO. 4:**  No.

6          **THE COURT:**  Jeffrey Cleary?

7          **PROSPECTIVE JUROR NO. 4:**  No.

8          **THE COURT:**  Jeffrey Mitchell?

9          **PROSPECTIVE JUROR NO. 4:**  No.

10         **THE COURT:**  John Wotton?

11         **PROSPECTIVE JUROR NO. 4:**  No.

12         **THE COURT:**  Taquila House?

13         **PROSPECTIVE JUROR NO. 4:**  No.

14         **THE COURT:**  James Barnett?

15         **PROSPECTIVE JUROR NO. 4:**  No.

16         **THE COURT:**  Shahab Hassan?

17         **PROSPECTIVE JUROR NO. 4:**  No.

18         **THE COURT:**  Dale Rio?

19         **PROSPECTIVE JUROR NO. 4:**  No.

20         **THE COURT:**  Corey Benjamin?

21         **PROSPECTIVE JUROR NO. 4:**  No.

22         **THE COURT:**  David Johnson Jr.?

23         **PROSPECTIVE JUROR NO. 4:**  No.

24         **THE COURT:**  William McFayden?

25         **PROSPECTIVE JUROR NO. 4:**  No.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

```
 1          THE COURT:  Christopher David Files?

 2          PROSPECTIVE JUROR NO. 4:  No.

 3          THE COURT:  Benjamin Shields?

 4          PROSPECTIVE JUROR NO. 4:  No.

 5          THE COURT:  Leanne Maher?

 6          PROSPECTIVE JUROR NO. 4:  No.

 7          THE COURT:  Michelle Aurelius?

 8          PROSPECTIVE JUROR NO. 4:  No.

 9          THE COURT:  Allyson Anderson?

10          PROSPECTIVE JUROR NO. 4:  No.

11          THE COURT:  Michael Gurdziel?

12          PROSPECTIVE JUROR NO. 4:  No.

13          THE COURT:  David Cramer?

14          PROSPECTIVE JUROR NO. 4:  No.

15          THE COURT:  Collin Kilpatrick?

16          PROSPECTIVE JUROR NO. 4:  No.

17          THE COURT:  Sarah Elizabeth Fox?

18          PROSPECTIVE JUROR NO. 4:  No.

19          THE COURT:  William Joint?

20          PROSPECTIVE JUROR NO. 4:  No.

21          THE COURT:  Erica Lee?

22          PROSPECTIVE JUROR NO. 4:  No.

23          THE COURT:  Justin Ellerbe?

24          PROSPECTIVE JUROR NO. 4:  No.

25          THE COURT:  Justin T. Gryder?
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1     **PROSPECTIVE JUROR NO. 4:**  No.

2     **THE COURT:**  Demetrice Poole?

3     **PROSPECTIVE JUROR NO. 4:**  No.

4     **THE COURT:**  Maria Jocys?

5     **PROSPECTIVE JUROR NO. 4:**  No.

6     **THE COURT:**  Justin Heinrich?

7     **PROSPECTIVE JUROR NO. 4:**  No.

8     **THE COURT:**  Hykeem Deshun Cox?

9     **PROSPECTIVE JUROR NO. 4:**  No.

10    **THE COURT:**  Jeremy Fletcher?

11    **PROSPECTIVE JUROR NO. 4:**  No.

12    **THE COURT:**  John Scott?

13    **PROSPECTIVE JUROR NO. 4:**  No.

14    **THE COURT:**  Scott Bassett?

15    **PROSPECTIVE JUROR NO. 4:**  No.

16    **THE COURT:**  Bryan Cross?

17    **PROSPECTIVE JUROR NO. 4:**  No.

18    **THE COURT:**  I'm getting close to the end.

19    Eric Nye?

20    **PROSPECTIVE JUROR NO. 4:**  No.

21    **THE COURT:**  Scott Newton?

22    **PROSPECTIVE JUROR NO. 4:**  No.

23    **THE COURT:**  Timothy Thomas?

24    **PROSPECTIVE JUROR NO. 4:**  No.

25    **THE COURT:**  Charles Winfor Daniels.

1           **PROSPECTIVE JUROR NO. 4:**  No.

2           **THE COURT:**  I don't know if I asked, but Thomas

3  Timothy Scott?

4           **PROSPECTIVE JUROR NO. 4:**  No.

5           **THE COURT:**  Alex Champagne?

6           **PROSPECTIVE JUROR NO. 4:**  No.

7           **THE COURT:**  Detective David Cramer?

8           **PROSPECTIVE JUROR NO. 4:**  No.

9           **THE COURT:**  All right.  Based on my summary of the

10 charges in this case, have you heard about it?

11          **PROSPECTIVE JUROR NO. 4:**  No.

12          **THE COURT:**  Have you served on a jury before?

13          **PROSPECTIVE JUROR NO. 4:**  No.

14          **THE COURT:**  Have you been the victim of a crime or

15 have a member of your immediate family or close friend who was?

16          **PROSPECTIVE JUROR NO. 4:**  No.

17          **THE COURT:**  Do you belong to any group that advocates

18 in favor of or against gun ownership, or do you have any strong

19 feelings about guns?

20          **PROSPECTIVE JUROR NO. 4:**  No.

21          **THE COURT:**  One of the elements of the offense that

22 Mr. Wiley is charged with is that he may have been convicted

23 previously of a felony.  Would the fact that the Defendant has

24 been previously convicted of another crime, if it's proven,

25 cause you to believe that he's probably guilty of the crime

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  that he's charged with in this case?

2          **PROSPECTIVE JUROR NO. 4:** No.

3          **THE COURT:** The alleged victims in the case are of

4  Asian descent. Would that fact affect your ability to

5  participate in this case as a fair and impartial juror?

6          **PROSPECTIVE JUROR NO. 4:** No.

7          **THE COURT:** Do you belong to any organization whose

8  purpose is to oppose anti-Asian discrimination or violence, or

9  have you participated in any activity related to the

10  condemnation of anti-Asian violence?

11          **PROSPECTIVE JUROR NO. 4:** No.

12          **THE COURT:** Now, you may hear evidence that people

13  involved in this case, including the Defendant, Mr. Wiley, may

14  have been involved in certain street gangs.

15          If such evidence were presented, would that fact

16  impair your ability to be the type of fair and impartial juror

17  that I've discussed earlier?

18          **PROSPECTIVE JUROR NO. 4:** No.

19          **THE COURT:** Have you ever been or have you had a

20  close family or friend who has been the victim of gang crimes

21  or witnessed such?

22          **PROSPECTIVE JUROR NO. 4:** No.

23          **THE COURT:** Have you or a close family member or

24  friend been a member of a street gang?

25          **PROSPECTIVE JUROR NO. 4:** No.

US v. Wiley -- Trial/Jury Selection -- 4/19/21

**THE COURT:**  So every person who is charged with a criminal offense is presumed innocent of the crime until the Government proves him or her guilty of that crime beyond a reasonable doubt.

Would you have any difficulty applying this presumption in the case?

**PROSPECTIVE JUROR NO. 4:**  No.

**THE COURT:**  A defendant in a criminal case has the absolute right to remain silent and has the absolute right not to testify.  If a defendant chooses not to testify, then the jury is prohibited from drawing any negative conclusions from that choice.

Would you have any difficulty following these principles?

**PROSPECTIVE JUROR NO. 4:**  No.

**THE COURT:**  In the Government fails to carry its burden, would you have any difficulty finding the Defendant not guilty?

**PROSPECTIVE JUROR NO. 4:**  No.

**THE COURT:**  If the Government carries its burden, would you have any difficulty finding the Defendant guilty?

**PROSPECTIVE JUROR NO. 4:**  No.

**THE COURT:**  Have you ever been involved in any legal proceeding, either as a party or as a witness?

**PROSPECTIVE JUROR NO. 4:**  No.

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 207 of 247

1        **THE COURT:**  All right.  Now, you did say you've

2   testified, though.  Did you say you've testified in court?

3        **PROSPECTIVE JUROR NO. 4:**  Yes.

4        **THE COURT:**  Okay.  So putting aside your statement

5   about testifying for work, other than your work, have you ever

6   been involved in a legal proceeding as a party or a witness?

7        **PROSPECTIVE JUROR NO. 4:**  No.

8        **THE COURT:**  Okay.  Now, in terms of the work you do,

9   what's been the nature of your involvement in legal

10  proceedings, if any?

11       **PROSPECTIVE JUROR NO. 4:**  Can you explain that more?

12       **THE COURT:**  In other words, did you testify -- I

13  thought you said you testified?

14       **PROSPECTIVE JUROR NO. 4:**  I've testified, yes.

15       **THE COURT:**  Right.  Do you do anything else with

16  respect to those cases?

17       **PROSPECTIVE JUROR NO. 4:**  Just prepare the order for

18  the judge's signature.  I prepare the order for the judge's

19  signature.

20       **THE COURT:**  Okay.

21       **PROSPECTIVE JUROR NO. 4:**  That's it.

22       **THE COURT:**  Do you work with lawyers?

23       **PROSPECTIVE JUROR NO. 4:**  Yes.

24       **THE COURT:**  And what lawyers are they?  Are they

25  state prosecutors or who are they?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    **PROSPECTIVE JUROR NO. 4:**  It's the county attorney.

2  She has her own practice.

3    **THE COURT:**  Okay.  All right.

4    Do you know anybody who's been called here today as a

5  potential juror?

6    **PROSPECTIVE JUROR NO. 4:**  No.

7    **THE COURT:**  All right.  Now, the attorneys estimate

8  the case will take five and maybe six or seven days, just

9  depending on the evidence.

10    Will that present any special problem for you?

11    **PROSPECTIVE JUROR NO. 4:**  No.

12    **THE COURT:**  All right.  Do you have any problem

13  seeing or hearing evidence that would prevent you from serving

14  as a juror?

15    **PROSPECTIVE JUROR NO. 4:**  No.

16    **THE COURT:**  Now, the lawyers will be wearing their

17  masks, as will my staff; and while in this building and while

18  in court, the jury will be wearing its masks.

19    Would that be difficult for you at all?

20    **PROSPECTIVE JUROR NO. 4:**  No.

21    **THE COURT:**  Is there anything about the nature of the

22  case itself, including the charges against Mr. Wiley, that

23  would prevent you from being able to be fair and impartial?

24    **PROSPECTIVE JUROR NO. 4:**  No.

25    **THE COURT:**  Based on what little you know about the

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 case, have you formed or expressed an opinion about it or about

2 the parties themselves that you feel will adversely affect your

3 ability to sit on the case and render a fair and impartial

4 verdict?

5      **PROSPECTIVE JUROR NO. 4:**  No.

6      **THE COURT:**  Do you have any other reason I have not

7 asked you about that may be weighing on our mind that you think

8 might make it difficult for you to be fair and impartial?

9      **PROSPECTIVE JUROR NO. 4:**  No.

10      **THE COURT:**  Give me just a moment.  Everybody be

11 quiet for a minute, please.

12      Let me ask the lawyers to step up here.

13     (The following proceedings were had at the bench by the

14     Court and Counsel out of the hearing of the jury:)

15      **THE COURT:**  Anything further from the Government?

16      **MR. GREEN:**  Just that Question 4 again, Your Honor.

17      **THE COURT:**  Okay.  All right.  And anything further

18 from the Defendant?

19      **MR. BRYSON:**  No.

20      **THE COURT:**  Okay.  Stand right here and let me ask

21 that.

22     (End of bench conference.)

23      **THE COURT:**  Ever since I've become a judge, I have a

24 lot more appreciation for those who wear dresses.  I get it

25 caught on my chair all the time.

    US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          Let me ask you this question, and you can pull your

2   mask down, Ms. Thomas:  Have you or any of your family members

3   ever been a plaintiff or a defendant in a court case, whether

4   criminal, civil, or domestic?

5          **PROSPECTIVE JUROR NO. 4:**  No.

6          **THE COURT:**  All right.

7      (The following proceedings were had at the bench by the

8      Court and Counsel out of the hearing of the jury:)

9          **MR. GREEN:**  No further questions.

10         **MR. BRYSON:**  Nothing, Your Honor.

11         **THE COURT:**  Any cause challenges?

12         **MR. GREEN:**  No, Your Honor.

13         **MR. BRYSON:**  No cause challenge.

14         **THE COURT:**  You can exercise your strike.

15     (End of bench conference.)

16     (Pause in the proceedings.)

17         **DEPUTY COURTROOM CLERK:**  Your Honor, Ms. Thomas has

18   been selected as a juror.

19         **THE COURT:**  Ms. Thomas, you will be a member of the

20   jury.  I'm going to allow you to leave in just a moment so you

21   don't have to wait while I pick the alternates, but you'll need

22   to come back tomorrow at 8:45 across the hall.  Courtroom No. 3

23   will be your jury room.  We're picking larger rooms for

24   socially distancing purposes.

25          I gave a number of cautions about not doing any

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  research or tweeting, what have you.  Remember all of that.

2  You're not to go home and try to do any research about the

3  case.  Don't talk about the case or any matter connected to it

4  at all with anybody.  If anybody asks you about the case, just

5  tell them you can't talk about it; and if anybody tries to

6  contact you about the case or talk about it, let me know.  But

7  don't do any research.  Everything you will need to learn about

8  the case must come only from the courtroom here and the

9  evidence that I allow into evidence.

10         So remember all my admonitions to you, and we will

11  look to see you tomorrow at 8:45 across the hall, and then

12  we'll start tomorrow with the evidence in the case.

13         Thank you.  You are free to leave at this point, so

14  you can gather your materials.  Watch your step coming down the

15  ramp right here.

16     (Selected juror departed the courtroom at 5:21 p.m.)

17         **THE COURT:**  All right.  Ladies and gentlemen, now I

18  need to pick three alternates.  Let me go ahead -- I think

19  we'll go forward, just to be safe and get it done, with 12.

20  That might make some sense.  So we're just going to call 12

21  names up here into box, and then we'll proceed from there.

22  We're only going to pick three alternates.  This process

23  usually goes a little faster.

24         **DEPUTY COURTROOM CLERK:**  Amy Wyscarver, you will be

25  in Seat No. 1.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          Cheryl Fraizer, you will be in Seat No. 2.

2          Cynthia Whitten, you will be in Seat No. 3.

3          Candy Slade, you will be in Seat No. 4.

4          Jessica McLaughin, you will be in Seat No. 5.

5          Kelley Keats, you will be in Seat No. 6.

6          Hancy Luck, you will be in Seat No. 7.

7          Christine Smith, you will be right here in the first

8    row on the floor in Seat No. 8.

9          Nicholas Schmid, you will be in Seat No. 9.

10         Jennifer LaClair, you will be in Seat No. 10.

11         William Price, you will be in Seat No. 11.

12         Bobbe McKinney, you will be in Seat No. 12.

13         **THE COURT:**  All right.  So my questions are to the 12

14   of you that are in the jury box area.  Everybody else do listen

15   carefully if, for any reason, we have to call upon you.  I

16   doubt we're going to get that far, but we'll see.

17         So let me just get a little bit of background

18   information on each of you, first of all.

19         Let me start with Ms. Wyscarver.

20         What county do you live in?

21         **PROSPECTIVE ALTERNATE JUROR:**  Guilford.

22         **THE COURT:**  How long?

23         **PROSPECTIVE ALTERNATE JUROR:**  Twenty-plus years.

24         **THE COURT:**  What is your educational level?

25         **PROSPECTIVE ALTERNATE JUROR:**  College.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **THE COURT:**  What did you study?

2          **PROSPECTIVE ALTERNATE JUROR:**  Nursing.

3          **THE COURT:**  And are you working?

4          **PROSPECTIVE ALTERNATE JUROR:**  I am.

5          **THE COURT:**  What do you do?

6          **PROSPECTIVE ALTERNATE JUROR:**  I am an account manager

7  for an oncology company.

8          **THE COURT:**  All right.  Do you have a spouse or

9  significant other?

10          **PROSPECTIVE ALTERNATE JUROR:**  I do.

11          **THE COURT:**  And what does that person do?

12          **PROSPECTIVE ALTERNATE JUROR:**  He owns his own

13  company, and he sells injection molding equipment.

14          **THE COURT:**  Do you have any adult children?

15          **PROSPECTIVE ALTERNATE JUROR:**  I have a 19-year-old in

16  college.

17          **THE COURT:**  Is that person working right now?

18          **PROSPECTIVE ALTERNATE JUROR:**  She works part-time in

19  Guilford County.

20          **THE COURT:**  What does she do?

21          **PROSPECTIVE ALTERNATE JUROR:**  She works for a daycare

22  program, an after-school daycare program.

23          **THE COURT:**  Ms. Fraizer, if you would remove your

24  mask while you're speaking, I'd appreciate that.

25          So what county do you live in?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE ALTERNATE JUROR:**  Orange County.

2          **THE COURT:**  For how long, ma'am?

3          **PROSPECTIVE ALTERNATE JUROR:**  Sixty-plus years.

4          **THE COURT:**  What is your educational level?

5          **PROSPECTIVE ALTERNATE JUROR:**  Some college.

6          **THE COURT:**  All right.  What did you study?

7          **PROSPECTIVE ALTERNATE JUROR:**  I studied nursing.

8          **THE COURT:**  All right.  Do you have a spouse or a

9   significant other?

10          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

11          **THE COURT:**  What does that person do?

12          **PROSPECTIVE ALTERNATE JUROR:**  He's disabled.

13          **THE COURT:**  What did he do?

14          **PROSPECTIVE ALTERNATE JUROR:**  Counter salesman, parts

15   salesman for cars.

16          **THE COURT:**  For who?

17          **PROSPECTIVE ALTERNATE JUROR:**  Cars.

18          **THE COURT:**  Do you know whether he was ever involved

19   as a subject in a robbery attempt?

20          **PROSPECTIVE ALTERNATE JUROR:**  No, he wasn't.

21          **THE COURT:**  All right.  Do you have adult children,

22   and what do they do?

23          **PROSPECTIVE ALTERNATE JUROR:**  Yes, I have two girls.

24   One is the mother of twins, so she doesn't work, and the other

25   one runs a garage.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          THE COURT:  All right.  Thank you.  You can put your

2    mask back on.

3          Ms. Whitten, what county do you live in?

4          PROSPECTIVE ALTERNATE JUROR:  Cabarrus.

5          THE COURT:  How long have you lived there?

6          PROSPECTIVE ALTERNATE JUROR:  Five and a half years.

7          THE COURT:  And what is your level of education?

8          PROSPECTIVE ALTERNATE JUROR:  High school graduate.

9          THE COURT:  Okay.  Are you working, and what do you

10   do?

11         PROSPECTIVE ALTERNATE JUROR:  I'm not working.

12         THE COURT:  Have you been previously?

13         PROSPECTIVE ALTERNATE JUROR:  I worked in a bank.

14         THE COURT:  Okay.  What kind of work did you do?

15         PROSPECTIVE ALTERNATE JUROR:  I was a teller and I

16   did customer service.

17         THE COURT:  Were you ever the subject of any robbery

18   attempt?

19         PROSPECTIVE ALTERNATE JUROR:  Yes.

20         THE COURT:  All right.  When was that?

21         PROSPECTIVE ALTERNATE JUROR:  I believe it was 2016.

22         THE COURT:  Was a firearm involved?

23         PROSPECTIVE ALTERNATE JUROR:  He said he had a gun,

24   but we never saw it.

25         THE COURT:  What was your involvement in that

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  robbery?

2          **PROSPECTIVE ALTERNATE JUROR:**  I was there that day.

3  He slipped in and out very quick.

4          **THE COURT:**  Okay.  Were you there when he came in?

5          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

6          **THE COURT:**  Did they apprehend anybody?

7          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

8          **THE COURT:**  Was there a conviction, or do you know?

9          **PROSPECTIVE ALTERNATE JUROR:**  I believe he is still

10  in jail.  I haven't received any more paperwork.

11          **THE COURT:**  Any other robbery attempt?

12          **PROSPECTIVE ALTERNATE JUROR:**  No.

13          **THE COURT:**  All right.  Well, this case involves

14  allegations of a robbery.  Would your prior involvement from

15  the robbery in any way affect your ability to be fair and

16  impartial in this case?

17          **PROSPECTIVE ALTERNATE JUROR:**  I think I would be

18  okay.

19          **THE COURT:**  Do you believe you can listen to the

20  evidence and decide this case based solely on the evidence

21  presented and the law as I give it to you without regard to

22  your prior involvement in the robbery and render a verdict

23  that's fair and impartial to Mr. Wiley as well as to the

24  Government?

25          **PROSPECTIVE ALTERNATE JUROR:**  I believe so.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1      **THE COURT:**  Okay.  Do you have adult children?

2      **PROSPECTIVE ALTERNATE JUROR:**  I have three.

3      **THE COURT:**  What do they do?

4      **PROSPECTIVE ALTERNATE JUROR:**  My oldest is in IT; my

5 middle son does construction; and my daughter, she works for a

6 company in Massachusetts.  They do -- she works with antibodies

7 and prescriptions.

8      **THE COURT:**  All right.  And do you have a spouse or a

9 significant other?

10      **PROSPECTIVE ALTERNATE JUROR:**  I do.

11      **THE COURT:**  And what does that person do?

12      **PROSPECTIVE ALTERNATE JUROR:**  He builds race cars.

13      **THE COURT:**  All right.  Thank you.

14      So that takes us then to Ms. Slade.

15      What county are you from, ma'am?

16      **PROSPECTIVE ALTERNATE JUROR:**  Rockingham County.

17      **THE COURT:**  And how long have you lived there?

18      **PROSPECTIVE ALTERNATE JUROR:**  Fifty years.

19      **THE COURT:**  What is your educational background?

20      **PROSPECTIVE ALTERNATE JUROR:**  Graduate.

21      **THE COURT:**  Of high school?

22      **PROSPECTIVE ALTERNATE JUROR:**  No, college.

23      **THE COURT:**  College.  What did you study?

24      **PROSPECTIVE ALTERNATE JUROR:**  Accounting.

25      **THE COURT:**  Okay.  And are you working?  What do you

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  do?

2        **PROSPECTIVE ALTERNATE JUROR:**  Yes, I work.  I'm an

3  accountant.

4        **THE COURT:**  Do you have a spouse or significant

5  other?

6        **PROSPECTIVE ALTERNATE JUROR:**  No.

7        **THE COURT:**  All right.  Do you have any adult

8  children?

9        **PROSPECTIVE ALTERNATE JUROR:**  No.

10       **THE COURT:**  All right.  Thank you.

11       Ms. McLaughin, what county are you from?

12       **PROSPECTIVE ALTERNATE JUROR:**  Lee.

13       **THE COURT:**  How long have you lived there?

14       **PROSPECTIVE ALTERNATE JUROR:**  Twenty-three years.

15       **THE COURT:**  What is your educational background?

16       **PROSPECTIVE ALTERNATE JUROR:**  College.

17       **THE COURT:**  What did you study?

18       **PROSPECTIVE ALTERNATE JUROR:**  Nursing.

19       **THE COURT:**  Are you working?

20       **PROSPECTIVE ALTERNATE JUROR:**  Yes.

21       **THE COURT:**  What do you do?

22       **PROSPECTIVE ALTERNATE JUROR:**  I'm a clinical

23  coordinator for a medical clinic in Chapel Hill.

24       **THE COURT:**  Are you married or have a significant

25  other?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

```
 1              PROSPECTIVE ALTERNATE JUROR:  No.
 2              THE COURT:  All right.  Do you have any adult
 3   children?
 4              PROSPECTIVE ALTERNATE JUROR:  No.
 5              THE COURT:  All right.  Thank you.
 6              Ms. Keats, where do reside, what county?
 7              PROSPECTIVE ALTERNATE JUROR:  Chatham County.
 8              THE COURT:  For how long?
 9              PROSPECTIVE ALTERNATE JUROR:  Five and a half years.
10              THE COURT:  And your educational background?
11              PROSPECTIVE ALTERNATE JUROR:  Bachelor's degree in
12   theater.
13              THE COURT:  And are you working?
14              PROSPECTIVE ALTERNATE JUROR:  Yes, but not in
15   theater; as a real estate agent.
16              THE COURT:  Do you have a significant other or a
17   spouse?
18              PROSPECTIVE ALTERNATE JUROR:  Yes.
19              THE COURT:  What does that person do?
20              PROSPECTIVE ALTERNATE JUROR:  He's a district manager
21   for a pharmaceutical company.
22              THE COURT:  Any adult children?
23              PROSPECTIVE ALTERNATE JUROR:  No.
24              THE COURT:  All right.  Thank you.
25              Ms. Lusk, what county are you from?
```

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE ALTERNATE JUROR:**  Hoke County, 18 years.

2          **THE COURT:**  Your educational background?

3          **PROSPECTIVE ALTERNATE JUROR:**  College, residential

4    drafting and building construction.  It's --

5          **THE COURT:**  A little bit louder, please.

6          **PROSPECTIVE ALTERNATE JUROR:**  Building construction

7    and residential drafting.

8          **THE COURT:**  Okay.  Do you have a significant other or

9    a spouse?

10          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

11          **THE COURT:**  What does that person do?

12          **PROSPECTIVE ALTERNATE JUROR:**  He's Army retired and

13    still working for the Army as a civilian contractor.

14          **THE COURT:**  All right.  What kind of work does he do?

15          **PROSPECTIVE ALTERNATE JUROR:**  He work at the Special

16    Forces training facility.  He's the one that manage all the

17    security and vehicles for the school.

18          **THE COURT:**  Okay.  Do you have any adult children?

19          **PROSPECTIVE ALTERNATE JUROR:**  I have an 8-year-old.

20          **THE COURT:**  How old?

21          **PROSPECTIVE ALTERNATE JUROR:**  Eight.

22          **THE COURT:**  Okay.  So your husband's still in the

23    Army.  That's obviously a branch of the military that's part of

24    the U.S. Government, and the U.S. Government is the party

25    bringing this case, the U.S. Department of Justice, another

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  branch.

2         So let me ask you this:  Would the fact that your

3  husband works for the Army, which is a branch of the

4  government, in any way impair your ability to be fair and

5  impartial in this case?

6         **PROSPECTIVE ALTERNATE JUROR:**  I don't believe so, but

7  that depends on the case.

8         **THE COURT:**  All right.  Well, you've heard the

9  allegations in the case.  The allegations involve an alleged

10  robbery of the China Wok.  Based on what you know about the

11  case, do you believe that the fact that your husband is

12  employed by the Army would in any way make it difficult for you

13  to listen to the evidence and decide this case based solely on

14  the evidence presented in the courtroom and the law as I give

15  it to you without any regard to your husband's employment?

16  Would you be able to do that?

17         **PROSPECTIVE ALTERNATE JUROR:**  I don't know.

18         **THE COURT:**  You have some concern about that?

19         **PROSPECTIVE ALTERNATE JUROR:**  Uh-huh.

20         **THE COURT:**  I'm sorry.  Is that yes or no?  I don't

21  know what "uh-huh" means.

22         **PROSPECTIVE ALTERNATE JUROR:**  Yes.

23         **THE COURT:**  All right. Thank you.

24         And that takes us to Ms. Smith.

25         What county are you from?

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 222 of 247

1          **PROSPECTIVE ALTERNATE JUROR:**  Stokes.

2          **THE COURT:**  How long?

3          **PROSPECTIVE ALTERNATE JUROR:**  Sixteen years.

4          **THE COURT:**  And what is your background in education?

5          **PROSPECTIVE ALTERNATE JUROR:**  High school.

6          **THE COURT:**  And are you working?

7          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

8          **THE COURT:**  What do you do?

9          **PROSPECTIVE ALTERNATE JUROR:**  I'm a marketing manager

10  for an insurance company.

11          **THE COURT:**  Do you have a spouse or a significant

12  other?

13          **PROSPECTIVE ALTERNATE JUROR:**  I do.

14          **THE COURT:**  What does that person do?

15          **PROSPECTIVE ALTERNATE JUROR:**  Sells real estate.

16          **THE COURT:**  Adult children?

17          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

18          **THE COURT:**  What do they do?

19          **PROSPECTIVE ALTERNATE JUROR:**  My daughter works for

20  Novant Health, and my son is an electrician.

21          **THE COURT:**  All right.  Thank you.

22          Mr. Schmid, what county?

23          **PROSPECTIVE ALTERNATE JUROR:**  Forsyth.

24          **THE COURT:**  How long?

25          **PROSPECTIVE ALTERNATE JUROR:**  Two years.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1        **THE COURT:**  Where were you before that?

2        **PROSPECTIVE ALTERNATE JUROR:**  Guilford.

3        **THE COURT:**  Okay.  How long were you in Guilford?

4        **PROSPECTIVE ALTERNATE JUROR:**  Probably 20-plus years.

5        **THE COURT:**  Okay.  What is your educational

6   background?

7        **PROSPECTIVE ALTERNATE JUROR:**  High school.

8        **THE COURT:**  Are you working?

9        **PROSPECTIVE ALTERNATE JUROR:**  Yes.

10        **THE COURT:**  What do you do?

11        **PROSPECTIVE ALTERNATE JUROR:**  Warehouse manager.

12        **THE COURT:**  Do you have a spouse or a significant

13   other?

14        **PROSPECTIVE ALTERNATE JUROR:**  Yes.  She is a

15   phlebotomist.

16        **THE COURT:**  And any adult children?

17        **PROSPECTIVE ALTERNATE JUROR:**  No, sir.

18        **THE COURT:**  All right.  Thank you.

19        Ms. LaClair, what county are you from?

20        **PROSPECTIVE ALTERNATE JUROR:**  Randolph.

21        **THE COURT:**  How long?

22        **PROSPECTIVE ALTERNATE JUROR:**  Eighteen years.

23        **THE COURT:**  Your background in education?

24        **PROSPECTIVE ALTERNATE JUROR:**  Bachelor's degree.

25        **THE COURT:**  In what area?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

**PROSPECTIVE ALTERNATE JUROR:** It was in psychological
I'm special education teacher now.

**THE COURT:** All right. Where do you teach?

**PROSPECTIVE ALTERNATE JUROR:** Right now, Randolph
County Schools. It's the first year there. Previous was
Asheboro City.

**THE COURT:** All right. Do you have a significant
other or a spouse?

**PROSPECTIVE ALTERNATE JUROR:** I'm divorced.

**THE COURT:** What did your ex-husband do?

**PROSPECTIVE ALTERNATE JUROR:** He is a teacher as
well.

**THE COURT:** Okay. Do you have adult children?

**PROSPECTIVE ALTERNATE JUROR:** 18-year-old, one, my
daughter.

**THE COURT:** And is she working?

**PROSPECTIVE ALTERNATE JUROR:** She's seeking part-time
right now. She's a full-time student.

**THE COURT:** Okay. Does she have any work at the
current time?

**PROSPECTIVE ALTERNATE JUROR:** No.

**THE COURT:** All right. Thank you.

Mr. Price, what county are you from, sir?

**PROSPECTIVE ALTERNATE JUROR:** Alamance.

**THE COURT:** How long?

US v. Wiley -- Trial/Jury Selection -- 4/19/21

 1              **PROSPECTIVE ALTERNATE JUROR:**  Six years next month.

 2              **THE COURT:**  What's your background in education?

 3              **PROSPECTIVE ALTERNATE JUROR:**  Bachelor's degree in

 4  communication.

 5              **THE COURT:**  All right.  What are you doing now?

 6              **PROSPECTIVE ALTERNATE JUROR:**  I'm a building

 7  supervisor for UNC Healthcare.

 8              **THE COURT:**  Do you have a significant other or a

 9  spouse?

10              **PROSPECTIVE ALTERNATE JUROR:**  Yes.

11              **THE COURT:**  What does that person do?

12              **PROSPECTIVE ALTERNATE JUROR:**  He works for BB&T.

13              **THE COURT:**  All right.  Do you have any -- well, does

14  he do anything in the retail banking area?

15              **PROSPECTIVE ALTERNATE JUROR:**  Sells loan products.

16              **THE COURT:**  I mean, there are allegations in this

17  case of a robbery.  I guess my question is designed to whether

18  he has had any experience with being the subject of a robbery?

19              **PROSPECTIVE ALTERNATE JUROR:**  No.

20              **THE COURT:**  All right.  Any children?

21              **PROSPECTIVE ALTERNATE JUROR:**  No.

22              **THE COURT:**  All right.  Thank you.

23              Ms. McKinney, what county are you from?

24              **PROSPECTIVE ALTERNATE JUROR:**  Forsyth.

25              **THE COURT:**  For how long, ma'am?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE ALTERNATE JUROR:**  Nine years.

2          **THE COURT:**  And what is your educational background?

3          **PROSPECTIVE ALTERNATE JUROR:**  Bachelor's in

4    accounting.

5          **THE COURT:**  Are you working?

6          **PROSPECTIVE ALTERNATE JUROR:**  No.

7          **THE COURT:**  Have you been working previously?

8          **PROSPECTIVE ALTERNATE JUROR:**  No, I stay at home with

9    the children.

10          **THE COURT:**  You're a stay-at-home mom or just stay at

11    home?

12          **PROSPECTIVE ALTERNATE JUROR:**  Stay-at-home mom.

13          **THE COURT:**  I couldn't hear.

14          Do you have a significant other or a spouse?

15          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

16          **THE COURT:**  What does that person do?

17          **PROSPECTIVE ALTERNATE JUROR:**  He's in the IT

18    department at Wake Forest University.

19          **THE COURT:**  All right.  Any adult children among your

20    children?

21          **PROSPECTIVE ALTERNATE JUROR:**  Yes.  Just one, and

22    she's a full-time student.

23          **THE COURT:**  Okay.  In college?

24          **PROSPECTIVE ALTERNATE JUROR:**  In college, yes.

25          **THE COURT:**  Does she have any kind of part-time job?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE ALTERNATE JUROR:**  Just babysitting,

2    tutoring.

3          **THE COURT:**  Nothing in the retail space?

4          **PROSPECTIVE ALTERNATE JUROR:**  No.

5          **THE COURT:**  Thank you.

6          All right.  Now, I asked a number of general

7    questions of everybody, and you've heard all of those.  They

8    covered everything from who the potential witnesses are to

9    prior employment by the U.S. Government or any law enforcement

10   employment, whether you knew of anybody in the case, the

11   lawyers, the witnesses, the parties.

12         Anybody answer "Yes" to any of those questions?

13         All right.  Ms. McLaughin?

14         **PROSPECTIVE ALTERNATE JUROR:**  I was in the Army.

15         **THE COURT:**  Okay.  When were you in the army?

16         **PROSPECTIVE ALTERNATE JUROR:**  1992 to 2001.

17         **THE COURT:**  Okay.  Do you have any other connection

18   with the Army at this time?

19         **PROSPECTIVE ALTERNATE JUROR:**  Other than family and

20   friends, no.

21         **THE COURT:**  So do you have family in the Army?

22         **PROSPECTIVE ALTERNATE JUROR:**  Yes.

23         **THE COURT:**  Who?  What relation?

24         **PROSPECTIVE ALTERNATE JUROR:**  Cousins.

25         **THE COURT:**  All right.  Well, as I indicated earlier

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1 to Ms. Luck, the federal government is bringing this case, the

2 U.S. Department of Justice.  The Army is actually part of the

3 federal government.  It's a branch of the military service.

4          Would that fact have bearing in any way on your

5 ability to be fair and impartial in this case?

6          **PROSPECTIVE ALTERNATE JUROR:**  No.

7          **THE COURT:**  Can you decide the case without regard to

8 your prior military service and make a decision based solely on

9 the facts brought here in the courtroom and the law as I give

10 it to you?

11          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

12          **THE COURT:**  Would you be fair and impartial in doing

13 that?

14          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

15          **THE COURT:**  Thank you.

16          Anybody else have any answer to any of those?

17          So the other questions I asked were prior jury

18 service, whether you've been a victim of a crime of any kind,

19 whether you belong to any group that advocates in favor or

20 against gun ownership, or have strong feelings about that.

21          Anybody answer "Yes" to those?

22          Okay.  So let me start with Ms. Wyscarver.

23          **PROSPECTIVE ALTERNATE JUROR:**  Yes.  Victim of a

24 crime.

25          **THE COURT:**  All right.  What was that?

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1          **PROSPECTIVE ALTERNATE JUROR:**  My husband and I had

2    firearms stolen from a vehicle parked at our residence.

3          **THE COURT:**  How long ago?

4          **PROSPECTIVE ALTERNATE JUROR:**  About 2008.

5          **THE COURT:**  Was the individual or individuals

6    involved found?

7          **PROSPECTIVE ALTERNATE JUROR:**  They were.

8          **THE COURT:**  And were they -- were you involved with

9    law enforcement in trying to investigate that incident?

10         **PROSPECTIVE ALTERNATE JUROR:**  Not directly, no.

11         **THE COURT:**  Well, did you talk to the police --

12         **PROSPECTIVE ALTERNATE JUROR:**  Yes.

13         **THE COURT:**  -- or some law enforcement?

14         **PROSPECTIVE ALTERNATE JUROR:**  We filed a report, yes.

15         **THE COURT:**  Is there anything about the nature of the

16   case or the fact that it happened that you think would make it

17   difficult to be fair and impartial in this case?

18         **PROSPECTIVE ALTERNATE JUROR:**  No.

19         **THE COURT:**  Any other question you would answer "Yes"

20   to?

21         **PROSPECTIVE ALTERNATE JUROR:**  No.

22         **THE COURT:**  All right.  Who else -- somebody else had

23   their hands up over here.

24         So, Ms. Fraizer?

25         **PROSPECTIVE ALTERNATE JUROR:**  I was --

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

| | |
|---|---|
| 1 | **THE COURT:** You can remove your mask, ma'am. Thank |
| 2 | you. |
| 3 | **PROSPECTIVE ALTERNATE JUROR:** Sorry. |
| 4 | **THE COURT:** That's all right. |
| 5 | **PROSPECTIVE ALTERNATE JUROR:** I was -- served on a |
| 6 | jury. |
| 7 | **THE COURT:** All right. When? |
| 8 | **PROSPECTIVE ALTERNATE JUROR:** Years ago. |
| 9 | **THE COURT:** Civil or criminal? |
| 10 | **PROSPECTIVE ALTERNATE JUROR:** Civil. |
| 11 | **THE COURT:** All right. Do you understand that in a |
| 12 | civil case the plaintiff has to proceed -- to win has to win by |
| 13 | a preponderance of the evidence, which is 50 percent plus one; |
| 14 | whereas, in a criminal case, the Government has a higher |
| 15 | burden? It has to prove all the elements of the offense beyond |
| 16 | a reasonable doubt. |
| 17 | Do you understand? |
| 18 | **PROSPECTIVE ALTERNATE JUROR:** Yes. |
| 19 | **THE COURT:** Will you be able to apply the higher |
| 20 | burden to the Government in this case? |
| 21 | **PROSPECTIVE ALTERNATE JUROR:** Yes. |
| 22 | **THE COURT:** And without telling me the outcome, were |
| 23 | you able to reach a verdict in the case, yes or no? |
| 24 | **PROSPECTIVE ALTERNATE JUROR:** Yes. |
| 25 | **THE COURT:** Is there anything about the case you |

US v. Wiley -- Trial/Jury Selection -- 4/19/21

1 think would affect your ability to be fair and impartial here?

2           **PROSPECTIVE ALTERNATE JUROR:** No. It was an

3 accident.

4           **THE COURT:** Anything else, Ms. Fraizer?

5           **PROSPECTIVE ALTERNATE JUROR:** That's all.

6           **THE COURT:** All right. Who had their hand up here.

7           All right. So, Ms. Slade?

8           **PROSPECTIVE ALTERNATE JUROR:** Yes. I've served on a

9 jury two times.

10           **THE COURT:** What type of cases?

11           **PROSPECTIVE ALTERNATE JUROR:** The first one was a

12 counterfeit case where they passed counterfeit money.

13           **THE COURT:** Nice and loud, please.

14           **PROSPECTIVE ALTERNATE JUROR:** The second case was --

15 it was a criminal case. A man shot a sheriff's deputy as he

16 was coming to check out a noise complaint that was made from a

17 neighbor.

18           **THE COURT:** All right. Without telling me the

19 outcome, can you tell me whether or not you reached a verdict

20 in each of those?

21           **PROSPECTIVE ALTERNATE JUROR:** Yes.

22           **THE COURT:** Now, I don't know if the first one you

23 mentioned was civil or criminal. You mentioned the second was

24 criminal.

25           Do you understand that in any civil case the burden

US v. Wiley -- Trial/Jury Selection -- 4/19/21

1  of proof for the plaintiff is less than the Government's burden

2  in this case?

3          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

4          **THE COURT:**  Will you be able to apply the higher

5  burden to the Government in this case?

6          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

7          **THE COURT:**  All right.  Is there anything about

8  either one of those cases that you think would make it

9  difficult for you to be fair and impartial in the present case?

10         **PROSPECTIVE ALTERNATE JUROR:**  No.

11         **THE COURT:**  Yes, Ms. McLaughlin?

12         **PROSPECTIVE ALTERNATE JUROR:**  I served on a jury as

13  well for a murder trial.

14         **THE COURT:**  When was that?

15         **PROSPECTIVE ALTERNATE JUROR:**  2010.

16         **THE COURT:**  And did you -- without telling me the

17  outcome, did you reach a verdict?

18         **PROSPECTIVE ALTERNATE JUROR:**  No, we did not.

19         **THE COURT:**  Is there anything about that case that

20  you think would make it difficult to be fair and impartial in

21  the present case?

22         **PROSPECTIVE ALTERNATE JUROR:**  No.

23         **THE COURT:**  Was a weapon allegedly used in that case?

24         **PROSPECTIVE ALTERNATE JUROR:**  Yes.

25         **THE COURT:**  What kind of weapon?

Case 1:19-cr-00529-TDS   Document 359   Filed 02/04/22   Page 233 of 247

1          **PROSPECTIVE ALTERNATE JUROR:**  A gun.

2          **THE COURT:**  And then I had Ms. Keats.

3          **PROSPECTIVE ALTERNATE JUROR:**  I'm not sure if this

4   applies, but the anti-gun thing, I'm part of the Moms Demand

5   Action group, and my daughter is very active in March For Our

6   Lives movement as well and has lobbied on their behalf as well.

7          **THE COURT:**  What, in essence, is the purpose of that

8   group?

9          **PROSPECTIVE ALTERNATE JUROR:**  Gun reform.  Gun law

10  reform.

11         **THE COURT:**  Okay.  Well, this case involves

12  allegations of firearms and ammunition.  So my question would

13  be:  Would you be able to follow the law as I give it to you?

14         **PROSPECTIVE ALTERNATE JUROR:**  Yes.

15         **THE COURT:**  And apply the law whether or not it

16  aligns with what either your view or your daughter's view might

17  be on gun reform?

18         **PROSPECTIVE ALTERNATE JUROR:**  Yes.

19         **THE COURT:**  And if, for any reason, those conflict,

20  will you be able to follow the law as I give it to you?

21         **PROSPECTIVE ALTERNATE JUROR:**  Yes.

22         **THE COURT:**  Are you a member of that group too?

23         **PROSPECTIVE ALTERNATE JUROR:**  Not the March For Our

24  Lives, but the Moms Demand Action for gun sense in America.

25         **THE COURT:**  Okay.  What is the nature of your

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  involvement in that group?

2           **PROSPECTIVE ALTERNATE JUROR:**  It's mostly stuff

3  online, petitions, some protests, that kind of thing.

4           **THE COURT:**  What kinds of action are you --

5           **PROSPECTIVE ALTERNATE JUROR:**  Most of mine has been

6  online.

7           **THE COURT:**  What are you urging?

8           **PROSPECTIVE ALTERNATE JUROR:**  To reform gun laws in

9  this country, to make it harder to obtain guns, background

10  checks, that kind of thing.

11           **THE COURT:**  All right.  Thank you.

12           Anybody else?

13           Yes, I had Ms. McKinney.

14           **PROSPECTIVE ALTERNATE JUROR:**  I was on a criminal

15  case about two years ago on a jury.

16           **THE COURT:**  All right.  What was the charge?

17           **PROSPECTIVE ALTERNATE JUROR:**  Communicating threats.

18           **THE COURT:**  Without telling me the outcome, can you

19  tell me:  Did you reach a verdict?

20           **PROSPECTIVE ALTERNATE JUROR:**  We did.

21           **THE COURT:**  Is there anything about the nature of

22  that case that you think would make it difficult for you to be

23  fair and impartial here?

24           **PROSPECTIVE ALTERNATE JUROR:**  No.

25           **THE COURT:**  For anybody who served on a jury, were

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1   any of you a foreperson of the jury?  If so, raise your hand.

2           All right.  The other questions I asked included the

3   fact that Mr. Wiley is charged with a felony offense -- strike

4   that -- that Mr. Wiley is charged with an offense that the

5   elements of which require that he previously be convicted of a

6   felony.

7           Would the fact that Mr. Wiley has previously been

8   convicted of another crime, if it's proven, cause you to

9   believe he's probably guilty of this crime because of that?  If

10  so, please raise your hand.

11          The alleged victims in this case are of Asian

12  descent.  I mentioned that.  Would that fact affect your

13  ability to participate in a case as a fair and impartial juror?

14  If so, please raise your hand.

15          Ms. Lusk.

16          **PROSPECTIVE ALTERNATE JUROR:**  Yes, because I'm Asian.

17          **THE COURT:**  Would that make it difficult for you to

18  view -- the Defendant -- and both parties should come into the

19  courtroom with a clean slate on equal footing.

20          Would the fact that the victims are allegedly Asian

21  cause you to view the case where one party has less of an equal

22  footing than the other?

23          **PROSPECTIVE ALTERNATE JUROR:**  Uh-huh.

24          **THE COURT:**  I'm sorry.

25          **PROSPECTIVE ALTERNATE JUROR:**  Yes.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

         **THE COURT:**  All right.

         I mentioned about gangs and street gangs and the
questions about would gang involvement, if it's proven, affect
your decision or ability to be fair and impartial and whether
you had been the victim of gang violence or witnessed such or
had a family member or friend in a gang.

         Anybody answer "Yes" to those?

         Then I mentioned the presumption of innocence and the
Defendant's absolute right not to testify and not to put on any
evidence, if he wishes, and I asked whether you would have any
difficulty applying those in this case.  Anybody who has any
difficulty with that raise your hand.

         And then if the Government fails to carry its burden,
would any of you have any difficulty finding the defendant not
guilty?  If so, raise your hand.

         If it carries its burden, that is, the Government,
would any of you have any difficulty finding the Defendant
guilty?  If so, raise your hand.

         Has anyone been involved in legal proceedings as a
party or as a witness?  Raise your hand.

         Do you know any of the folks who have been called
here today as a juror among this group?  Raise your hand.

         Will anybody have any trouble participating in a
trial if it runs anywhere from five to maybe six or seven days?
Any particular trouble, raise your hand.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

 1          All right.  Does have anybody any disability or

 2    hearing or seeing problem that would affect their ability to

 3    hear the evidence and see the evidence?  Raise your hand.

 4          Now, we'll all be wearing masks, and I will ask the

 5    jury to wear masks during the trial as a safety precaution.

 6    Would that be a particular hardship for anybody?  Raise your

 7    hand.

 8          Is there anything else about the case that I have not

 9    mentioned that's weighing on your mind that you think -- or

10    anything at all weighing on your mind you think we should know

11    that might affect your ability to be fair and impartial, or is

12    there anything about the nature of the case that you think

13    would make it difficult for you to be fair and impartial?  If

14    so, raise your hand.

15          Give me a moment to talk to the lawyers.

16       (The following proceedings were had at the bench by the

17       Court and Counsel out of the hearing of the jury:)

18          **THE COURT:**  All right.  Any follow-up -- oh, you

19    want --

20          **MR. GREEN:**  Question 4.

21          **THE COURT:**  All right.  Any follow-up questions?

22          **MR. BRYSON:**  Yes.  With regard to Juror No. 2,

23    Ms. Fraizer, we did not hear the Court ask what she did in

24    terms of employment, or if she's retired, what she did in the

25    past.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1      **THE COURT:**  All right.  Okay.  Give me a minute.

2  Don't go away.

3      (End of bench conference.)

4      **THE COURT:**  All right.  Just a few follow-ups ladies,

5  and gentlemen.

6      So have any of you or have any of you had a family

7  member who has ever been a plaintiff or a defendant in a court

8  case, whether it's civil, criminal, or domestic?  Raise your

9  hand.

10      All right.  Ms. LaClair?

11      **PROSPECTIVE ALTERNATE JUROR:**  Just for the divorce.

12      **THE COURT:**  Okay.  Was that you in the divorce?

13      **PROSPECTIVE ALTERNATE JUROR:**  Yes.

14      **THE COURT:**  Okay.  All right.  Other than that?

15      **PROSPECTIVE ALTERNATE JUROR:**  No.

16      **THE COURT:**  Anybody else been a -- have you or any

17  family member ever been a plaintiff or a defendant in a court

18  case?  Raise your hand.

19      Ms. Fraizer, I don't know if I asked you what you did

20  for your employment.

21      **PROSPECTIVE ALTERNATE JUROR:**  I'm a shipper.

22      **THE COURT:**  What does that mean?

23      **PROSPECTIVE ALTERNATE JUROR:**  I ship packages.  We do

24  towel packs and stuff to the hospital and gown packing.

25      **THE COURT:**  Do you work for a company?  How do you do

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  that?

2           **PROSPECTIVE ALTERNATE JUROR:**  Yes.

3           **THE COURT:**  How long have you been doing that?

4           **PROSPECTIVE ALTERNATE JUROR:**  I have been at the

5  company for -- I'm working on 26 years now.

6           **THE COURT:**  All right.  Give me just a moment.

7       (The following proceedings were had at the bench by the

8       Court and Counsel out of the hearing of the jury:)

9           **THE COURT:**  Anything further?

10          **MR. GREEN:**  No, Your Honor.

11          **MR. BRYSON:**  We would challenge Juror No. 7 for

12  cause, Ms Lusk.

13          **MR. GREEN:**  No objection.

14          **THE COURT:**  All right.  She'll be struck for cause.

15          Do you want to put some argument on that just for the

16  record?

17          **MR. BRYSON:**  She expressed her inability to be fair

18  based on her Asian ethnicity, or whatever the appropriate term

19  is.

20          **THE COURT:**  Okay.  I think she also said because of

21  her husband's military background as well.  Seven will be

22  struck for cause.

23          Okay.  Any other cause challenges?

24          **MR. GREEN:**  Not from the Government.

25          **MR. BRYSON:**  Not from the Defendant.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    **THE COURT:**  Okay.  So you each have two strikes.  The

2  three lowest members who are not struck will be the three

3  alternates in that order.

4    So please exercise your strikes.

5    (End of bench conference.)

6    (Pause in the proceedings.)

7    **DEPUTY COURTROOM CLERK:**  Your Honor, Cheryl Fraizer,

8  Candy Slade, and Christine Smith have been chosen as alternate

9  jurors.

10    **THE COURT:**  All right.  So Nos. 2, 4, and 8?

11    **DEPUTY COURTROOM CLERK:**  Correct.

12    **THE COURT:**  So Ms Fraizer, Ms. Slade, Ms. Smith, you

13  all are our alternates in that order.  You will be part of the

14  jury.  I will ask you to come back tomorrow at 8:45 in the

15  morning.  We'll have you gather in Courtroom No. 3, a larger

16  space for social distancing purposes.

17    Remember all of my admonitions:  Don't do any

18  research; don't investigate the case; don't talk to anybody

19  about the case.  All the information that you will get about

20  the case and which you should get has to come from this

21  courtroom only.  If anybody attempts to talk to you about the

22  case or influence you, you let me know right away.  I will

23  probably ask you tomorrow whether you either did any research

24  or inadvertently learned anything or tried to learn anything

25  about the case.  Just go home, relax, come back tomorrow ready

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1  to go.  All right.  Then we'll set up in here in the courtroom,
2  and we'll start the evidence for you all tomorrow.

3          For the rest of you, I want to thank you all for
4  being patient.  It does take a little bit longer to do with the
5  virus because we have to spread out and all of that, but we're
6  doing that for your protection too, so I hope you can
7  appreciate that.

8          We're not the state court.  In the state court, you
9  have one day, one jury.  If you show up for a day and don't get
10 called, then you're done.  In federal court, that's not the
11 rule.  For those who are not selected, if you would just call
12 after 5:00 on Sunday with the number you have, and they'll let
13 you know whether there's another case that we'll need your
14 assistance on or not.

15         Again, I thank you all for your patience, and I
16 encourage you all to be careful going home.  And I'll see the
17 three alternates then tomorrow.  You all are free to go at this
18 time.  Thank you.

19     (Selected and excused alternates jurors departed the
20     courtroom at 6:03 p.m.)

21         **THE COURT:**  Okay.  So I'm going to ask everybody just
22 to remain in the courtroom until we're sure that all the jurors
23 and prospective jurors have exited the lobby.  If somebody
24 would let me know that from the court security staff, I'd
25 appreciate it.

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    Okay. First of all, any objections anybody wants to

2  raise as to how any of this was handled?

3         **MR. GREEN:** No, Your Honor.

4         **THE COURT:** Mr. Bryson?

5         **MR. BRYSON:** No, Your Honor.

6         **THE COURT:** Okay. So we plan to start tomorrow at

7  9:00. I need to probably have you in just a little bit before

8  that to make sure you're all set and ready to go. Then we'll

9  start with the opening statements.

10         Do you how long yours will be?

11         **MR. PRINCIPE:** I would think, Your Honor, at most 20

12  minutes, but it could be shorter.

13         **THE COURT:** And do you have any idea how long yours

14  will be?

15         **MR. BRYSON:** Much shorter.

16         **THE COURT:** Okay.

17         **MR. BRYSON:** Maybe five minutes.

18         **THE COURT:** All right. I sent out the preliminary

19  instructions. Does anybody have any objection or comment on

20  any of those?

21         **MR. GREEN:** Your Honor, I've reviewed it and have no

22  objections.

23         **MR. BRYSON:** Your Honor, the only objection we have

24  is similar to the objection that we made to the proposed final

25  instructions, and that's on Count Three where the Court

Case 1:19-cr-00529-TDS  Document 359  Filed 02/04/22  Page 243 of 247

1  describes the crime of violence as a Hobbs Act robbery.  And

2  for the reasons that we stated in the other proposed

3  instructions, that would be --

4           **THE COURT:**  Well, technically, what I've done is I

5  said that what's been charged is a conspiracy to possess

6  firearms in furtherance of a crime of violence and then also

7  indicated, I believe, that for purposes of this count a Hobbs

8  Act robbery would be a crime of violence.

9           **MR. BRYSON:**  Yeah, that would be our objection, Your

10  Honor.

11           **THE COURT:**  All right.  That's based on the same

12  reasons you indicated earlier?

13           **MR. BRYSON:**  Yes.  When we submitted the final

14  instructions, there were two notes of objections, and one of

15  them is that objection.

16           **THE COURT:**  Is that the same argument you made as to

17  the motion to dismiss?

18           **MR. BRYSON:**  It's slightly different in that the

19  motion to dismiss was based on -- do you want to talk at this

20  point?

21           May I yield?

22           **THE COURT:**  Yes, sir.

23           **MR. FOSTER:**  Yes, Your Honor.  It's basically the

24  same idea, Your Honor.  It's the idea that Count Three does not

25  charge or mention a Hobbs Act robbery.  It literally lists a

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

violation of 924(c) itself as the underlying crime of violence,
and that's the basis -- that was the basis of our motion to
dismiss Count Three as well as our objection to the final and
preliminary instructions that mentioned a Hobbs Act robbery as
a crime of violence when it's not alleged.

**THE COURT:** Okay. If it -- as I understand it,
that's essentially the same argument from your motion to
dismiss, and I concluded that Count Three sufficiently alleged
a conspiracy under 924(o) to possess firearms in furtherance of
a crime of violence, which in this case was alleged to be an
offense under 924(c). And then it's up to the Government to
prove what that offense is. The Government, as I understand
its proffer, is going to prove a Hobbs Act as a crime of
violence, but that's what's alleged.

That was how I interpreted the indictment, and I
believe that was the basis of my reasoning.

Okay. Other than that, any other objection?

**MR. BRYSON:** No, Your Honor.

**THE COURT:** Okay. All right. Well, then I will be
prepared to give that. I tried to shorten it up just a little
bit. The full instructions will be given at the end, of
course.

Okay. Any other question about anything before we
take a break?

**MR. GREEN:** No, Your Honor.

US v. Wiley -- Trial/Jury Selection -- 4/19/21

 1          **MR. BRYSON:**  No, Your Honor.

 2          **THE COURT:**  Okay.  All right.  So, hopefully, the

 3    jury will be here at 8:45.  If they are ready to go before 9:00

 4    and we're all good to go, we'll start just as soon as we can

 5    and proceed with the evidence.

 6          And I'm going to keep them in Courtroom No. 3 across

 7    the hall to avoid any issues with the holding cell and this

 8    whole area back here.  And they will be using the public

 9    restrooms across there, which will be roped off.  So you all

10    will need to find some restrooms on another floor, if that's

11    suitable.  If that turns into a problem, let me know.

12    Hopefully, that will work out.

13          Thank you all.  We'll see tomorrow then roughly at

14    8:45.  Have a good evening.

15          Please adjourn Court.

16       (Proceedings recessed overnight at 6:08 p.m.)

17

18                    END OF VOLUME I OF VII

19

20

21

22

23

24

25

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21

1    UNITED STATES DISTRICT COURT

2    MIDDLE DISTRICT OF NORTH CAROLINA

3    CERTIFICATE OF REPORTER

4

5

6           I,  Briana L. Bell, Official United States Court

7    Reporter, certify that the foregoing transcript is a true and

8    correct transcript of the proceedings in the above-entitled

9    matter prepared to the best of my ability.

10

11           Dated this 4th day of February 2022.

12

13

14                        _____

15                        Briana L. Bell, RPR
                          Official Court Reporter

16

17

18

19

20

21

22

23

24

25

US v. Wiley  -- Trial/Jury Selection  -- 4/19/21